Printed by: GP0839          09/02/2016 14:08          Page 1    of 9

| LA0550000 | Signal **21** | Rep Area **3RDV** | Item # **G-01263-16** | Report Type **INITIAL** | Date **13-JUL-2016** | Time **1359** |

| Day of Wk. **WED** | Begin Date **13-JUL-2016** | Begin Time **1359** | End Date | End Time | Location of Offense **1217 MUSEUM DR HOUMA 70360** |

G-01263-16

UCR

| Reporting Officer **GLYNN PRESTENBACH** | Responding Detective **GLYNN PRESTENBACH JR** | Supervisor |
| PR: **P381**   BP: **305** | PR: **381**   BP: **305** | PR:   BP: |
| Arrived:   **131359** | Notified:   **131359** | Notified: |
| Completed:   **051300** | Arrived:   **131359** | Arrived: |

## REPORTING PERSON

Name: **ANTHONY ALFORD**                                     Race: **WHITE**              Sex: **MALE**

DOB: **22-MAY-1964**   Age: **52**          Employer/School: **ALFORD STAPLES LAPEYRE &**

Address: **1217 MUSEUM DR**                Address: **1217 MUSEUM DR**

City/St/Zip: **HOUMA, LA 70360**           City/St/Zip: **HOUMA, LA 70360**

Social Security #       Drivers Lic #       D.L. State

                                           Home Phone:

                                           Work Phone:

Identify Suspect?        Voluntary Statement?          Cell Phone: **()--**

## VICTIM

**Victim Sequence Number:** **1**    Type: **INDIVIDUAL**          For Insurance Purposes?

Name: **ANTHONY ALFORD**                          Race: **WHITE**       Sex: **MALE**

DOB: **22-MAY-1964**   Age: **52**    Resident? **YES**       Ethnicity: **NON-HISPANIC**

Height:          Weight:          Driver's License:       State of issue:

SSN:                                Employer/School: **ALFORD STAPLES LAPEYRE &**

Address: **1217 MUSEUM DR**           Address: **1217 MUSEUM DR**

City/St/Zip: **HOUMA, LA 70360**      City/St/Zip:   **HOUMA, LA 70360**

Social Security #       Drivers Lic #       D.L. State

                                           Home Phone:

                                           Work Phone:

                                           Cell Phone:

Aggr. Aslt/Homi. Circ 1:

Aggr. Aslt/Homi. Circ 2:

Add'l Just. Homi./LEOKA:                      Weapon Implication:

Under Influence?      Gun Permit?       ID Suspect?       Voluntary Statement?       Domestic Violence?

Gang Related:

Victim Injury Codes:   **NONE**

## OFFENSE

**Offense Sequence Number:** **1**    Victim: **1**      Suspect: **1**

R.S. Number: **RS14:47**                Title: **DEFAMATION**

Attempted/Completed: **COMPLETED**      Location Type: **OTHER / UNKNOWN**

Criminal Activity 1: **OTHER**          Weapon/Force Type 1:   **NONE**

## SUSPECT

EXHIBIT A

Printed by: GP0839          09/02/2016 14:08          Page   2    of   9

**Suspect Sequence Number:**    **1**

Name:   **UNKNOWN**                                    Race: **UNKNOWN**                    Sex: **UNKNOWN**

DOB:                    Age From:          To:          Ethnicity:                    Resident?

Height From:          To:          Weight From:          To:          Eye Color:
Hair Color                                    Hair Length:

Address:                                    City/St/Zip:
Alcohol Consumed?          Computer Used?          Drugs Used?          Gaming Motive?          Gang Related:

Armed:                                              Hate/Bias: **NONE**

Can be Identified by Witness:

Identifiable Features:
Location:
Arrest Type: **NONE**                    Voluntary Statement?          Local Check?          State Check?          NCIC Check?

Suspect Injury Codes:   **NONE**

Social Security #          Drivers Lic #          D.L. State
                                                        Home Phone:
                                                        Work Phone:
                                                        Cell Phone:

---

## ADDITIONAL WITNESS
None

## PROPERTY
None

## VEHICLE
None

## CRIME SCENE
None

## INVESTIGATION

Type of Force Used:                                    Security Device Installed?
Point of Entry:                                        Security Device Activated?
Safe Job?          Gambling Devices on Premises?          Alcoholic Beverage Outlet?
Prior History of Domestic Violence?          Prior History Documented?          Number of Prior Cases:
Modus Operandi (MO):  **COMPLAINANT ADVISED INFORMATION WAS BEING POSTED ABOUT HIM ON FACEBOOK
AND A WEBSITE THAT WAS FALSE.**

## INSURANCE
None

## APPROVAL

          Sergeant Viewed                    Lieutenant Viewed                    Dist. Cmdr. Viewed
     User ID:

     Date/Time:

**FINAL APPROVAL**     User ID: **KV0728**          Date/Time: **05-AUG-2016 13:06**

Crime Prevention Officer Required?          Issued Complaint Slip?          911 Notified?          Warrant?
Parade Related?                    Crime Scene Required?                    Report Status:  **COMPLETED**
Exceptional Clearance:  **NOT APPLICABLE**          Date:
District Follow Up?

G-01263-16

Bureau Follow Up?

G-01263-16

.TIVE

Stamp: 08/05/2016 12:23        Written By: GLYNN PRESTENBACH

On Wednesday June 13, 2016, I Det. Lt. Glynn Prestenbach Jr. was contacted by Sheriff Jerry Larpenter who advised me need me to investigate a complaint from Anthony Alford in reference to information that was being posted on Facebook about Anthony and his insurance company, Alford, Staple, Lapeyre, and Robichaux. Sheriff Larpenter advised that he received a call from Alford about information that was being posted on Facebook under the Facebook name of John Turner. He advised that in the Facebook post there was a statement that made reference to the Sheriff continuing to give Tony Alford (Anthony Alford) the broker contract for the Sheriff''s Office while the Sheriff''s wife is paid to manage Anthony''s office. Sheriff Larpenter informed me that Anthony Alford is not the broker for the Sheriff''s Office but in fact, one of Alford''s partners, Christian Lapeyre is the broker for the Sheriff''s Office. Sheriff Larpenter also informed me that he had an ethics board review conducted before the contract was awarded to Christian which stated there would be no conflict for Alford, Staple, Lapeyre, and Robichaux LLC to conduct business with the Sheriff''s Office. Sheriff Larpenter continued that several other post was made on the Facebook account that spoke about Parish President Gordon Dove, CPA David Prevost, and had mention of District Attorney Joe Waltz. Sheriff Larpenter then ordered me to investigate the incident and contact Alford for further information.

I then searched Facebook for John Turner and did locate a Facebook page for John Turner. I did locate several post on the Facebook page showing the information the Sheriff informed me of. I also noticed Internet links to a website called ExposeDat. Upon reviewing the ExposeDAT website, more information was provided about each Facebook post.

One of the first post on ExposeDAT that I reviewed was titled "The Cozy Consultant". In the post it stated that Terrebonne Parish President Gordon Dove gave his own accountant, David Prevost, a $96,000.00 a year part-time parish consulting contract. Below the post was an attached document that appeared to list the duties to be performed by David Prevost as "Financial and Administrative Consultant to assist the Parish of Terrebonne, the Parish President and Administration Staff".

Another post on the web site that was dated July 11, 2016 was titled, "You Scratch Mine and I''ll Scratch Yours". The post stated that Gordon Dove gave his business partner Anthony Alford the brokerage contact for the employees of the Terrebonne Parish Consolidated Government. The post stated that "Tony prepared a quote for Terrebonne Parish which will put the commission on a $773,924 yearly premium in his pocket". The post further makes reference to Dove and Alford being business partners in Duel Trucking and Transport LLC, Duel Trucking of Montana, LLC. and Alford & Dove Properties, LLC. The post stated that Duel Trucking "went bust" and Alford was left "holding the bag having personally guaranteed $292,864 in bad debit". Also stated in the post "Perhaps this is one of the ways Gordy is trying to pay him back?" referring to Alford. Also in the same post is mention of the Sheriff giving Alford the broker contract for the Sheriff''s office which the Sheriff's wife, Priscilla, being paid six figures to manage Alfords office. The post also stated "We wonder if Sheriff Larpenter insists that Tony pay his wife Pricilla such a large amount in exchange for continuing the broker agreement?".

Other post were also reviewed which were titles "Dove''s Illegal Aliens", and "Black Man and a Noose". There were several other documents attached to each article including court documents about the cases, document for State Of Louisiana Secretary of State which showed information about Duel Trucking and Alford & Dove Properties, LLC and other misc. document. All the post and documents consisting of 24 pages were printed and will later be placed into evidence. See documents for further information.

I then went to 1217 Museum Dr. and made contact with Anthony Alford. Alford informed me that some of the information in the internet post was not fact. He advised that he had placed a bid with the Terrebonne Parish Consolidated Government for certain insurance coverage. He also advised that he had asked for an ethics review from the Louisiana Board of Ethics due to the fact that he and Gordon Dove were business partners. Alford advised that he was cleared by the ethics board and had a letter that stated he could conduct business with the Terrebonne Parish Consolidated Government while Gordon Dove is parish president. Alford then provided me with a copy of the letter which was dated June 20, 2016 and signed by Jennifer Land "For the Board". I then reviewed the letter and noticed it did state that Alford and Dove did co-own Palamo Enterprises Inc, and Alford and Dove Properties LLC. The letter also stated that "the Code of Governmental Ethics would not prohibit AJAI (Alford J. Insurance Corporation) from serving as agent of record for the group insurance benefits for the TPCG while Gordon Dove Sr. serves as Parish President for TPCG. A copy of the Louisiana Board of Ethics letter was placed into evidence. See letter for further information. Alford also advised that the Gordon Dove did not have a say in who was awarded the insurance contact and that it had to go in front of the Parish Council for a vote which had not happen as of this time.

Alford then informed me that he was not the broker for the Terrebonne Parish Sheriff''s Office account, but that Christian Lapeyre was the broker for the Sheriff''s Office. He advised that all four partners are co-owners of Alford Staples, Lapeyre, & Robichaux but that each agent has their own LLC. He advised that the Sheriff''s

office account is controlled by Christian D. Lapeyre Insurance Services, Inc. He also advised that Priscilla
Larpenter is his personal manager for his company and manages his accounts. He advised that Priscilla had
nothing to do the Christian''s accounts so she does not get paid a percentage of those account. Alford
advised that he does pay Pricilla a percentage of each account he has because she services the accounts. He
advised that the information that was placed on Facebook and ExposeDAT about him having the broker
contact for the Sheriff''s Office is false and the information would hurt his business.
  Alford then provided me with a print out of the Facebook post which Priscilla made a comment on the
Facebook post stating that Alford does not write for TPSO, Christian D. Lapeyre Insurance Company had the
account and that she does not get paid on that account. John Turner then responded under Priscilla''s post
that "Chris Lapeyre works for Tony so your point is moot". Alford advised the statement by John Turner is
false because Christian does not work for him.
  Alford then advised he would obtain copies for the formation of Alford, Staples, Lapeyre, & Robichaux
Insurance Agency and would provide me copies once he had all the information.
  On July 14, 2016, I returned to 1217 Musium Dr. and spoke with Alford. He then provided me with a 23 page
document for the formation of Alford, Staples, Lapeyre, & Robichaux Insurance Agency which was dated
February 2, 2005. The document stated that each party, Anthony J. Alford, Robert K. Staples, Christian D.
Lapeyre, and Eldridge J. Robichaux were each listed as owners. (This document was placed into evidence.)
He also provided another 5 page document that was dated January 25, 2002 with a title of "United Stated of
America, State Of Louisiana, Tom Schedler, Secretary of State" which the document showed the managers of
the Limited Liability Company are: Anthony J. Alford, Christian D. Lapeyre, Eldridge J. Robichaux, and Robert
Kenneth Samples Jr. (This document was later placed into evidence.)
  Alford also provided me with a 6 page document with a fax cover sheet from Law Office of Courtney E., Alcock
that contained 3 Louisiana Board of Ethics reviews for previous business deals. In the letter dated July 21,
2003 the percentages of Ownership interest in the LLC are listed as follows: Alford 26%, Staples 26%, Lapeyre
24%, and Robichaux 24%. (These documents were also later placed into evidence.)
  I then obtained a recorded statement from Alford which was later placed onto a CD and transcribed. The CD
was later placed into evidence and the following is a synopsis of his statement.
  Alford stated that Alford, Staple, Lapeyre, & Robichaux is and LLC and the Ken Staples owns 26%, he (Alford)
owns 26%, Chris Lapeyre owns 24% and Eldridge Robichaux had 24%. He explained that they each have their
own LLC''s and they each have their own service reps. He advised that Priscilla Larpenter is his head service
rep. I asked Alford about his affiliation with the Sheriff''s Office which he advised that in the process of writing
for the Sheriff''s Office, they felt they would be fine as long as Priscilla did not benefit financially from the
Sheriff''s Office handling of the insurance. Therefore, they decided that Christian Lapeyre would be the broker
of record and Christian''s service rep, Melissa Hunter, does all the servicing for the Sheriff''s Office. Alford
advised that Christian gets paid from the Sheriff''s Office account and Christian pays him (Alford) half of the
commissions for the Sheriff''s Office account. He also advised that Melissa gets a bonus for doing the service
work on the Sheriff''s Office account. He did advised that Priscilla has no financial gain whatsoever from the
Sheriff''s Office account.
  I then asked Alford if he was the owner of the company Alford, Staples, Lapeyre, & Robichaux which he
advised he is not. He advised the company is an LLC and that he believed Ken Staples is the managing
general partner because Ken manages the business aspects of the company.
  Alford also further explained that Christian is the broker of record for the Sheriff''s Office account through
Christian''s own company. Alford further explained that Anthony J. Alford Insurance is the corporation that
when he writes a piece of business, it''s paid to his corporation. He explained that it''s the same when each
partner writes a piece of business, it''s paid to the partner''s corporation. He did explain that in some cases,
for bonus purposes, the company might pay the check to Alford, Staples, Lapeyre, & Robichaux. He explained
that it helps their volume of business "get up there so that we sometimes we get bonuses that we otherwise
would not on our own".
  Alford advised that he was informed that the Louisiana Ethics Board was contacted concerning the business
with the Sheriff''s Office and that they were cleared by the Ethics Board.
  I then questioned Alford about contacting the Louisiana Ethics Board for the business with the Terrebonne
Parish Government which he advised the parish, through the recommendation of Jules Hebert, did contact the
Ethics board. He advised they had received a letter from the Louisiana Ethics Board in reference to he and
Gordon Dove being business partners and that everything was fine and he could conduct business with the
parish. I then had him explain the businesses he and Dove owned. He advised that Duel Trucking of Montana
was started by him and Dove and that Dove is no longer involved with the company. He also advised they had
Duel Trucking and Transport that operated trucks in North Dakota. He advised that company was started with
Dove, Timmy Thompson and himself. He advised as they moved forward, his (Alford) brother came in and

G-01263-16

purchase stock of the company from Dove and Thompson. He advised his (Alford) brother-in-law also came in and purchased stock from Dove and Thompson. He advised as time went, Dove and Thompson resigned their other shares and got out of the company.

I then had Alford explain the relationship of the company mentioned in the ethics board review that he and Dove had together which was Paloma Enterprises and Alford and Dove Properties. He explained that Paloma Enterprises was the parent company of Duel Trucking Inc. in Lafayette which was a different company from Duel Trucking and Transport. He also advised that Alford and Dove Properties owns the Regions Bank building on Barrow St. in Houma. (See statement for further information).

Based on information gather so far, on Monday July 18, 2016 I applied for a search warrant to Facebook for all information on the account of John Turner including all IP addresses associated with the Facebook account <http://facebook.com/1155468798A>. The search warrant was signed by Judge George Larke. (NOTE: A transcribed copy of Alford''s statement was attached to the search warrant affidavit for the Judges review). I later received an e-mail response from Facebook which stated that if a non-disclosure clause was not in the search warrant, they would notify the owner of the Facebook account that a search warrant was submitted for information on the account. Fearing a destruction of evidence, I recalled the search warrant and re-applied for another search warrant for the account with a non-disclosure clause in the search warrant. The new warrant was signed by Judge George Larke on Thursday July 21, 2016.

On Tuesday July 26, 2016 I received information back from Facebook which was several IP addresses associated with the Facebook account. I then searched the IP addresses and noticed that several of the more recent address were routed to other countries outside the United States which included United Kingdom, Switzerland, Netherlands, Germany, France, Norway, Romania, Austria, and Canada. I then checked the last set of IP address (which were dated as the first IP addresses associated with the Facebook account) which I noticed 6 entrees with the same IP address of 2602:30a:c0a9:3160:84f6:73bd:cd36:becd which were for dates and times between 7-2-16 21:30:46 UTC time and 7-2-16 23:30:56 UTC time. I noticed these dates and time corresponded to the first Facebook post that were posted on the Facebook account of John Turner. I then searched the IP address and noticed the IP address was assigned to AT&T. On Tuesday July 26, 2016 I applied for a search warrant to AT&T for information for the above listed IP address. The search warrant was signed by Judge Randall Bethancourt. (Anthony Alford''s statement was also attached to this affidavit as well for the Judges review.

On Monday August 1, 2016 I received an e-mail form AT&T with the information requested from the search warrant. AT&T advised the IP address of 172.10.147.22 with a start date of June 8, 2016 was for Wayne Anderson for 209 Saint Francis St. Houma LA. I then noticed the IP address was different than the IP address in the search warrant. I then contacted AT&T and inquired as to why the IP address was different. I was advised by AT&T that the IP address that was in the search warrant was an IPv6 address and IPv6 addresses have to be converted to IPv4 addresses to obtained information. The AT&T representative then advised she would run the IPv6 address again to make sure the conversion was correct. She then advised that the IP address of 2602:30a:c0a9:3160:84f6:73bd:cd36:becd did convert to IPv4 address of 172.10.147.22. She also advised me that the IP address of 172.10.147.22 assigned to the address of 209 Saint Francis St. was a static IP address that has been assigned to the residence since the date service started. (A static IP address means the IP address does not change.)

Knowing that Wayne Anderson is a police officer for the Houma Police Department, I contacted Sheriff Larpenter and informed me of the information. Sheriff Larpenter advised me to stand by on any further action till further notice.

On Monday 8-1-16 at approximately 1930 hrs. I received a phone call from Capt. Kody Voisin with TPSO who advised he spoke with Sheriff Larpenter who wanted a search warrant conducted on the residence at 209 Saint Francis St. Capt. Voisin advised for me to contact Sheriff Larpenter to get details from him about the incident. I then contacted Sheriff Larpenter by phone who advised he had spoken with DA Joe Waitz and they had agreed to continue with the investigation and conduct a search warrant on the residence. Sheriff Larpenter then informed me to contact the original judge who signed the first two search warrants for this case so that a judge who already has knowledge of the case can review the new search warrant. I advised Sheriff Larpenter that Judge Larke had singed the search warrant to Facebook and Judge Bethancourt had signed the search warrant to AT&T. Sheriff Larpenter advised it did not matter which judge of the two I contacted.

I then went to TPSO headquarters and typed a search warrant for the residence of 209 St. Francis St. I then attempted to contact Judge Larke by phone and received no answer. I then contact Judge Bethancourt by phone who did answer and I explained the situation to him. Judge Bethancourt advised that he just returned from a trip and was tired and would not sign the search warrant at the time. He advised that due to the nature of this incident, he wanted time to carefully read the affidavit for the search warrant and would contact me back on Tuesday August 2, 2016.

I then contacted Sheriff Larpenter by phone and advised him of Judge Bethancourt''s decision.
  On Tuesday August 2, 2016 I was contacted by phone by Sheriff Larpenter who advised that Gordon Dove
wished to provide a statement on this incident. I then went to Dove''s residence and spoke with him about
several of the post on the Facebook page of John Turner and the website ExposeDAT. A recorded interview
was obtained from Dove which the follow is a synopsis of his statement.
  Dove explains that in the post titled, "Gordon Doves Company Sued for $792,725 Worth of Unpaid Bills" that
he never personal owned Duel Trucking and Transport LLC. The article stated that "Terrebonne Parish
President Gordon Dove and his partner Tony Alford started a trucking company called Duel Trucking LLC and
Duel Trucking and Transport LLC. To date, Duel Trucking and Transport LLC had been sued for $792,725
worth of unpaid bills." Dove advised that another company, Southern Palms LLC owned a part of Duel
Trucking and Transport LLC which he was part of Southern Palms LLC. Dove advised Southern Palms LLC.
had sold out of Duel Trucking and Transport LLC on May 28, 2013. Dove did advised that he does own part of
another company that owns part Duel Trucking LLC. He advised Duel Trucking LLC and Duel Trucking and
Transport LLC are two different companies. He advised that Duel Trucking LLC is not part of the lawsuit.
Dove advised he had no idea about the lawsuit for $792,725.00.
  Dove also explained that he was not a part of nor was there any dumping of radioactive waste. In another
article on ExposeDAT titled "Gordon Dove and Tony Alford''s Radioactive Waste Dumping" the article stated
"while newly elected Terrebonne Parish President Gordon Dove was Chairman of the Louisiana House Natural
Resources Committee, he and his business partner Tony Alford were apparently simultaneously dumping
radioactive waste in eastern Montana." Dove advised that he had no part in this incident and that he was out
of Duel Trucking and Transport at the time of the incident. He advised that the article is false because it shows
him and Tony Alford as business partners at the time of the incident which he advised he was not.
  Dove also spoke about the allegation in the article titled "You Scratch Mine and I''ll Scratch Yours". He
advised the article stated that Dove gave his business partner Tony Alford the brokerage contract for the
employees of the Terrebonne Parish Consolidated Government because he (Dove) left Alford when Duel
Trucking "went bust" leaving Alford with $292,864 in bad debit . He advised the article is very misleading and
false because it was talking about a way he (Dove) is trying to pay Alford back. Dove advised that they
contacted the ethics board about Alford and his businesses dealing and the ethics board had said there was
no ethics violation. He also advised that the Parish Council had to approve of any contact, by at least 5 votes,
before he could authorized any contract.
  Dove also spoke of another article titled "Black Man and a Noose" where the article stated that an African
American employee of Vacco Inc. was threatened by a Caucasians male working in the same yard. He advised
that the article seemed to make it look like a Vacco employee was the suspect in that incident. Dove explained
that the person that was accused of this incident was not an employee of Vacco. He also stated that they had
went to EEOC about the incident and they were found not at fault.
  See Gordon Dove''s statement for further information.
On August 2, 2016 before Judge Bethancourt was in his office I brought a copy of the ExposeDAT website to
his office for him to review. I later went to Judge Bethancourt''s office and spoke with him about the case. I
asked Judge Bethencourt for his opinion about the case, which he reviewed the Defamation law (Louisiana RS
14:47) and advised from what he read the law does fit this case. He then signed the search warrant for 209 St.
Francis St. Capt. Kody Voisin, Det. Billy Dupre, Det. Donald Tomlin, Det. Desmond Moore, Lt. Brian Falgout,
and I then when to the address of 209 St. Francis St. to conduct the search warrant at 1207 hrs. Upon arrival
no one was at the residence. I then contacted Wayne Anderson by phone and advised him that I needed him
to come to his residence. Wayne asked me what was going on which I told him I did not want to discuss the
issue over the phone and that I needed to tell him in person. Wayne then arrived at the residence where I
spoke with him and provided him with a copy of the search warrant. I did explain to Wayne the information
from the search warrants to Facebook and AT&T and that the first IP address associated with Facebook
account came back to the IP address at this residence. Wayne then stated that the only computer in his
residence was a computer his son used to play games. Capt. Kody Voisin then advised Wayne of his miranda
rights which Wayne advised he understood. I then asked Wayne If he had any knowledge of the Facebook
account of John Turner or the website ExposeDAT, which he advised he only saw the post on Facebook. He
also stated that he had no knowledge of a John Turner nor did he have any association with anyone claiming
to be John Turner. Wayne then advised he wanted to contact his attorney before we entered the residence
which I advised him that was fine. Wayne then advised me that his attorney was enroute to the residence so
we stood by from conducting the search warrant until his attorney''s arrival.
  Upon Wayne''s attorney arrival, Jerry Smitko, she was advised of the search warrant and of the information
that was obtained to get the search warrant. She advised that she was sending a Motion to Quash the search
warrant to the Judge and she was contacting the Judge. She then gave me her cell phone advising me that the

Judge wish to speak with me.  Upon answering the phone, I recognized the voice as Judge Arceneaux.  Judge Arceneaux then asked why he was not sent the search warrant being he was the duty judge for the week.  I advised him that Sheriff Larpenter instructed me to go to a judge that signed the previous search warrants because they would already be familure with the case. Judge Arceneaux then advised me that he would not stop a search warrant that was signed by another judge.

We then began the search warrant on August 2, 2016 at 1340 hrs.  In the first bedroom I located a Lenovo laptop computer model Flex 3-1130 serial number P2008PT3 that was on the bed in the bed room.  Upon entering the second bedroom, Capt. Voisin located on top of a dresser next to the bed a Samsung Galaxy S4 mini cell phone model SPH-LS20 DEC number 256691512809637895. Also located in the second bedroom on top of a dresser Capt. Voisin locate a HP Pavilion laptop computer model CS1C serial number CND9352YJY. Also in the second bedroom located in a drawer in a dresser drawer, Det. Donald Tomlin located 3 cell phone. Iphone 4S FCCID BCG-E2403A IMIE 9900018253070, Samsung Galaxy S4 mini model SPH-LS20 DEC: 256691513600207112, I Phone 3 model A1301 FCCID BCGA1303B.  Capt. Voisin then advised that Wayne provided him with his cell phone that was inside of Wayne''s Houma Police Department unit which is a Samsung Galaxy Note 5 DEC: 25669184000204821.  No other devices were located to be seized that were mention in the search warrant.

While en-route to TPSO headquarters, I received a phone call from Judge Bethancourt who advised me that Smitco did file a Motion to Quash the search warrant.  Judge Bethancourt advised he was going to have a hearing on the matter and for me to seal all the evidence that was collected until the court date, which I advised him I would.

Upon arriving at TPSO headquarters, I was meet by Smitko who requested that the computers and cell phones be placed with the Terrebonne Parish Clerk of Courts Office for safekeeping until the court date. We then contact Sheriff''s Office Attorney Bill Dodd who did advise me that it would be fine that the Clerk of Courts Office secure the item in their vault. Smitko, Det. Dupre and I then gather the items and brought them to Theresa Robichaux at the Clerk Of Court and we explained to her that we would like her to secure the items until the court date. Mrs. Robichaux advised she would keep the items but advised Ms. Smitko that she would need to obtain a Court Order for her to keep the items. Det. Dupre and I sealed the items in an evidence bag that was sealed with evidence tape. I then completed an evidence release form and released the items to Mrs. Robichaux.

Upon arrival at TPSO headquarters on Wednesday August 3, 2016, Det. Lt. Donald Tomlin advised that he had received a private Facebook message from Jennifer Anderson, Wayne Anderson''s wife. In the message Jennifer stated "I like how you went through my panty drawer today. Too bad you only found old shit. Perhaps you should try harder. Catchdatifyoucan#. Det. Tomlin advised he could no longer view the message on Facebook but had taken a screen shot of the message. He then provided me with a copy of the message which was placed into evidence.

On Wednesday night August 3, 2016, a report was posted to WWL TV about the investigation. WWL also posted the report on their Facebook page.  As I was reading the comments under the report, I noticed a post by a Brad Williams who advised in summery that he was able to find out who the suspect was by "metadata" that was attached to photos in the Facebook post. He post information that the device was a I phone 6 date of July 20, 2016 at 12:32:15pm with latitude/longitude of 29,28''41.5" north, 90,45''29.4" west with a location guessed from coordinates 209 St. Francis St., Houma. LA  70364.  I then took screen shot photos of the post which were later printed and placed into evidence.  I did notice that the address of 209 St. Francis St is Wayne Anderson''s residence.

Upon returning to work on Thursday August 4, 2016 I contacted Det. Lt. Donald Tomlin who has knowledge about the information the Brad Williams posted.  Det. Tomlin then attempted to obtain the information that Brad Williams had posted but advised he was unable to do so because the photos had been deleted from the Facebook account of John Turner.

On August 4, 2016 I was contacted by Alford who advised he wished to provide another statement in reference to more information he found on the John Turner Facebook and ExposeDAT website that he found was false. A recorded statement was obtained from Alford which the following is a synopsis of his statement.

Alford advised he found false information in the article titled "You Scratch Mine and I''ll Scratch Yours. Alford advised that Dove was no longer a part of Duel Trucking and Transport and had been resigned from that company for approximately 3 years.  He advised Duel Trucking Inc. is in Lafeyette which they both own 50% of that company.  He advised the article makes reference to $292,864 that was part of Duel Trucking and Transport which Dove has no part of.  He advised that the article stated that there was personal guarantee by Dove and him which he stated that he did not think that was the case.  He advised "this is not a payback from Gordy Dove to me to be able to pick up this insurance".  He advised the insurance had to be approved by the council and that it was not approved by Dove.  Alford also advised that they had got an ethics opinion prior to

anything being done and they had to wait two to three months before anything could be done.  Alford advised
he believed it was slander to apply that Dove is giving Alford the insurance to pay him back for a debit.
 This case reminds open pending further information.

G-01263-16

Printed by: GP0839          09/02/2016 14:08          Page  1     of  9

| | | | | | |
|---|---|---|---|---|---|
| **LA0550000** | Signal **21** | Rep Area **3RDV** | Item # **G-01263-16** | Report Type **INITIAL** | Date **13-JUL-2016**   Time **1359** |

| Day of Wk. | Begin Date | Begin Time | End Date | End Time | Location of Offense |
|---|---|---|---|---|---|
| **WED** | **13-JUL-2016** | **1359** | | | **1217 MUSEUM DR HOUMA 70360** |

**G-01263-16**

Reporting Officer
**GLYNN PRESTENBACH**

Responding Detective
**GLYNN PRESTENBACH JR**

Supervisor

**UCR**

| | | | |
|---|---|---|---|
| PR: **P381**    BP: **305** | PR: **381**    BP: **305** | PR:    BP: | |
| Arrived:    **131359** | Notified:    **131359** | Notified: | |
| Completed:    **051300** | Arrived:    **131359** | Arrived: | |

## REPORTING PERSON

Name: **ANTHONY ALFORD**          Race: **WHITE**          Sex: **MALE**

DOB: **22-MAY-1964**   Age: **52**          Employer/School: **ALFORD STAPLES LAPEYRE &**

Address: **1217 MUSEUM DR**          Address: **1217 MUSEUM DR**

City/St/Zip: **HOUMA, LA 70360**          City/St/Zip: **HOUMA, LA 70360**

Social Security #          Drivers Lic #          D.L. State

Home Phone:

Work Phone:

Identify Suspect?          Voluntary Statement?          Cell Phone: **()--**

## VICTIM

<u>Victim Sequence Number:</u>   **1**          Type: **INDIVIDUAL**          For Insurance Purposes?

Name:  **ANTHONY ALFORD**          Race: **WHITE**          Sex: **MALE**

DOB: **22-MAY-1964**   Age: **52**          Resident? **YES**          Ethnicity: **NON-HISPANIC**

Height:          Weight:          Driver's License:          State of issue:

SSN:          Employer/School: **ALFORD STAPLES LAPEYRE &**

Address:  **1217 MUSEUM DR**          Address: **1217 MUSEUM DR**

City/St/Zip:  **HOUMA, LA 70360**          City/St/Zip:          **HOUMA, LA  70360**

Social Security #          Drivers Lic #          D.L. State

Home Phone:

Work Phone:

Cell Phone:

Aggr. Aslt/Homi. Circ 1:

Aggr. Aslt/Homi. Circ 2:

Add'l Just. Homi./LEOKA:          Weapon Implication:

Under Influence?          Gun Permit?          ID Suspect?          Voluntary Statement?          Domestic Violence?

Gang Related:

Victim Injury Codes:  **NONE**

## OFFENSE

<u>Offense Sequence Number:</u>  **1**          Victim: **1**          Suspect: **1**

R.S. Number: **RS14:47**          Title: **DEFAMATION**

Attempted/Completed: **COMPLETED**          Location Type: **OTHER / UNKNOWN**          Number of Premises:

Criminal Activity 1: **OTHER**          Weapon/Force Type 1: **NONE**

## SUSPECT

Printed by: GP0839      09/02/2016 14:08      Page  2   of  9

**Suspect Sequence Number:**      **1**

Name:   **UNKNOWN**                                Race: **UNKNOWN**                Sex: **UNKNOWN**

DOB:                Age From:            To:            Ethnicity:                        Resident?

Height From:      To:            Weight From:        To:        Eye Color:

Hair Color                              Hair Length:

Address:                                        City/St/Zip:

Alcohol Consumed?      Computer Used?        Drugs Used?        Gaming Motive?      Gang Related:

Armed:                                        Hate/Bias:  **NONE**

Can be Identified by Witness:

Identifiable Features:

Location:

Arrest Type:  **NONE**                Voluntary Statement?      Local Check?      State Check?      NCIC Check?

Suspect Injury Codes:   **NONE**

Social Security #      Drivers Lic #        D.L. State

Home Phone:

Work Phone:

Cell Phone:

G-01263-16

## ADDITIONAL WITNESS
None

## PROPERTY
None

## VEHICLE
None

## CRIME SCENE
None

## INVESTIGATION

Type of  Force Used:                                Security Device Installed?

Point of Entry:                                    Security Device Activated?

Safe Job?            Gambling Devices on Premises?        Alcoholic Beverage Outlet?

Prior History of Domestic Violence?        Prior History Documented?        Number of Prior Cases:

Modus Operandi (MO): **COMPLAINANT ADVISED INFORMATION WAS BEING POSTED ABOUT HIM ON FACEBOOK AND A WEBSITE THAT WAS FALSE.**

## INSURANCE
None

## APPROVAL

Sergeant Viewed            Lieutenant Viewed            Dist. Cmdr. Viewed

User ID:

Date/Time:

**FINAL APPROVAL**      User ID: **KV0728**        Date/Time: **05-AUG-2016 13:06**

Crime Prevention Officer Required?        Issued Complaint Slip?        911 Notified?            Warrant?

Parade Related?                Crime Scene Required?

Exceptional Clearance:  **NOT APPLICABLE**        Date:        Report Status:  **COMPLETED**

District Follow Up?

Bureau Follow Up?

G-01263-16

Printed by: GP0839          09/02/2016 14:08          Page   4   of  9

,TIVE

Stamp: **08/05/2016 12:23**          Written By: **GLYNN PRESTENBACH**

On Wednesday June 13, 2016, I Det. Lt. Glynn Prestenbach Jr. was contacted by Sheriff Jerry Larpenter who advised me need me to investigate a complaint from Anthony Alford in reference to information that was being posted on Facebook about Anthony and his insurance company, Alford, Staple, Lapeyre, and Robichaux. Sheriff Larpenter advised that he received a call from Alford about information that was being posted on Facebook under the Facebook name of John Turner. He advised that in the Facebook post there was a statement that made reference to the Sheriff continuing to give Tony Alford (Anthony Alford) the broker contract for the Sheriff"s Office while the Sheriff"s wife is paid to manage Anthony"s office. Sheriff Larpenter informed me that Anthony Alford is not the broker for the Sheriff"s Office but in fact, one of Alford"s partners, Christian Lapeyre is the broker for the Sheriff"s Office. Sheriff Larpenter also informed me that he had an ethics board review conducted before the contract was awarded to Christian which stated there would be no conflict for Alford, Staple, Lapeyre, and Robichaux LLC to conduct business with the Sheriff"s Office. Sheriff Larpenter continued that several other post were made on the Facebook account that spoke about Parish President Gordon Dove, CPA David Prevost, and had mention of District Attorney Joe Waltz. Sheriff Larpenter then ordered me to investigate the incident and contact Alford for further information.

I then searched Facebook for John Turner and did locate a Facebook page for John Turner. I did locate several post on the Facebook page showing the information the Sheriff informed me of. I also located internet links to a website called ExposeDat. Upon reviewing the ExposeDAT website, more information was provided about each Facebook post.

One of the first post on ExposeDAT that I reviewed was titled "The Cozy Consultant". In the post it stated that Terrebonne Parish President Gordon Dove gave his own accountant, David Prevost, a $96,000.00 a year part-time parish consulting contract. Below the post was an attached document that appeared to list the duties to be performed by David Prevost as "Financial and Administrative Consultant to assist the Parish of Terrebonne, the Parish President and Administration Staff".

Another post on the web site that was dated July 11, 2016 was titled, "You Scratch Mine and I"ll Scratch Yours". The post stated that Gordon Dove gave his business partner Anthony Alford the brokerage contact for the employees of the Terrebonne Parish Consolidated Government. The post stated that "Tony prepared a quote for Terrebonne Parish which will put the commission on a $773,924 yearly premium in his pocket". The post further makes reference to Dove and Alford being business partners in Duel Trucking and Transport LLC, Duel Trucking of Montana, LLC. and Alford & Dove Properties, LLC. The post stated that Duel Trucking "went bust" and Alford was left "holding the bag having personally guaranteed $292,864 in bad debit". Also stated in the post "Perhaps this is one of the ways Gordy is trying to pay him back?" referring to Alford.

Also in the same post is mention of the Sheriff giving Alford the broker contract for the Sheriff"s office which the Sheriff"s wife, Priscilla, being paid six figures to manage Alfords office. The post also stated "We wonder if Sheriff Larpenter insists that Tony pay his wife Pricilla such a large amount in exchange for continuing the broker agreement?".

Other post were also reviewed which were titles "Dove"s Illegal Aliens", and "Black Man and a Noose". There were several other documents attached to each article including court documents about the cases, document for State Of Louisiana Secretary of State which showed information about Duel Trucking and Alford & Dove Properties, LLC and other misc. document. All the post and documents consisting of 24 pages were printed and will later be placed into evidence. See documents for further information.

I then went to 1217 Museum Dr. and made contact with Anthony Alford. Alford informed me that some of the information in the internet post was not fact. He advised that he had placed a bid with the Terrebonne Parish Consolidated Government for certain insurance coverage. He also advised that he had asked for an ethics review from the Louisiana Board of Ethics due to the fact that he and Gordon Dove were business partners. Alford advised that he was cleared by the ethics board and had a letter that stated he could conduct business with the Terrebonne Parish Consolidated Government while Gordon Dove is parish president. Alford then provided me with a copy of the letter which was dated June 20, 2016 and signed by Jennifer Land "For the Board". I then reviewed the letter and noticed it did state that Alford and Dove did co-own Palamo Enterprises Inc, and Alford and Dove Properties LLC. The letter also stated that "the Code of Governmental Ethics would not prohibit AJAI (Alford J. Insurance Corporation) from serving as agent of record for the group insurance benefits for the TPCG while Gordon Dove Sr. serves as Parish President for TPCG. A copy of the Louisiana Board of Ethics letter was placed into evidence. See letter for further information. Alford also advised that the Gordon Dove did not have a say in who was awarded the insurance contact and that it had to go in front of the Parish Council for a vote which had not happen as of this time.

Alford then informed me that he was not the broker for the Terrebonne Parish Sheriff"s Office account, but that Christian Lapeyre was the broker for the Sheriff"s Office. He advised that all four partners are co-owners of Alford Staples, Lapeyre, & Robichaux but that each agent has their own LLC. He advised that the Sheriff"s

office account is controlled by Christian D. Lapeyre Insurance Services, Inc. He also advised that Priscilla
Larpenter is his personal manager for his company and manages his accounts. He advised that Priscilla had
nothing to do the Christian''s accounts so she does not get paid a percentage of those account. Alford
advised that he does pay Pricilla a percentage of each account he has because she services the accounts. He
advised that the information that was placed on Facebook and ExposeDAT about him having the broker
contact for the Sheriff''s Office is false and the information would hurt his business.

G-01263-16

  Alford then provided me with a print out of the Facebook post which Priscilla made a comment on the
Facebook post stating that Alford does not write for TPSO, Christian D. Lapeyre Insurance Company had the
account and that she does not get paid on that account. John Turner then responded under Priscilla''s post
that "Chris Lapeyre works for Tony so your point is moot". Alford advised the statement by John Turner is
false because Christian does not work for him.
  Alford then advised he would obtain copies for the formation of Alford, Staples, Lapeyre, & Robichaux
Insurance Agency and would provide me copies once he had all the information.
  On July 14, 2016, I returned to 1217 Musium Dr. and spoke with Alford. He then provided me with a 23 page
document for the formation of Alford, Staples, Lapeyre, & Robichaux Insurance Agency which was dated
February 2, 2005. The document stated that each party, Anthony J. Alford, Robert K. Staples, Christian D.
Lapeyre, and Eldridge J. Robichaux were each listed as owners. (This document was placed into evidence.)
He also provided another 5 page document that was dated January 25, 2002 with a title of "United Stated of
America, State Of Louisiana, Tom Schedler, Secretary of State" which the document showed the managers of
the Limited Liability Company are: Anthony J. Alford, Christian D. Lapeyre, Eldridge J. Robichaux, and Robert
Kenneth Samples Jr. (This document was later placed into evidence.)
  Alford also provided me with a 6 page document with a fax cover sheet from Law Office of Courtney E., Alcock
that contained 3 Louisiana Board of Ethics reviews for previous business deals. In the letter dated July 21,
2003 the percentages of Ownership interest in the LLC are listed as follows: Alford 26%, Staples 26%, Lapeyre
24%, and Robichaux 24%. (These documents were also later placed into evidence.)
  I then obtained a recorded statement from Alford which was later placed onto a CD and transcribed. The CD
was later placed into evidence and the following is a synopsis of his statement.
  Alford stated that Alford, Staple, Lapeyre, & Robichaux is and LLC and the Ken Staples owns 26%, he (Alford)
owns 26%, Chris Lapeyre owns 24% and Eldridge Robichaux had 24%. He explained that they each have their
own LLC''s and they each have their own service reps. He advised that Priscilla Larpenter is his head service
rep. I asked Alford about his affiliation with the Sheriff''s Office which he advised that in the process of writing
for the Sheriff''s Office, they felt they would be fine as long as Priscilla did not benefit financially from the
Sheriff''s Office handling of the insurance. Therefore, they decided that Christian Lapeyre would be the broker
of record and Christian''s service rep, Melissa Hunter, does all the servicing for the Sheriff''s Office. Alford
advised that Christian gets paid from the Sheriff''s Office account and Christian pays him (Alford) half of the
commissions for the Sheriff''s Office account. He also advised that Melissa gets a bonus for doing the service
work on the Sheriff''s Office account. He did advised that Priscilla has no financial gain whatsoever from the
Sheriff''s Office account.
  I then asked Alford if he was the owner of the company Alford, Staples, Lapeyre, & Robichaux which he
advised he is not. He advised the company is an LLC and that he believed Ken Staples is the managing
general partner because Ken manages the business aspects of the company.
  Alford also further explained that Christian is the broker of record for the Sheriff''s Office account through
Christian''s own company. Alford further explained that Anthony J. Alford Insurance is the corporation that
when he writes a piece of business, it''s paid to his corporation. He explained that it''s the same when each
partner writes a piece of business, it''s paid to the partner''s corporation. He did explain that in some cases,
for bonus purposes, the company might pay the check to Alford, Staples, Lapeyre, & Robichaux. He explained
that it helps their volume of business "get up there so that we sometimes we get bonuses that we otherwise
would not on our own".
  Alford advised that he was informed that the Louisiana Ethics Board was contacted concerning the business
with the Sheriff''s Office and that they were cleared by the Ethics Board.
  I then questioned Alford about contacting the Louisiana Ethics Board for the business with the Terrebonne
Parish Government which he advised the parish, through the recommendation of Jules Hebert, did contact the
Ethics board. He advised they had received a letter from the Louisiana Ethics Board in reference to he and
Gordon Dove being business partners and that everything was fine and he could conduct business with the
parish. I then had him explain the businesses he and Dove owned. He advised that Duel Trucking of Montana
was started by him and Dove and that Dove is no longer involved with the company. He also advised they had
Duel Trucking and Transport that operated trucks in North Dakota. He advised that company was started with
Dove, Timmy Thompson and himself. He advised as they moved forward, his (Alford) brother came in and

purchase stock of the company from Dove and Thompson.  He advised his (Alford) brother-in-law also came in and purchased stock from Dove and Thompson.  He advised as time went, Dove and Thompson resigned their other shares and got out of the company.

I then had Alford explain the relationship of the company mentioned in the ethics board review that he and Dove had together which was Paloma Enterprises and Alford and Dove Properties. He explained that Paloma Enterprises was the parent company of Duel Trucking Inc. in Lafayette which was a different company from Duel Trucking and Transport. He also advised that Alford and Dove Properties owns the Regions Bank building on Barrow St. in Houma. (See statement for further information).

Based on information gather so far, on Monday July 18, 2016 I applied for a search warrant to Facebook for all information on the account of John Turner including all IP addresses associated with the Facebook account <http://facebook.com/1155468798A>.  The search warrant was signed by Judge George Larke. (NOTE: A transcribed copy of Alford''s statement was attached to the search warrant affidavit for the Judges review).  I later received an e-mail response from Facebook which stated that if a non-disclosure clause was not in the search warrant, they would notify the owner of the Facebook account that a search warrant was submitted for information on the account. Fearing a destruction of evidence, I recalled the search warrant and re-applied for another search warrant for the account with a non-disclosure clause in the search warrant. The new warrant was signed by Judge George Larke on Thursday July 21, 2016.

On Tuesday July 26, 2016 I received information back from Facebook which was several IP addresses associated with the Facebook account. I then searched the IP addresses and noticed that several of the more recent address were routed to other countries outside the United States which included United Kingdom, Switzerland, Netherlands, Germany, France, Norway, Romania, Austria, and Canada. I then checked the last set of IP address (which were dated as the first IP addresses associated with the Facebook account) which I noticed 6 entrees with the same IP address of 2602:30a:c0a9:3160:84f6:73bd:cd36:becd which were for dates and times between 7-2-16 21:30:46 UTC time and 7-2-16 23:30:56 UTC time. I noticed these dates and time corresponded to the first Facebook post that were posted on the Facebook account of John Turner. I then searched the IP address and noticed the IP address was assigned to AT&T. On Tuesday July 26, 2016 I applied for a search warrant to AT&T for information for the above listed IP address. The search warrant was signed by Judge Randall Bethancourt. (Anthony Alford''s statement was also attached to this affidavit as well for the Judges review.

On Monday August 1, 2016 I received an e-mail form AT&T with the information requested from the search warrant. AT&T advised the IP address of 172.10.147.22 with a start date of June 8, 2016 was for Wayne Anderson for 209 Saint Francis ST. Houma LA. I then noticed the IP address was different than the IP address in the search warrant. I then contacted AT&T and inquired as to why the IP address was different. I was advised by AT&T that the IP address that was in the search warrant was an IPv6 address and IPv6 addresses have to be converted to IPv4 addresses to obtained information. The AT&T representative then advised she would run the IPv6 address again to make sure the conversion was correct. She then advised that the IP address of 2602:30a:c0a9:3160:84f6:73bd:cd36:becd did convert to IPv4 address of 172.10.147.22. She also advised me that the IP address of 172.10.147.22 assigned to the address of 209 Saint Francis St. was a static IP address that has been assigned to the residence since the date service started. (A static IP address means the IP address does not change.)

Knowing that Wayne Anderson is a police officer for the Houma Police Department, I contacted Sheriff Larpenter and informed him of the information. Sheriff Larpenter advised me to stand by on any further action till further notice.

On Monday 8-1-16 at approximately 1930 hrs. I received a phone call from Capt. Kody Voisin with TPSO who advised he spoke with Sheriff Larpenter who wanted a search warrant conducted on the residence at 209 Saint Francis St. Capt. Voisin advised for me to contact Sheriff Larpenter to get details from him about the incident. I then contacted Sheriff Larpenter by phone who advised he had spoken with DA Joe Waitz and they had agreed to continue with the investigation and conduct a search warrant on the residence. Sheriff Larpenter then informed me to contact the original judge who signed the first two search warrants for this case so that a judge who already has knowledge of the case can review the new search warrant. I advised Sheriff Larpenter that Judge Larke had singed the search warrant to Facebook and Judge Bethancourt had signed the search warrant to AT&T. Sheriff Larpenter advised it did not matter which judge of the two I contacted.

I then went to TPSO headquarters and typed a search warrant for the residence of 209 St. Francis St. I then attempted to contact Judge Larke by phone and received no answer. I then contact Judge Bethancourt by phone who did answer and I explained the situation to him. Judge Bethancourt advised that he just returned from a trip and was tired and would not sign the search warrant at the time. He advised that due to the nature of this incident, he wanted time to carefully read the affidavit for the search warrant and would contact me back on Tuesday August 2, 2016.

I then contacted Sheriff Larpenter by phone and advised him of Judge Bethancourt''s decision.
 On Tuesday August 2, 2016 I was contacted by phone by Sheriff Larpenter who advised that Gordon Dove
wished to provide a statement on this incident.  I then went to Dove''s residence and spoke with him about
several of the post on the Facebook page of John Turner and the website ExposeDAT.  A recorded interview
was obtained from Dove which the follow is a synopsis of his statement.
 Dove explains that in the post titled, "Gordon Doves Company Sued for $792,725 Worth of Unpaid Bills" that
he never personal owned Duel Trucking and Transport LLC.  The article stated that "Terrebonne Parish
President Gordon Dove and his partner Tony Alford started a trucking company called Duel Trucking LLC and
Duel Trucking and Transport LLC.  To date, Duel Trucking and Transport LLC had been sued for $792,725
worth of unpaid bills." Dove advised that another company, Southern Palms LLC owned a part of Duel
Trucking and Transport LLC which he was part of Southern Palms LLC.  Dove advised Southern Palms LLC.
had sold out of Duel Trucking and Transport LLC on May 28, 2013.  Dove did advised that he does own part of
another company that owns part Duel Trucking LLC.  He advised Duel Trucking LLC and Duel Trucking and
Transport LLC are two different companies.  He advised that Duel Trucking LLC is not part of the lawsuit.
Dove advised he had no idea about the lawsuit for $792,725.00.
 Dove also explained that he was not a part of nor was there any dumping of radioactive waste.  In another
article on ExposeDAT titled "Gordon Dove and Tony Alford''s Radioactive Waste Dumping" the article stated
"while newly elected Terrebonne Parish President Gordon Dove was Chairman of the Louisiana House Natural
Resources Committee, he and his business partner Tony Alford were apparently simultaneously dumping
radioactive waste in eastern Montana." Dove advised that he had no part in this incident and that he was out
of Duel Trucking and Transport at the time of the incident.  He advised that the article is false because it shows
him and Tony Alford as business partners at the time of the incident which he advised he was not.
 Dove also spoke about the allegation in the article titled "You Scratch Mine and I''ll Scratch Yours".  He
advised the article stated that Dove gave his business partner Tony Alford the brokerage contract for the
employees of the Terrebonne Parish Consolidated Government because he (Dove) left Alford when Duel
Trucking "went bust" leaving Alford with $292,864 in bad debit .  He advised the article is very misleading and
false because it was talking about a way he (Dove) is trying to pay Alford back.  Dove advised that they
contacted the ethics board about Alford and his businesses dealing and the ethics board had said there was
no ethics violation.  He also advised that the Parish Council had to approve of any contact, by at least 5 votes,
before he could authorized any contract.
 Dove also spoke of another article titled "Black Man and a Noose" where the article stated that an African
American employee of Vacco Inc. was threatened by a Caucasians male working in the same yard.  He advised
that the article seemed to make it look like a Vacco employee was the suspect in that incident.  Dove explained
that the person that was accused of this incident was not an employee of Vacco.  He also stated that they had
went to EEOC about the incident and they were found not at fault.
 See Gordon Dove''s statement for further information.
On August 2, 2016 before Judge Bethancourt was in his office I brought a copy of the ExposeDAT website to
his office for him to review.  I later went to Judge Bethancourt''s office and spoke with him about the case.  I
asked Judge Bethencourt his opinion about the case, which he reviewed the Defamation law (Louisiana RS
14:47) and advised from what he read the law does fit this case.  He then signed the search warrant for 209 St.
Francis St.  Capt. Kody Voisin, Det. Billy Dupre, Det. Donald Tomlin, Det. Desmond Moore, Lt. Brian Falgout,
and I then when to the address of 209 St. Francis St. to conduct the search warrant at 1207 hrs.  Upon arrival
no one was at the residence.  I then contacted Wayne Anderson by phone and advised him that I needed him
to come to his residence.  Wayne asked me what was going on which I told him I did not want to discuss the
issue over the phone and that I needed to tell him in person.  Wayne then arrived at the residence where I
spoke with him and provided him with a copy of the search warrant.  I did explain to Wayne the information
from the search warrants to Facebook and AT&T and that the first IP address associated with Facebook
account came back to the IP address at this residence.  Wayne then stated that the only computer in his
residence was a computer his son used to play games.  Capt. Kody Voisin then advised Wayne of his miranda
rights which Wayne advised he understood.  I then asked Wayne if he had any knowledge of the Facebook
account of John Turner or the website ExposeDAT, which he advised he only saw the post on Facebook.  He
also stated that he had no knowledge of a John Turner nor did he have any association with anyone claiming
to be John Turner.  Wayne then advised he wanted to contact his attorney before we entered the residence
which I advised him that was fine.  Wayne then advised me that his attorney was enroute to the residence so
we stood by from conducting the search warrant until his attorney''s arrival.
Upon Wayne''s attorney arrival, Jerry Smitko, she was advised of the search warrant and of the information
that was obtained to get the search warrant.  She advised that she was sending a Motion to Quash the search
warrant to the Judge and she was contacting the Judge.  She then gave me her cell phone advising me that the

Judge wish to speak with me.  Upon answering the phone, I recognized the voice as Judge Arceneaux.  Judge Arceneaux then asked why he was not sent the search warrant being he was the duty judge for the week.  I advised him that Sheriff Larpenter instructed me to go to a judge that signed the previous search warrants because they would already be familure with the case.  Judge Arceneaux then advised me that he would not stop a search warrant that was signed by another judge.
  We then began the search warrant on August 2, 2016 at 1340 hrs.  In the first bedroom I located a Lenovo laptop computer model Flex 3-1130 serial number P2008PT3 that was on the bed in the bed room.  Upon entering the second bedroom, Capt. Voisin located on top of a dresser next to the bed a Samsung Galaxy S4 mini cell phone model SPH-LS20 DEC number 256691512809637895.  Also located in the second bedroom on top of a dresser Capt. Voisin locate a HP Pavilion laptop computer model CS1C serial number CND9352YJY.  Also in the second bedroom located in a drawer in a dresser drawer, Det. Donald Tomlin located 3 cell phone.  Iphone 4S FCCID BCG-E2403A IMIE 9900018253070, Samsung Galaxy S4 mini model SPH-LS20 DEC: 256691513600207112, I Phone 3 model A1301 FCCID BCGA1303B.  Capt. Voisin then advised that Wayne provided him with his cell phone that was inside of Wayne''s Houma Police Department unit which is a Samsung Galaxy Note 5 DEC: 25669184000204821.  No other devices were located to be seized that were mention in the search warrant.
  While en-route to TPSO headquarters, I received a phone call from Judge Bethancourt who advised me that Smitco did file a Motion to Quash the search warrant.  Judge Bethancourt advised he was going to have a hearing on the matter and for me to seal all the evidence that was collected until the court date, which I advised him I would.
  Upon arriving at TPSO headquarters, I was meet by Smitko who requested that the computers and cell phones be placed with the Terrebonne Parish Clerk of Courts Office for safekeeping until the court date.  We then contact Sheriff''s Office Attorney Bill Dodd who did advise me that it would be fine that the Clerk of Courts Office secure the item in their vault.  Smitko, Det. Dupre and I then gather the items and brought them to Theresa Robichaux at the Clerk Of Court and we explained to her that we would like her to secure the items until the court date.  Mrs. Robichaux advised she would keep the items but advised Ms. Smitko that she would need to obtain a Court Order for her to keep the items.  Det. Dupre and I sealed the items in an evidence bag that was sealed with evidence tape.  I then completed an evidence release form and released the items to Mrs. Robichaux.
  Upon arrival at TPSO headquarters on Wednesday August 3, 2016, Det. Lt. Donald Tomlin advised that he had received a private Facebook message from Jennifer Anderson, Wayne Anderson''s wife.  In the message Jennifer stated "I like how you went through my panty drawer today. Too bad you only found old shit. Perhaps you should try harder.  Catchdatifyoucan#.  Det. Tomlin advised he could no longer view the message on Facebook but had taken a screen shot of the message.  He then provided me with a copy of the message which was placed into evidence.
  On Wednesday night August 3, 2016, a report was posted to WWL TV about the investigation.  WWL also posted the report on their Facebook page.  As I was reading the comments under the report, I noticed a post by a Brad Williams who advised in summery that he was able to find out who the suspect was by "metadata" that was attached to photos in the Facebook post.  He post information that the device was a I phone 6 date of July 20, 2016 at 12:32:15pm with latitude/longitude of 29,28''41.5" north, 90,45''29.4" west with a location guessed from coordinates 209 St. Francis St., Houma. LA  70364.  I then took screen shot photos of the post which were later printed and placed into evidence.  I did notice that the address of 209 St. Francis St is Wayne Anderson''s residence.
  Upon returning to work on Thursday August 4, 2016 I contacted Det. Lt. Donald Tomlin who has knowledge about the information the Brad Williams posted.  Det. Tomlin then attempted to obtain the information that Brad Williams had posted but advised he was unable to do so because the photos had been deleted from the Facebook account of John Turner.
  On August 4, 2016 I was contacted by Alford who advised he wished to provide another statement in reference to more information he found on the John Turner Facebook and ExposeDAT website that he found was false.  A recorded statement was obtained from Alford which the following is a synopsis of his statement.
  Alford advised he found false information in the article titled "You Scratch Mine and I''ll Scratch Yours.  Alford advised that Dove was no longer a part of Duel Trucking and Transport and had been resigned from that company for approximately 3 years.  He advised Duel Trucking Inc. is in Lafayette which they both own 50% of that company.  He advised the article makes reference to $292,864 that was part of Duel Trucking and Transport which Dove has no part of.  He advised that the article stated that there was personal guarantee by Dove and him which he stated that he did not think that was the case.  He advised "this is not a payback from Gordy Dove to me to be able to pick up this insurance".  He advised the insurance had to be approved by the council and that it was not approved by Dove.  Alford also advised that they had got an ethics opinion prior to

G-01263-16

anything being done and they had to wait two to three months before anything could be done.  Alford advised he believed it was slander to apply that Dove is giving Alford the insurance to pay him back for a debit.  This case reminds open pending further information.

G-01263-16

## STATE OF LOUISIANA.

**31696**

359

Page 1 of 1

I, _Anthony J. "Tony" Alford_, residing at _Houma, LA 70361_

Postoffice, with street address of _P.O. Box 910_,

in the Parish of Terrebonne, do solemnly swear, or affirm, that I will support the Constitution and Laws of the United States and the Constitution and Laws of this State, and that I will faithfully and impartially discharge and perform all the duties incumbent on me as

_Member of the Board of Commissioners For the Terrebonne Levee And Conservation District_

according to the best of my ability and understanding.

So help me God.

Sworn to and subscribed before me this

_18th_ day of _May_

A. D. _2016_       _Theresa A. Robichaux_

Recorded _____

_22-359_

_____, Clerk.



(http://www.sos.la.gov/Pages/default.aspx)
(http://www.sos.la.gov/Pages/default.aspx)



# SECRETARY
## OF STATE
TOM SCHEDLER

(http://www.sos.la.gov/Pages/default.aspx)

### Search for Louisiana Business Filings

| Buy Certificates and Certified Copies | Print Reinstatement/Annual Report for Filing | Subscribe to Electronic Notification | Print Detailed Record |
|---|---|---|---|

| Name | Type | City | Status |
|---|---|---|---|
| ASLR&R, L.L.C. | Limited Liability Company | HOUMA | Inactive |

**Previous Names**

| | |
|---|---|
| Business: | ASLR&R, L.L.C. |
| Charter Number: | 35908576K |
| Registration Date: | 3/28/2005 |

**Domicile Address**
701 BARROW ST.
HOUMA, LA 70360

**Mailing Address**
701 BARROW ST.
HOUMA, LA 70360

**Status**

| | |
|---|---|
| Status: | Inactive |
| Inactive Reason: | Action by Secretary of State |
| File Date: | 3/28/2005 |
| Last Report Filed: | 2/19/2009 |
| Type: | Limited Liability Company |

**Registered Agent(s)**

| | |
|---|---|
| Agent: | ROBERT K. STAPLES, JR. |
| Address 1: | 114 OAKDALE LOOP |
| City, State, Zip: | HOUMA, LA 70360 |
| Appointment Date: | 3/28/2005 |

**Officer(s)**                                          Additional Officers: No

| | |
|---|---|
| Officer: | ANTHONY J. ALFORD INSURANCE CORP. |
| Title: | Member |
| Address 1: | 204 ARAPAHO DR. |
| City, State, Zip: | HOUMA, LA 70360 |

| | |
|---|---|
| Officer: | ASSOCIATED BENEFIT PLANS, INC. |
| Title: | Member |
| Address 1: | 302 PINELAND DR. |
| City, State, Zip: | HOUMA, LA 70360 |

| | |
|---|---|
| Officer: | CHRISTIAN D. LAPEYRE INSURANCE SVCS., INC. |
| Title: | Member |
| Address 1: | 123 THACKER DR. |
| City, State, Zip: | HOUMA, LA 70360 |

**Amendments on File (1)**

| Description | Date |
|---|---|
| Revoked | 5/18/2012 |

| Back to Search Results | New Search | View Shopping Cart |
|---|---|---|

© 2016 Louisiana Department of State

GET HELP



EXHIBIT
C

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | |
|---|---|
| 1 | RECORDED INTERVIEW OF TONY ALFORD |
| 2 | CASE #G-01263-16 |

| | | |
|---|---|---|
| 4 | PRESTENBACH: | Today is July 14th, 2016. Time is 2:04 p.m. I'm Det. Lt. Glynn |
| 5 | | Prestenbach with the Terrebonne Parish Sheriff's Office. Currently |
| 6 | | located at 1217 |
| 8 | ALFORD: | 17. |
| 10 | PRESTENBACH: | Uh Museum Dr., which is the office of Alford, Staple, Lapeyre and |
| 11 | | Robichaux. Uh this is gonna be in reference to case number G- |
| 12 | | 1263-16 gonna be a defamation case. Speaking to Mr. Tony Alford |
| 13 | | right now. Uh Mr. Alford are you aware this is being recorded. |
| 15 | ALFORD: | Uh yes. |
| 17 | PRESTENBACH: | Okay state your name and date of birth for me. |
| 19 | ALFORD: | Anthony J. Alford, 5-22-64. |
| 21 | PRESTENBACH: | Okay and you are a business partner for uh Alford, Staple, Lapeyre |
| 22 | | and Robichaux correct. |
| 24 | ALFORD: | Yes I'm the Alford. |
| 26 | PRESTENBACH: | Okay can you explain the uh breakdown (inaudible). |
| 28 | ALFORD: | Uh yeah uh uh the ownership is an LLC uh and so it's pretty close |
| 29 | | to equal partnerships but I think and and and Priscilla's checking |
| 30 | | that out I think uh uh Ken Staples has 26, myself I have 26 and I |
| 31 | | think that those guys uh Chris Lapeyre and Eldridge Robichaux |
| 32 | | have each 24. |
| 34 | PRESTENBACH: | Okay. |
| 36 | ALFORD: | So I think it's not quite equal but it's but it's close. |
| 38 | PRESTENBACH: | All right this investigation is gonna be in reference to a John Turner |
| 39 | | the name came up that posted a Facebook uh message. |
| 41 | ALFORD: | Uh-huh. |
| 43 | PRESTENBACH: | Saying that Sheriff Larpenter with the Sheriff's Office had |
| 44 | | contracted your firm for Sheriff's Office insurance. |



# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

1
2   ALFORD:             Uh-huh.
3
4   PRESTENBACH:        And that his Sheriff Larpenter's wife works here and in his rant or
5                       however you wanna put this he accuses uh Sheriff Larpenter's wife
6                       Priscilla of making money due to the Sheriff's Office having
7                       accounts with you.
8
9   ALFORD:             Right.
10
11  PRESTENBACH:        In this uh Facebook post he also has Parish President Gordy Dove
12                      mentioned that Gordy Dove or the Parish President's now doing
13                      business with your company.
14
15  ALFORD:             Uh-huh.
16
17  PRESTENBACH:        And he has a picture of Joe Waitz on the Facebook post but I didn't
18                      see anything about Joe Waitz in the post.
19
20  ALFORD:             Right.
21
22  PRESTENBACH:        Is that correct.
23
24  ALFORD:             Yes.
25
26  PRESTENBACH:        Okay can you explain the affiliation with the Sheriff's Office and
27                      your company.
28
29  ALFORD:             Yeah well we uh we basically when I say we uh actually Chris is uh
30                      we all have our separate corporation. I got Anthony J. Alford
31                      Insurance Corporation. Uh Ken has another company, Chris has a
32                      company and and that's kind of the affiliation of companies. Chris
33                      has his own servicing reps and I have my servicing reps. In fact my
34                      head servicing rep is is Priscilla Larpenter. She's kind of my
35                      manager. Uh and in the process of writing this we felt like uh uh we
36                      would be fine as long as Priscilla did not benefit financially from the
37                      Sheriff's Office being written or handling the insurance for the
38                      Sheriff's Office. Therefore Chris Lapeyre uh is the broker of record
39                      and his girl Melissa Hunter is his servicing girl does does all the
40                      service uh for the Sheriff's Office. Uh and and and so you know we
41                      tried to keep it as clean and far away from even speculation by
42                      doing it that way instead of it being on this side and having one of
43                      my girls do the servicing we felt like this would be a little cleaner.
44

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | PRESTENBACH: | Okay so commissions of or percentages from the Sheriff's Office |
| 2 | | goes to Chris Lapeyre's |
| 3 | | |
| 4 | ALFORD: | Chris Chris gets paid. Chris pays me half of the commissions come |
| 5 | | to me. Uh Chris's girl that does the servicing I think I'm not sure |
| 6 | | what his percentages are but he gives her a bonus for doing the |
| 7 | | service work on the Sheriff's Office. |
| 8 | | |
| 9 | PRESTENBACH: | Okay. |
| 10 | | |
| 11 | ALFORD: | Priscilla has no financial gain whatsoever in this situation. |
| 12 | | |
| 13 | PRESTENBACH: | Okay so to say let's see you have monetary benefit from the |
| 14 | | accounts. |
| 15 | | |
| 16 | ALFORD: | Yes. |
| 17 | | |
| 18 | PRESTENBACH: | With the Sheriff's Office. |
| 19 | | |
| 20 | ALFORD: | Yes. |
| 21 | | |
| 22 | PRESTENBACH: | Priscilla does not. |
| 23 | | |
| 24 | ALFORD: | No she does not. |
| 25 | | |
| 26 | PRESTENBACH: | Okay uh |
| 27 | | |
| 28 | ALFORD: | In fact like like I showed you we have records of all that and we can |
| 29 | | provide records showing that. |
| 30 | | |
| 31 | PRESTENBACH: | Okay, okay to say you're the owner of Alford, Staples, Lapeyre and |
| 32 | | Robichaux that's not correct. |
| 33 | | |
| 34 | ALFORD: | No. |
| 35 | | |
| 36 | PRESTENBACH: | Ya'll |
| 37 | | |
| 38 | ALFORD: | I'm a partner. |
| 39 | | |
| 40 | PRESTENBACH: | Partner. |
| 41 | | |
| 42 | ALFORD: | It's an LLC so it's not a (inaudible) corporation you don't have a |
| 43 | | president and you you basically have a managing general partner |
| 44 | | and I wanna say it might be Ken Staples is the managing general |
| 45 | | partner I think cause he kind of manages the business aspects. But |

# TERREBONNE PARISH SHERIFF'S OFFICE

| | | |
|---|---|---|
| 1 | | uh the I I I wanna say that the Sheriff's Office is in Chris being the |
| 2 | | broker of record he has a corporation that I think is the uh is is the |
| 3 | | broker of record. |
| 4 | | |
| 5 | PRESTENBACH: | Okay. |
| 6 | | |
| 7 | ALFORD: | Okay that's that that's his corporation. Just like Anthony J. Alford |
| 8 | | Insurance Corporation is my corporation. |
| 9 | | |
| 10 | UNKNOWN: | That has everyone's corporation on it but this is something that we |
| 11 | | went to for ethics from the government. |
| 12 | | |
| 13 | ALFORD: | Okay you got it. |
| 14 | | |
| 15 | UNKNOWN: | On no not from the from when we were quoting the government. |
| 16 | | |
| 17 | ALFORD: | Quoting the government I got ya. |
| 18 | | |
| 19 | UNKNOWN: | And Chris's dad was a councilman. |
| 20 | | |
| 21 | ALFORD: | Uh-huh. |
| 22 | | |
| 23 | UNKNOWN: | But it explains on here the percentages but I don't I don't have |
| 24 | | anything |
| 25 | | |
| 26 | PRESTENBACH: | For the company. |
| 27 | | |
| 28 | UNKNOWN: | And and I can go online and see if I can pull it up but Kelly said it's |
| 29 | | not something that they just give out. And I can call Craig Landry. |
| 30 | | |
| 31 | ALFORD: | Yeah Craig Craig Craig |
| 32 | | |
| 33 | UNKNOWN: | He did it. |
| 34 | | |
| 35 | ALFORD: | Craig did this yeah he would have all that. |
| 36 | | |
| 37 | PRESTENBACH: | We're gonna pause the interview for just a second. |
| 38 | | |
| 39 | ALFORD: | (inaudible) tell you this probably well I don't know if this |
| 40 | | |
| 41 | PRESTENBACH: | Okay. |
| 42 | | |
| 43 | ALFORD: | Is relevant or not but Anthony J. Alford Insurance is the corporation |
| 44 | | that when I write a piece of business it's paid to my corporation. |
| 45 | | When Ken writes a piece of business it's paid to his corporation. |

# TERREBONNE PARISH SHERIFF'S OFFICE

|  |  |  |
|---|---|---|
| 1 |  | When Chris writes a piece of business it's paid to his corporation. |
| 2 |  | Now if we share cases or something like that and and we we do |
| 3 |  | quite a few the insurance company for and a lot of times for bonus |
| 4 |  | purposes we put our business where it might be the check the |
| 5 |  | insurance company might pay the check to ASLR. |
| 6 |  |  |
| 7 | PRESTENBACH: | Uh-huh. |
| 8 |  |  |
| 9 | ALFORD: | Because it helps our our our our our volume of business get up |
| 10 |  | there so that we sometimes we get bonuses that we otherwise |
| 11 |  | would not on our own. |
| 12 |  |  |
| 13 | PRESTENBACH: | Got ya. |
| 14 |  |  |
| 15 | ALFORD: | But uh but that's kind of how it's how it's set up you know. We uh |
| 16 |  | each have we kind of get paid whatever you reap you sow in this |
| 17 |  | thing so ASLR really does not make any money because of |
| 18 |  | something Chris wrote or something I wrote. Uh it's it's where I |
| 19 |  | might split a case with Chris or Chris might split one with me or Ken |
| 20 |  | or something like that. ASLR is kind of like I guess you could call it |
| 21 |  | the holding company. We share in other words my office expenses |
| 22 |  | I write a check every month to ASLR and they cover all the |
| 23 |  | expenses around the office. We got some shared girls in the office. |
| 24 |  |  |
| 25 | PRESTENBACH: | Uh-huh. |
| 26 |  |  |
| 27 | ALFORD: | Uh like the billing girls and one of the claims girls and I guess |
| 28 |  | probably shared girls probably 5 maybe 5 girls in the office are |
| 29 |  | shared. The other ones work specifically for you know. |
| 30 |  |  |
| 31 | PRESTENBACH: | Each one of ya'll. |
| 32 |  |  |
| 33 | ALFORD: | Well yeah they service our accounts each. |
| 34 |  |  |
| 35 | PRESTENBACH: | Okay to your knowledge did anyone contact the Louisiana Ethics |
| 36 |  | Board concerning business with the Sheriff's Office. |
| 37 |  |  |
| 38 | ALFORD: | That's what I was told. I'm pretty sure that they did. |
| 39 |  |  |
| 40 | PRESTENBACH: | Okay. |
| 41 |  |  |
| 42 | ALFORD: | That's why they're looking for it right now. |
| 43 |  |  |
| 44 | PRESTENBACH: | Now in reference to the deal with the Parish Government that is |
| 45 |  | recent ya'll did contact the Ethics Board. |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | | |
| 2 | ALFORD: | Oh yeah. |
| 3 | | |
| 4 | PRESTENBACH: | And |
| 5 | | |
| 6 | ALFORD: | In fact in fact the parish did. |
| 7 | | |
| 8 | PRESTENBACH: | The parish did. |
| 9 | | |
| 10 | ALFORD: | Yeah Jules Hebert I think recommended to Gordy and they sent out |
| 11 | | and that's kind of why I waited to do anything with the parish. |
| 12 | | |
| 13 | PRESTENBACH: | Okay and ya'll did get a ruling saying that everything |
| 14 | | |
| 15 | ALFORD: | Yeah. |
| 16 | | |
| 17 | PRESTENBACH: | Was fine with you and Mr. Gordy's business. |
| 18 | | |
| 19 | ALFORD: | Yes. |
| 20 | | |
| 21 | PRESTENBACH: | And this paper I'm showing you has got Louisiana Board of Ethics |
| 22 | | on the top that's the ruling that the Ethics Board gave ya'll correct. |
| 23 | | |
| 24 | ALFORD: | Yes that's correct. |
| 25 | | |
| 26 | PRESTENBACH: | Okay. And to your knowledge everything's fine with you doing |
| 27 | | business with the parish. |
| 28 | | |
| 29 | ALFORD: | Right yeah. |
| 30 | | |
| 31 | PRESTENBACH: | Okay now the companies that you and Mr. Gordy Dove have |
| 32 | | together uh |
| 33 | | |
| 34 | ALFORD: | Uh-huh. |
| 35 | | |
| 36 | PRESTENBACH: | Dual Trucking I think was one of them. |
| 37 | | |
| 38 | ALFORD: | Yeah. |
| 39 | | |
| 40 | PRESTENBACH: | And |
| 41 | | |
| 42 | ALFORD: | It it's |
| 43 | | |
| 44 | PRESTENBACH: | Dual Trucking of Montana. |
| 45 | | |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | ALFORD: | Uh Dual Trucking of Montana uh Gordy is no longer involved with |
| 2 | | that's kind of some properties up north is really all that's involved. |
| 3 | | |
| 4 | PRESTENBACH: | Okay. |
| 5 | | |
| 6 | ALFORD: | Is a property now at this point. Uh Dual there's uh uh uh Dual |
| 7 | | Trucking and Transport operated trucks up in uh North Dakota. |
| 8 | | |
| 9 | PRESTENBACH: | Okay. |
| 10 | | |
| 11 | ALFORD: | And uh we when we started out it was myself, Gordy and Timmy |
| 12 | | Thompson. Uh as we went forward you know things ended up not |
| 13 | | being as great as we thought. My brother came in and bought stock |
| 14 | | from them. My brother-in-law came in and bought stock from them. |
| 15 | | Bought them just about out and I guess when things got a little |
| 16 | | down the road they kind of resigned their other shares the shares |
| 17 | | they had left. So they kind of got out of the thing. |
| 18 | | |
| 19 | PRESTENBACH: | You talking about Gordy and |
| 20 | | |
| 21 | ALFORD: | Yeah. |
| 22 | | |
| 23 | PRESTENBACH: | Okay. |
| 24 | | |
| 25 | ALFORD: | And Timmy right. |
| 26 | | |
| 27 | PRESTENBACH: | Okay in the ethics paper. |
| 28 | | |
| 29 | ALFORD: | Uh-huh. |
| 30 | | |
| 31 | PRESTENBACH: | There's 2 companies mentioned in there that you and Mr. Gordy |
| 32 | | had together. |
| 33 | | |
| 34 | ALFORD: | Right. |
| 35 | | |
| 36 | PRESTENBACH: | Which 2 companies were those. |
| 37 | | |
| 38 | ALFORD: | Uh Paloma Enterprises and uh Alford and Dove Properties. |
| 39 | | |
| 40 | PRESTENBACH: | Okay. |
| 41 | | |
| 42 | ALFORD: | Uh-huh. |
| 43 | | |
| 44 | PRESTENBACH: | The Paloma Enterprises that's the parent company I guess you |
| 45 | | could say of Dual Trucking. |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| ALFORD: | Well we have some properties together and we have Dual Trucking. Dual Trucking, Inc. in Lafayette. |
| PRESTENBACH: | Okay. |
| ALFORD: | Which is different than Dual Trucking and Transport, which again was different ownership. Started out that way and then it's just it's a different corporation. |
| PRESTENBACH: | Okay but that covers should I say the I'm sorry what's the |
| ALFORD: | Yeah. |
| PRESTENBACH: | Paloma Truck Enterprises. |
| ALFORD: | Paloma. |
| PRESTENBACH: | Paloma I'm sorry. |
| ALFORD: | Yeah. |
| PRESTENBACH: | Covers the Dual part. |
| ALFORD: | Yes. |
| PRESTENBACH: | Okay. |
| ALFORD: | Paloma owns Dual Trucking, Inc. |
| PRESTENBACH: | That's what I was getting at. |
| ALFORD: | In Lafayette. |
| PRESTENBACH: | Thank you. |
| ALFORD: | Yeah. |
| PRESTENBACH: | Okay now the Alford |
| ALFORD: | Which which really has has ceased operations. Yeah so uh we're really not running I think we got 2 employees with that company now. |
| PRESTENBACH: | Okay. |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | | |
| 2 | ALFORD: | Yeah just |
| 3 | | |
| 4 | PRESTENBACH: | The Alford and Dove Properties listed in the Board of Ethics uh |
| 5 | | paper what is that. |
| 6 | | |
| 7 | ALFORD: | Uh Alford and Dove is uh we own uh like Regions Bank building |
| 8 | | over here you know on uh uh right there off of Barrow St. |
| 9 | | |
| 10 | PRESTENBACH: | Uh-huh. |
| 11 | | |
| 12 | ALFORD: | You know where Regions is. Him and I own that that building. |
| 13 | | |
| 14 | PRESTENBACH: | Okay. |
| 15 | | |
| 16 | ALFORD: | Through Alford and Dove. |
| 17 | | |
| 18 | PRESTENBACH: | And that's in the Ethics Board paper saying that it's fine. |
| 19 | | |
| 20 | ALFORD: | Uh-huh. |
| 21 | | |
| 22 | PRESTENBACH: | It's all being covered. |
| 23 | | |
| 24 | ALFORD: | Yes. |
| 25 | | |
| 26 | PRESTENBACH: | Through the Ethics Board. |
| 27 | | |
| 28 | ALFORD: | Yes. |
| 29 | | |
| 30 | PRESTENBACH: | Okay. Now you have a spreadsheet you had shown me earlier of |
| 31 | | Ms. Priscilla's bonuses. |
| 32 | | |
| 33 | ALFORD: | Yes. |
| 34 | | |
| 35 | PRESTENBACH: | Sheriff's Office is nowhere involved with that. |
| 36 | | |
| 37 | ALFORD: | No. |
| 38 | | |
| 39 | PRESTENBACH: | Mr. Chris Lapeyre has the same type of spreadsheet for his |
| 40 | | business. |
| 41 | | |
| 42 | ALFORD: | Uh he has he does something similar to that. |
| 43 | | |
| 44 | PRESTENBACH: | Okay. |
| 45 | | |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | ALFORD: | I'm really I haven't dug into how he does it cause we kind of operate on our own but he he he told me he does pay Melissa a bonus his girl. |
| 5<br>6 | PRESTENBACH: | Okay so his girl gets paid. |
| 7<br>8 | ALFORD: | Yeah. |
| 9<br>10 | PRESTENBACH: | From your understanding. |
| 11<br>12 | ALFORD: | Yeah and and |
| 13<br>14 | PRESTENBACH: | A bonus from |
| 15<br>16 | ALFORD: | And he said he can provide provide that yeah. |
| 17<br>18 | PRESTENBACH: | That's from |
| 19<br>20 | ALFORD: | I'm not sure what his format is but |
| 21<br>22 | PRESTENBACH: | That's fine. |
| 23<br>24 | ALFORD: | Yeah. |
| 25<br>26 | PRESTENBACH: | But it's from the Sheriff's Office account. |
| 27<br>28 | ALFORD: | Yes. |
| 29<br>30<br>31 | PRESTENBACH: | Perfect. Okay uh Mr. Anthony anything else you wanna add to your statement. |
| 32<br>33 | ALFORD: | Uh no not really nothing nothing I can think of. |
| 34<br>35<br>36<br>37<br>38<br>39 | PRESTENBACH: | Okay we'll go ahead and conclude the interview. Time is now 2:16 p.m. Today is still June 14th, 2016. Same parties present. |
| 40 | Transcribed by:_____Date:_____ | |

NO:

# STATE OF LOUISIANA
## PARISH OF TERREBONNE
## 32ND JUDICIAL DISTRICT

## SEARCH WARRANT

TO ANY COMMISSIONED PEACE OFFICER in and for the Parish of
TERREBONNE:

WHEREAS an affidavit has been made before me, under penalties of

perjury, by **Glynn Prestenbach Jr.** , Deputy Sheriff in and for the Parish

aforesaid, alleging that the:

209 Saint Francis St. Houma, LA which is a single structure brick home brown in color with a
carport on the right side of the residence with a fence enclosing the carport.

located at **209 Saint Francis St. , Houma, LA, 70364**, in the Parish of
TERREBONNE, State of Louisiana, is a place where evidence of a crime may be
located to wit:
In the residence of 209 Saint Francis St the following item,

Any computers, lap top computers, IPads, tablets, cell phones or any other electronic device that
may be used to post information onto the internet.

which said property constitutes evidence of the violation of Louisiana

1 Count of RS14:47--DEFAMATION-- (MISDEMEANOR)

is (are) secreted or concealed, and whereas the affidavit submitted in support of the

request for this search warrant indicated that the affiant has shown the necessary

probable cause for its issuance.

YOU ARE HEREBY ORDERED to search the aforesaid and when the thing

to be searched is a dwelling or other structure, this writ includes all other

structures, vehicles, and places on the premises where the thing(s) may be found,

and if the thing(s) specified be found there, to seize and bring it (them) before the

32ND Judicial District Court, and this shall be your warrant to which you are to

make due return according to law.

In accordance with the request of the affiant, this warrant authorizes you to
conduct the search at any time of the day or night, including Sundays.



Tuesday, August 02, 2016
11:11:14

NO:

# STATE OF LOUISIANA
## PARISH OF TERREBONNE
### 32ND JUDICIAL DISTRICT

WITNESS my official signature on this _____2_____ day of_____August_____,_____2016

Randall Bethancourt
Judge, 32ND Judicial District
State of Louisiana

Tuesday, August 02, 2016
11:11:14

32ND JUDICIAL DISTRICT COURT

PARISH OF TERREBONNE

STATE OF LOUISIANA

DIVISION "E"



TERREBONNE PARISH SHERIFF'S OFFICE

VERSUS NO.

WAYNE ANDERSON AND JENNIFER GOULAS



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Transcript of Motions to Quash Search Warrant

Heard on August 5, 2016

The Honorable Randall L. Bethancourt, Presiding
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

Mr. Barry Milligan, Esq.
Attorney General's Office
1885 North Third Street
Baton Rouge, Louisiana  70804
        Representing the State of Louisiana

Mr. William F. Dodd, Esq.
1356 W. Tunnel Boulevard
Houma, Louisiana  70360
        Representing Terrebonne Parish Sheriff's Office

Mr. Matthew D. Ory, Esq.
Mr. David W. Ardoin, Esq.
505 W. 3rd Street
Thibodaux, Louisiana  70301
        Representing Wayne Anderson

Ms. Jerri  Smitko, Esq.
622 Belanger Street
Houma, Louisiana 70360
        Representing Wayne Anderson

OFFICIATED BY:
Tiffeny Suire Gallardo, CCR
Certified Court Reporter
32nd Judicial District Court
Parish of Terrebonne
7856 Main Street
Houma, Louisiana  70360
Ph:  985-580-8115
Email:  tiffenygallardo@aol.com



1

TIFFENY SUIRE GALLARDO, CCR
Certified Court Reporter
32nd Judicial District Court



1    **THE COURT:**

2        Let's go on the record.

3        The Court scheduled a hearing on two motions

4    to quash a search warrant that I signed on

5    Tuesday of this week.  I want to thank the

6    attorneys for being here on such short notice,

7    but I wanted to dispose of this as quickly as

8    possible.  So this was the first date I could do

9    it.  So I want to thank y'all for being here on

10   so short of a notice to get ready for this.

11       Number two, we don't have, to my knowledge,

12   a docket number.

13       Ms. Brenda, do we?

14   **MINUTE CLERK:**

15       No, sir.

16   **THE COURT:**

17       Okay, we don't have a docket number.  So

18   we'll, I suppose, for the record, we will say

19   that this matter comes before the court on a

20   motion or motions to quash search warrants filed

21   in, and those motion are styled, *Terrebonne*

22   *Parish Sheriff's Office* or Sheriff's -- Well, one

23   says *Terrebonne Parish Sheriff's Office*, the

24   other says *Terrebonne Parish Sheriff's* blank

25   *versus* one is *Jennifer Goulas* and the other is

26   *Wayne Anderson.*

27       So that's going to be the style of the case,

28   I suppose, Ms. Court Reporter, and Ms. Brenda,

29   for the minutes, I suppose.  We don't have a

30   docket number.

31       Counsel, please state your appearances for

32   the record.

1    **MR. ORY:**

2        Matthew Ory and David Ardoin, on behalf of

3    Mr. Anderson.

4    **MS. SMITKO:**

5        Jerri Smitko on behalf of Mr. Anderson.

6    **MR. MILLIGAN:**

7        Barry Milligan, for the State of Louisiana,

8    Attorney General's Office.

9    **MR. DODD:**

10       Bill Dodd, on behalf of Sheriff Jerry

11   Larpenter.

12   **THE COURT:**

13       Good afternoon.  As far as y'all know, is

14   anybody else coming?  I know it's been raining

15   really hard outside.

16       Is anybody coming that's running late that

17   y'all know of?

18       Ms. Brenda, anybody check in?

19   **MINUTE CLERK:**

20       No, sir.

21   **THE COURT:**

22       Y'all ready to proceed?

23       As I understand it, it is the mover's burden

24   of proof, that is, the attorneys for Ms. Goulas

25   and Mr. Anderson.  They have the burden of proof.

26       Am I correct on that?

27   **MR. ARDOIN:**

28       Your Honor, I believe, technically, based

29   upon our conversations in the back, the State has

30   indicated they just intend to submit.  A warrant

31   was signed in this particular case.  So I think

32   there's a presumption that it is a valid warrant.

1   Then the burden shifts to Mr. Anderson to prove
2   otherwise.
3   THE COURT:
4        That's what I just said.  That's what I'm
5   saying.  As it starts, the presumption is that
6   it's a valid search warrant.
7   MR. MILLIGAN:
8        That's correct.
9   THE COURT:
10       And the burden of proof is on the movers to
11   prove that it is flawed.
12   MR. ARDOIN:
13       Yes, sir.  What I'm saying is, based upon
14   our conversations in chambers, the State was
15   prepared to submit.  Procedurally, I was allowing
16   them to do so first.
17   THE COURT:
18       He was about to do that.
19   MR. MILLIGAN:
20       Judge, before we start the hearing proper,
21   could I clarify the record as far as the Attorney
22   General's Office involvement in this?
23   THE COURT:
24       Sure, absolutely.
25   MR. MILLIGAN:
26       We were made aware of --
27   THE COURT:
28       Why don't somebody turn the microphone on.
29       Thank you.
30   MR. MILLIGAN:
31       We were made aware on Tuesday, August 2,
32   that the District Attorney was going to recuse

1    himself in this matter.  That was followed up on,

2    I believe, Thursday, yesterday, with a formal

3    notice of recusal.  That's why we are here today.

4         We have not received any requests from the

5    Sheriff's Office for our investigative division

6    to take over this investigation or assist in this

7    investigation in any way.  We haven't been

8    involved in the investigation in any way.

9         It's my understanding, according to Mr.

10   Dodd, that such a request may be forthcoming in

11   the future.

12   THE COURT:

13        So you're in today for the District

14   Attorney's Office, who would normally handle a

15   matter such as this?

16   MR. MILLIGAN:

17        That's correct, Your Honor.

18   THE COURT:

19        And Mr. Dodd, I suppose you are here today

20   for the sheriff, but I'm not sure.

21   MR. DODD:

22        Your Honor, normally, in matters like this,

23   the District Attorney would handle the case.  So

24   in this case it's the Attorney General's Office.

25   THE COURT:

26        Okay, got it.  Very good.

27        Now, we did talk about something in chambers

28   by way of submitting the actual affidavit for a

29   search warrant.

30   MR. MILLIGAN:

31        Judge, I would like to move at this time,

32   that that affidavit and its search warrant, I'm

1      talking about the search warrant, the third

2      search warrant, for the house of Mr. Anderson,

3      that that be admitted and made part of the

4      record.

5      THE COURT:

6           Anybody have an objection to that?

7      MR. ARDOIN:

8           No, we do not, Your Honor.

9      THE COURT:

10          Let it be entered.  Ms. Brenda is going to

11     want a copy of that.

12         Ms. Brenda.

13     MINUTE CLERK:

14         Is that the affidavit and the third search

15     warrant?

16     MR. MILLIGAN:

17         Yes, ma'am.

18     THE COURT:

19         Are y'all ready to proceed with argument?

20     MR. ARDOIN:

21         Yes, Your Honor.

22     THE COURT:

23         You may proceed.

24     MR. ARDOIN:

25         Again, David Ardoin, on behalf of Mr.

26    Anderson, along with Matt Ory and Ms. Jerri

27    Smitko.

28         Judge, we had conversations in chambers

29    about the case and with the current status of the

30    case.  As you are aware, search warrants were

31    sought by the Terrebonne Parish Sheriff's Office

32    to search the property of Mr. Anderson and his

1   wife, Ms. Goulas.

2       The basis of the search, according to the

3   affidavit, was a complaint by Mr. Anthony Alford

4   regarding certain contracts, insurance contracts,

5   between both his insurance agency and the

6   Terrebonne Parish Sheriff's Office.

7       Those contracts were put out on the

8   internet, I think, under a Facebook page by Mr.

9   Turner, John Turner, and a blog called ExposeDAT.

10  Apparently, they thought it was offensive, their

11  feelings were hurt, and they filed a complaint

12  with the Terrebonne Parish Sheriff's Office.

13      Certain search warrants were requested, were

14  granted, and eventually was issued and signed

15  you.

16      I disagree with Mr. Dodd and his comments in

17  the back, where the questions was about what a

18  reasonable police officer thinks.  To the

19  contrary, in seeking a search warrant to

20  establish probable cause, an affidavit must be

21  presented to a neutral magistrate that says

22  there's a fair probability that evidence of a

23  crime can be found in a particular place.  That's

24  *State versus Mansa*, which is a Louisiana Supreme

25  Court case.

26      To take a step further with what the U.S.

27  Supreme court says, it says, that the magistrate

28  should not be just a rubber stamp of a police

29  officer's allegation.  That it's incumbent upon

30  the Court and the magistrate to review the

31  affidavit to determine that there is sufficient

32  information provided to allow the Court's own

1  determination of probable cause. And it's not
2  just a mere ratification of the bear conclusions
3  of others.
4      In this particular case, they simply come
5  forward and say, man, these allegations were
6  made, and they talk about this contract. If you
7  read the affidavit, Mr. Alford actually admits
8  that he was the beneficiary of such a contract.
9  Even though there may have been another broker on
10  that particular contract, he received funding.
11  He told that to the affiant, to the investigating
12  officer.
13      Be that as it may, look at what the Supreme
14  Court of Louisiana has said, what the Supreme
15  Court of the United States has said. Time and
16  time again, 14:47, which was the statute under
17  which this warrant was sought, alleging criminal
18  defamation, misdemeanor defamation, the courts
19  have routinely and throughout history have said
20  this is unconstitutional as it pertains to
21  statements about public officers, about public
22  affairs.
23      Mr. Alford, by the way, is in fact the
24  president of the levee board. He is a public
25  officer. If you look at --
26  THE COURT:
27      Where does it say that on this?
28  MR. ARDOIN:
29      I don't know if it says it on the affidavit.
30  In fact, I don't think it does. However, what
31  that affidavit specifically refers to is a public
32  contract, a contract between the parish, the

1    sheriff's office and an individual.

2    THE COURT:

3         How is a magistrate to know that Anthony

4    Alford is a public figure, officer.

5    MR. ARDOIN:

6         Your Honor, we live in a small parish.  And

7    the Court is well aware –

8    THE COURT:

9         No, I'm not.  I can assure you of that.

10        So on Anthony Alford, on the four corners of

11   this, are you trying to say the Court is supposed

12   to investigate every name that's on an affidavit?

13   MR. ARDOIN:

14        No, sir.  But if you listen to my argument,

15   again, the Supreme Court covers this.  The

16   Supreme Court says, it's either public officers

17   or matters to do with public affairs.

18        And if you read that affidavit, without

19   question, they discuss a contract between the

20   parish, the sheriff's office, and Mr. Alford's

21   company.  So that is a matter of public affair.

22        The Supreme Court decisions have routinely

23   said that it is the right of the public to

24   question those matters.  Individuals have a right

25   to question these contracts and things that are

26   suspicious to them.

27        So I'm not sitting here today to question,

28   because we don't have enough information, to

29   question whether or not the allegations made on

30   these blogs or on this Facebook pages are

31   accurate, true, or anything else.

32        The question before the Court is: On the

1    face of it, was there evidence of a crime?

2         And the answer to that is: No, based upon

3    the long history of both Louisiana and U.S.

4    Supreme Court law.

5         Now, whenever the State stands before you

6    and says we are going to submit.  I mean, they

7    are saying it is presumptively valid.

8         *U.S. versus Leon* goes on to discuss further.

9    They say, you know what, in certain situations,

10   even if a magistrate signs off on it, magistrates

11   make mistakes.  They are human.  But they provide

12   you an opportunity to cure that because they say,

13   listen, on its face, the affidavit is so lacking

14   of any indicia of a criminal act, then the

15   evidence must be suppressed, the motion to quash

16   should be granted.  That's what happened in this

17   particular case.

18        With all due respect, Judge, I think you

19   made a mistake in granting this.  You have an

20   opportunity to cure it.  I think we provided a

21   number of cites: *State versus Ethley, State*

22   *versus Schneider, Garrison versus Louisiana, New*

23   *York Times versus Sullivan, Johnson versus*

24   *Capital City Press*.

25        All those cases dating back to 1963 to the

26   latest, I think, I cited was '81, say that you

27   cannot issue a warrant, and that these things

28   were unconstitutional.  14:47 is unconstitutional

29   in this particular case.

30   **THE COURT:**

31        So you are saying that a public figure

32   cannot be defamed?

**MR. ARDOIN:**

  I did not say that. Under certain cases, it says that you must show actual malice and reckless disregard.

  In this particular case, if you read that affidavit, Mr. Alford himself says, I was part of that contract. The contract is under the name of Christian Lapeyre. Christian Lapeyre receives money each month and I, in fact, do receive a percentage of that.

**THE COURT:**

  The article that follows 14:47 is entitled, "Presumption of Malice," where a non-privileged defamatory publication or expression is false, it is presumed to be malicious.

**MR. ARDOIN:**

  Your Honor, don't they have to show that it's false?

  The allegation on the website was simply, this is what they complained of, they say, Mr. Alford is complaining that there is an allegation that he was part of a contract with the sheriff's office.

  In his investigation by Prestenbach, he interviews Mr. Alford. And Mr. Alford says, yes, in fact, I was a beneficiary of that contract. I received proceeds.

  There's an admission within his own statement that the facts are true. On the very face of the affidavit, it's true.

**THE COURT:**

  What about the other people mentioned that

1    somehow don't look so hot in the allegations,

2    such as, they list, let's see, Mr. Alford, Mr.

3    Staples, Mr. Lapeyre, Mr. Robichaux?

4    **MR. ARDOIN:**

5        What about it, Your Honor?

6        The allegation is that all those people were

7    partners in an insurance business who ended up

8    with a contract.

9    **THE COURT:**

10       Ms. Prescilla Larpenter.

11    **MR. ARDOIN:**

12       She is an employee of Mr. Alford.  She

13    receives a six-figure salary.  There's no

14    misrepresentation.  There's no denial over those

15    claims.  In fact, there's an affirmation by Mr.

16    Alford that is, in fact, true.

17    **THE COURT:**

18       And Christian D. Lapeyre.

19    MR. ARDOIN:

20       Yes, sir.  He's the broker, who is sharing

21    the fees with Mr. Alford.

22       And the complainant, by the way, the

23    complainant was Mr. Alford.  So if we are going

24    to expand this, you know, that's news to us, but

25    —

26    **THE COURT:**

27       Anybody else, either side?

28       State?

29    **MR. MILLIGAN:**

30       Judge, I would just say that the State's

31    position is that we assume that the Court found

32    probable cause, and the Court signed this warrant

1    on August 2.    We reiterate that the warrant is

2    presumptively valid, and we contend that it

3    stands on its own merits.

4        Beyond that, we submit on the record.

5    **THE COURT:**

6        Thank you.

7    **MR. ARDOIN:**

8        Your Honor, once again, I just reiterate

9    that it is unconsitutional.    That is without

10   question.    The fact that it's unconstitutional,

11   it's a bad warrant.    It should be quashed.    It

12   should be suppressed.    The evidence should be

13   returned to our clients immediately.

14   **MR. ORY:**

15       Furthermore, Judge, had they not included

16   certain information within that affidavit, I

17   might be able to understand somewhat how they

18   could be a PC determination.    But they gave it to

19   you.    The gave you the exact information.    I

20   don't know if it's right or wrong.    I don't know

21   if it's unethical.    I don't care.    But the public

22   has a right to wonder.

23       And that's all they are saying, and they are

24   telling you right here certain funding was there.

25   Nobody said it was illegal.    But you have a right

26   to wonder.    It's all there for you.    They put

27   that in there for you.    They were specific enough

28   for you to specifically find there is absolutely

29   no probable cause here, none.    There's no

30   defamation.    It's protected.

31   **THE COURT:**

32       Anybody else wants to be heard?

1    Okay, an affidavit for a search warrant must

2    set forth sufficient facts to reasonably conclude

3    that the items sought may actually be located at

4    the place to be searched.  So we have that.  We

5    have on the four corners of the affidavit, we

6    have all read it, there's sort of a chain for the

7    sheriff's office to reasonably conclude that the

8    items, the computers, are located at that

9    particular address, 209 St. Francis Street.

10    Now, y'all keep talking about, in the back

11    too, the target of the investigation, the target,

12    the target, the target.  I don't know who is the

13    target, if there is a target.  I don't know.

14    **MR. ORY:**

15    Judge, there's an address on that warrant.

16    **THE COURT:**

17    Have a seat.

18    I know the address, but the target, no, the

19    target of the investigation.

20    This is a search warrant.  No one has been

21    charged with a crime right now.  There's been no

22    charge that I know of.  This is a search warrant.

23    The State wants to take a look-see of what may be

24    on the computers that they claim may have some

25    defamatory, criminally defamatory, statements

26    made coming from that IP address.  There is an

27    adequate chain.  I can tell you that.

28    Number two, you keep saying public figures

29    and so forth.  Well, I readily admit that the

30    sheriff is a public figure.  I see Gordy Dove

31    named here, obviously, a public figure.

32    But I'm not quite so sure that these far-

1     reaching other people are protected class from

2     unconstitutional, I'm not sure, in light of

3     Article 46 and 47.

4         And by the way, defamation in Louisiana is

5     pretty broad.  It says, "defamation is the

6     malicious publication or expression in any manner

7     to anyone other than the party defamed of

8     anything which tends: One, to expose any person

9     to hatred, contempt, or ridicule, or to deprive

10    him the benefit of public confidence or social

11    intercourse.  Pretty broad.

12        So arguably, the items that the law

13    enforcement is attempting to search and look at

14    could arguably lead to charging someone with a

15    crime of defamation.

16        So for those reasons, I'm going to deny the

17    motions to quash the search warrants.

18    **MR. ARDOIN:**

19        Your Honor, I move for a stay for us to take

20    a writ.

21    **THE COURT:**

22        Yes, sir.  And we'll go ahead and stay the

23    proceedings until then.

24        How much time do you want?

25    **MR. ARDOIN:**

26        Fifteen days.

27    **THE COURT:**

28        Sure, that's fine.

29    **MS. SMITKO:**

30        Since there will be a stay issued, that the

31    evidence will remain in possession of the Clerk

32    of Court.

1    **THE COURT:**

2        Yes, ma'am.

3    **MR. ARDOIN:**

4        Just for clarification, I want to make sure

5    that you are making a specific finding that this

6    is not a matter of public affairs?

7    **THE COURT:**

8        I don't know that I have to give written

9    reasons or anything like that.  But I've stated

10    what I've stated.  And I think the search warrant

11    is valid on all four corners, pure and simple.

12        Listen, there's been no crime -- No one has

13    been arrested.  No one has been charged with a

14    crime.  This is an investigation.

15    **MS. SMITKO:**

16        Your Honor, my client's property has been

17    taken, and he has been removed from his job.

18    **THE COURT:**

19        That, I don't know.

20    **MS. SMITKO:**

21        Yes, sir.

22    **THE COURT:**

23        I don't know that at all.

24        Be that as it may, y'all can go ahead and

25    take a writ.

26    **MS. SMITKO:**

27        Yes, sir.

28        Let the Court note our objection.

29    **THE COURT:**

30        No noted.

31        Anybody else wants to put anything on the

32    record in this matter?

1           There being no further business of the
2       court, the court is adjourned for the day.
3   (Court adjourned.)
4               (End of transcript.)

## CERTIFICATE

I, Tiffeny Suire Gallardo, Certified Court Reporter, 32nd Judicial District Court, Parish of Terrebonne, State of Louisiana, the officer before whom this proceeding was taken at the 32nd Judicial District Court, Parish of Terrebonne, do hereby certify that the above pages constitute a true and faithful transcript executed to the best of my ability and understanding; that this proceeding was reported by me in the Stenomask reporting method, was prepared and transcribed by me; and that I have no relationship with counsel or the parties herein, nor am I otherwise interested in the outcome of this matter which was held at Houma, Louisiana, on August 5, 2016, in the matter numbered and entitled:

TERREBONNE PARISH SHERIFF'S OFFICE

VERSUS NO.

WAYNE ANDERSON AND JENNIFER GOULAS

This certification is valid only for a transcript accompanied by my original signature and original stamped seal on this page. Any copies must have a "COPY" stamp and my original stamped seal.

In Faith Whereof, witness my signature this 16th day of August, 2016.

COPY

TIFFENY SUIRE GALLARDO, CCR
NO. 28014

TIFFENY SUIRE GALLARDO, CCR
Certified Court Reporter
32nd Judicial District Court

From:                          LOUISIANA        05/10/2016 15:48   
                          ETHICS ADMINISTRATION
                          CAMPAIGN FINANCE
                          RECEIVED

                    2016 MAY 10  PM 3: 51

                                              **LOUISIANA BOARD OF ETHICS**
                                              Post Office Box 4368
                                              Baton Rouge, Louisiana 70821

## TIER 2.1 PERSONAL FINANCIAL DISCLOSURE STATEMENT (ANNUAL)

This Report Covers Calendar Year: 2015

☒ ORIGINAL REPORT

☐ AMENDED REPORT

☐ I currently hold an office that would require me to file a Tier 3 Personal Financial Disclosure Statement.
As such, I have completed SCHEDULE D.

Name of Filer (print full name) : ANTHONY J. ALFORD

    Mailing Address: 224 OUISKI BAYOU DRIVE

    City, State, Zip: HOUMA, LOUISIANA 70360

Name of Board/Commission (no abbreviations): TERREBONNE LEVEE & CONSERVATION DISTRICT

    Date of Appointment: 11/02/2012

    Date Appointment Expires: 11/02/2016

Name of Spouse (print full name): GLENDA WEITZ ALFORD

    Spouse's Occupation: HOMEMAKER

    Principal Business Address:

    City, State, Zip:

---

**CHECK ONE:**

☒ Neither I, nor any member of *my* immediate family, have a personal or financial interest in any entity, contract, or business, or a personal or financial relationship, that in any way poses a conflict of interest, which would affect the impartial performance of my duties as a member of the board or commission.

☐ I have attached a statement describing any conflicts, and actions I am taking to resolve or avoid the conflicts.

---

Check all that apply:

☒ I have filed my state income tax return for the previous year.

☐ I have filed for an extension of my state income tax return for the previous year.

☒ I have filed my federal income tax return for the previous year.

☐ I have filed for an extension of my federal income tax return for the previous year.

NOTE: La. R.S. 42:1124.2.1 does not provide you the opportunity to request an extension in filing your personal financial disclosure statement.

### Certification of Accuracy

    I do hereby certify that the information contained in this personal financial disclosure statement is true and correct to the best of my knowledge and belief.

                                           Signature of Filer

*Revised November 2014*                  *Form 417*                  www.ethics.la.gov

Fax Received 15:41:43 2016-05-10



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin**
**Clerk of Court**

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

August 25, 2016

Docket Number:  2016 - KW - 1093

Wayne Anderson and Jennifer Anderson
versus
Terrebonne Parish Sheriff's Office

TO:   David W. Ardoin
505 W. 3rd Street
P.O. Box 127
Thibodaux, LA 70301
davidardoin@ardoinlaw.net

William F. Dodd
100 Ramsey Rd., Ste A
Houma, LA 70360-2731
wfdodd@doddlawfirm.com

Hon. Jeffrey Martin Landry
Attorney General
P.O. Box 94005
Baton Rouge, LA 70804

Barry  Milligan
1885 North Third Street
Baton Rouge, LA 70804

Matthew D. Ory
505 W. 3rd Street
Thibodaux, LA 70301

Jerri G. Smitko
622 Belanger Street
P.O. Box 1669
Houma, LA 70361-1669
jodi@smitkolaw.com

Hon. Randall L. Bethancourt
7856 Main Street
Houma, LA 70360

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

RODD NAQUIN
CLERK OF COURT

EXHIBIT
6

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

TERREBONNE PARISH SHERIFF'S
OFFICE

NO.  2016 KW 1093

VERSUS

WAYNE ANDERSON AND JENNIFER
GOULAS

**AUGUST 25, 2016**

---

In Re:   Wayne Anderson and Jennifer Anderson, applying for
supervisory writs, 32nd Judicial District Court,
Parish of Terrebonne, No. none.

---

**BEFORE:   McDONALD, CRAIN AND DRAKE, JJ.**

**WRIT GRANTED.** The probable cause affidavit submitted in
support of the application for the search warrant is premised
upon a violation of Louisiana Revised Statute 14:47. That
statute has been declared unconstitutional by both the United
States Supreme Court and the Louisiana Supreme Court as it
applies to public expression and publication concerning public
officials, public figures and private individuals engaged in
public affairs. See **New York Times v. Sullivan**, 376 U.S. 254,
84 S.Ct.710, 11 L.Ed.2d 686 (1964); **Garrison v. State of
Louisiana**, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964);
**State v. Snyder**, 277 So.2d 660, 668 (La. 1973) (on rehearing),
writ denied, 294 So.2d 543 (La. 1974), and rev'd on other
grounds, 305 So.2d 334 (La. 1974); **State v. Defley**, 395 So.2d
759, 761-62 (La. 1981). Anthony Alford, the supposed victim, is
President of the Terrebonne Parish Levee and Conservation Board
of Louisiana, and a public official. Consequently, the search
warrant lacks probable cause because the conduct complained of
is not a criminally actionable offense. The ruling of the
district court denying the motion to quash the search warrant is
reversed, the motion is granted, and the search warrant is
quashed.

JMM
WJC
EGD

COURT OF APPEAL, FIRST CIRCUIT

_____
DEPUTY CLERK OF COURT
FOR THE COURT

Info retrieved by Facebook for Search Warrant (6 pgs)
Article Description

G-1263-16

Exhibit No.

8

E-106
8-24-16
EPA

7-26-16
Date Found, Located or Developed

TPSO
Where This Article Was Found

W Lt. Glynn Prestenbach
Investigating Officer

EVIDENCE

EXHIBIT
H

| | Facebook Business Record | Page 1 |
|---|---|---|

| | |
|---|---|
| **Service** | Facebook |
| **Target** | 100011399596502 |
| **Generated** | 2016-07-26 01:09:21 UTC |
| **Date Range** | 2016-07-01 00:00:00 UTC to 2016-07-18 23:59:59 UTC |
| **NCMEC** | |
| **CyberTip** | |
| **Numbers** | |

| **Name** | **First** | John |
|---|---|---|
| | **Middle** | |
| | **Last** | Turner |

**Vanity Name**  1155468798A

**Registration Ip**  217.115.10.131

| **Ip Addresses** | **IP Address** | 37.130.227.133 |
|---|---|---|
| | **Time** | 2016-07-18 20:28:40 UTC |
| | **IP Address** | 37.187.129.166 |
| | **Time** | 2016-07-18 15:20:03 UTC |
| | **IP Address** | 185.11.180.67 |
| | **Time** | 2016-07-18 13:41:22 UTC |
| | **IP Address** | 185.11.180.67 |
| | **Time** | 2016-07-18 13:41:22 UTC |
| | **IP Address** | 185.11.180.67 |
| | **Time** | 2016-07-18 13:40:38 UTC |
| | **IP Address** | 185.11.180.67 |
| | **Time** | 2016-07-18 13:40:38 UTC |
| | **IP Address** | 185.11.180.67 |
| | **Time** | 2016-07-18 13:40:38 UTC |
| | **IP Address** | 176.10.104.240 |
| | **Time** | 2016-07-15 19:28:48 UTC |
| | **IP Address** | 128.199.59.20 |
| | **Time** | 2016-07-15 18:27:18 UTC |
| | **IP Address** | 128.199.59.20 |
| | **Time** | 2016-07-15 18:27:17 UTC |
| | **IP Address** | 128.199.59.20 |
| | **Time** | 2016-07-15 18:26:24 UTC |
| | **IP Address** | 128.199.59.20 |
| | **Time** | 2016-07-15 18:26:24 UTC |
| | **IP Address** | 128.199.59.20 |
| | **Time** | 2016-07-15 18:26:23 UTC |

**IP Address**
77.247.181.165
**Time** 2016-07-15 16:28:19 UTC

**IP Address** 77.247.181.165
**Time** 2016-07-15 16:27:12 UTC

**IP Address** 213.61.149.100
**Time** 2016-07-15 13:53:36 UTC

**IP Address** 213.61.149.100
**Time** 2016-07-15 13:53:36 UTC

**IP Address** 213.61.149.100
**Time** 2016-07-15 13:52:19 UTC

**IP Address** 213.61.149.100
**Time** 2016-07-15 13:52:19 UTC

**IP Address** 213.61.149.100
**Time** 2016-07-15 13:52:18 UTC

**IP Address** 2602:30a:c0a9:3160:a83b:7b2e:99:f766
**Time** 2016-07-15 00:41:34 UTC

**IP Address** 94.23.147.30
**Time** 2016-07-14 21:11:30 UTC

**IP Address** 94.23.147.30
**Time** 2016-07-14 20:59:53 UTC

**IP Address** 193.90.12.86
**Time** 2016-07-14 19:46:10 UTC

**IP Address** 193.90.12.86
**Time** 2016-07-14 19:46:08 UTC

**IP Address** 193.90.12.86
**Time** 2016-07-14 19:41:27 UTC

**IP Address** 193.90.12.86
**Time** 2016-07-14 19:41:26 UTC

**IP Address** 193.90.12.86
**Time** 2016-07-14 19:31:26 UTC

**IP Address** 163.172.38.175
**Time** 2016-07-14 18:12:45 UTC

**IP Address** 163.172.38.175
**Time** 2016-07-14 17:57:58 UTC

**IP Address** 163.172.38.175
**Time** 2016-07-14 17:57:58 UTC

**IP Address** 163.172.38.175
**Time** 2016-07-14 17:56:43 UTC

**IP Address** 163.172.38.175

Facebook Business Record                                    Page 3

**Time**
            2016-07-14 17:56:43 UTC

**IP Address** 163.172.38.175
       **Time** 2016-07-14 17:56:42 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 16:56:50 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 16:22:12 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 15:53:57 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 15:50:55 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 15:50:55 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 15:45:29 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 15:45:29 UTC

**IP Address** 158.130.0.242
       **Time** 2016-07-14 15:45:28 UTC

**IP Address** 209.66.119.150
       **Time** 2016-07-14 15:11:04 UTC

**IP Address** 209.66.119.150
       **Time** 2016-07-14 15:10:42 UTC

**IP Address** 199.87.154.255
       **Time** 2016-07-14 14:38:27 UTC

**IP Address** 199.87.154.255
       **Time** 2016-07-14 14:37:41 UTC

**IP Address** 149.202.42.188
       **Time** 2016-07-14 14:24:27 UTC

**IP Address** 149.202.42.188
       **Time** 2016-07-14 14:22:45 UTC

**IP Address** 93.115.95.207
       **Time** 2016-07-14 14:01:53 UTC

**IP Address** 5.196.66.162
       **Time** 2016-07-14 14:00:10 UTC

**IP Address** 5.196.66.162
       **Time** 2016-07-14 13:59:35 UTC

**IP Address** 5.196.66.162
       **Time** 2016-07-14 13:59:16 UTC

**Facebook Business Record**                                    Page 4

**IP Address**
           194.150.168.79
    **Time** 2016-07-14 13:35:20 UTC

**IP Address** 194.150.168.79
    **Time** 2016-07-14 13:35:10 UTC

**IP Address** 149.202.98.161
    **Time** 2016-07-14 00:25:55 UTC

**IP Address** 149.202.98.161
    **Time** 2016-07-14 00:09:55 UTC

**IP Address** 149.202.98.161
    **Time** 2016-07-14 00:06:49 UTC

**IP Address** 64.134.58.230
    **Time** 2016-07-13 22:30:38 UTC

**IP Address** 64.134.58.230
    **Time** 2016-07-13 22:30:29 UTC

**IP Address** 64.134.58.230
    **Time** 2016-07-13 22:30:08 UTC

**IP Address** 64.134.58.230
    **Time** 2016-07-13 22:30:00 UTC

**IP Address** 64.134.58.230
    **Time** 2016-07-13 22:29:15 UTC

**IP Address** 109.201.133.100
    **Time** 2016-07-13 19:15:29 UTC

**IP Address** 109.201.133.100
    **Time** 2016-07-13 19:15:05 UTC

**IP Address** 109.201.133.100
    **Time** 2016-07-13 19:14:42 UTC

**IP Address** 109.163.234.5
    **Time** 2016-07-13 15:41:17 UTC

**IP Address** 109.163.234.5
    **Time** 2016-07-13 15:38:59 UTC

**IP Address** 109.163.234.5
    **Time** 2016-07-13 13:50:35 UTC

**IP Address** 109.163.234.5
    **Time** 2016-07-13 13:50:35 UTC

**IP Address** 109.163.234.5
    **Time** 2016-07-13 13:46:25 UTC

**IP Address** 109.163.234.5
    **Time** 2016-07-13 13:46:23 UTC

**IP Address** 109.163.234.5

**Time**
　　2016-07-13 13:46:23 UTC

**IP Address** 109.163.234.5
**Time** 2016-07-13 13:46:22 UTC

**IP Address** 40.128.70.225
**Time** 2016-07-13 13:20:17 UTC

**IP Address** 40.128.70.225
**Time** 2016-07-13 13:19:18 UTC

**IP Address** 37.187.129.166
**Time** 2016-07-12 16:59:55 UTC

**IP Address** 37.187.129.166
**Time** 2016-07-12 16:59:55 UTC

**IP Address** 149.56.99.36
**Time** 2016-07-12 16:52:36 UTC

**IP Address** 149.56.99.36
**Time** 2016-07-12 16:52:36 UTC

**IP Address** 149.56.99.36
**Time** 2016-07-12 16:52:35 UTC

**IP Address** 40.128.70.225
**Time** 2016-07-12 16:51:57 UTC

**IP Address** 40.128.70.225
**Time** 2016-07-12 14:19:01 UTC

**IP Address** 2602:30a:c0a9:3160:8899:f251:2aac:1172
**Time** 2016-07-12 01:59:35 UTC

**IP Address** 2602:306:3374:9920:61c4:cf51:ab5c:18d3
**Time** 2016-07-10 16:36:24 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:16:43 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:16:24 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:12:21 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:12:06 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:10:54 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:07:06 UTC

**IP Address** 2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time** 2016-07-05 18:06:35 UTC

**IP Address**  2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time**  2016-07-05 18:00:52 UTC

**IP Address**  2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time**  2016-07-05 17:58:20 UTC

**IP Address**  2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time**  2016-07-05 17:58:13 UTC

**IP Address**  2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time**  2016-07-05 17:57:26 UTC

**IP Address**  2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time**  2016-07-05 17:56:13 UTC

**IP Address**  2602:30a:c0a9:3160:a511:f871:a47e:27f0
**Time**  2016-07-05 17:54:57 UTC

**IP Address**  2602:30a:c0a9:3160:b976:8dc3:7427:2af5
**Time**  2016-07-03 23:57:24 UTC

**IP Address**  2602:30a:c0a9:3160:b976:8dc3:7427:2af5
**Time**  2016-07-03 23:36:26 UTC

**IP Address**  2602:30a:c0a9:3160:b976:8dc3:7427:2af5
**Time**  2016-07-03 23:36:21 UTC

**IP Address**  2602:30a:c0a9:3160:b976:8dc3:7427:2af5
**Time**  2016-07-03 23:32:32 UTC

**IP Address**  2602:30a:c0a9:3160:d474:aab0:2f0d:fd45
**Time**  2016-07-03 19:23:07 UTC

**IP Address**  2602:30a:c0a9:3160:d474:aab0:2f0d:fd45
**Time**  2016-07-03 16:24:31 UTC

**IP Address**  2602:30a:c0a9:3160:84f6:73bd:cd36:bedc
**Time**  2016-07-02 23:30:56 UTC

**IP Address**  2602:30a:c0a9:3160:84f6:73bd:cd36:bedc
**Time**  2016-07-02 22:31:09 UTC

**IP Address**  2602:30a:c0a9:3160:84f6:73bd:cd36:bedc
**Time**  2016-07-02 22:27:26 UTC

**IP Address**  2602:30a:c0a9:3160:84f6:73bd:cd36:bedc
**Time**  2016-07-02 22:19:43 UTC

**IP Address**  2602:30a:c0a9:3160:84f6:73bd:cd36:bedc
**Time**  2016-07-02 22:13:30 UTC

**IP Address**  2602:30a:c0a9:3160:84f6:73bd:cd36:bedc
**Time**  2016-07-02 21:30:46 UTC

## TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

|  | | |
|---|---|---|
| 1 | | RECORDED INTERVIEW OF GORDY DOVE |
| 2 | | CASE #G-01263-16 |
| 3 | | |
| 4 | PRESTENBACH: | Today's August 2nd, 2016. Time is 10:30 a.m. I'm Det. Lt. Glynn |
| 5 | | Prestenbach currently at #5 Glen Oaks in reference to case number |
| 6 | | G-1263-16. This is gonna be a defamation case involving Mr. |
| 7 | | Anthony Alford and Mr. Gordy Dove. Currently speaking with Mr. |
| 8 | | Gordy Dove in reference to this case. Okay Mr. Dove you aware |
| 9 | | this is being recorded. |
| 10 | | |
| 11 | DOVE: | Yes. |
| 12 | | |
| 13 | PRESTENBACH: | State your full name and date of birth please. |
| 14 | | |
| 15 | DOVE: | Gordon E. Dove, April 5th, 1957. |
| 16 | | |
| 17 | PRESTENBACH: | All right now you aware of these Facebook posts that was posted |
| 18 | | by John Turner correct. |
| 19 | | |
| 20 | DOVE: | Yes. |
| 21 | | |
| 22 | PRESTENBACH: | And under that is also a website called Exposethat or Exposedat |
| 23 | | DAT. |
| 24 | | |
| 25 | DOVE: | Yes look like it's the same the same uh site. |
| 26 | | |
| 27 | PRESTENBACH: | Okay some stuff in here was posted about you that you say the |
| 28 | | information is incorrect. Can you explain which parts and why the |
| 29 | | information is not correct. |
| 30 | | |
| 31 | DOVE: | Okay Gordon Dove company sued for $797,725.00 worth of unpaid |
| 32 | | bills. I never personally owned Dual Trucking LLC in Dual Dual |
| 33 | | excuse me I never personally owned Dual Trucking and Transport |
| 34 | | LLC. Uh it that was that was owned by a different group of LLCs |
| 35 | | and the one LLC that I was a part of that owned part of Dual |
| 36 | | Trucking and Transport had got out May 28th, 2013. |
| 37 | | |
| 38 | PRESTENBACH: | Okay and that's when you sold out everything you owned with that |
| 39 | | company. |
| 40 | | |
| 41 | DOVE: | That well Southern Palms sold it out. |
| 42 | | |
| 43 | PRESTENBACH: | Okay. |
| 44 | | |



# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | DOVE: | Which was I was a part of Southern Palms. But but but even Southern Palms the LLC was out May 28th, 2013. I have no idea what this $797,725.00 worth of of unpaid bills except it says it belongs to environmental materials. I do own part of Dual Trucking LLC, which is which which is a totally different company than Dual Trucking and Transport and actually it I don't personally own part of Dual Trucking LLC it's owned by another LLC, which I have a part of. |
| 10<br>11 | PRESTENBACH: | Okay. |
| 12<br>13 | DOVE: | But it was not a party of this lawsuit that's listed in here. |
| 14<br>15<br>16 | PRESTENBACH: | Okay. Okay what is the next thing you noticed in this that was not that was false. |
| 17<br>18<br>19<br>20<br>21<br>22 | DOVE: | Okay I I was not a part of and and it was there there was no dumping of of of radioactive waste in in uh I believe it's North Dakota. Gordon Dove and Tony Alford radioactive waste dumping. I I was never a part of that and as far as my knowledge there was no radioactive waste that was dumped. |
| 23<br>24 | PRESTENBACH: | Okay. |
| 25<br>26 | DOVE: | That that I'm aware of. |
| 27<br>28<br>29 | PRESTENBACH: | Did you own part of that company that was cited for that or or accused of that. |
| 30<br>31<br>32 | DOVE: | At that time I was out of it. I was completely out of Dual uh Dual Trucking and Transport. |
| 33<br>34 | PRESTENBACH: | Okay. |
| 35<br>36<br>37<br>38 | DOVE: | Uh that when it when when it was cited and not only that I contacted DEQ and and had them had them pull my name completely out of anything. |
| 39<br>40 | PRESTENBACH: | Okay. |
| 41<br>42<br>43 | DOVE: | And if they would have checked with DEQ they would see I'm no part of it. |
| 44<br>45 | PRESTENBACH: | Okay anything else in this Facebook post. |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | DOVE: | Well they they try to allude that perhaps this is one way that Gordy |
| 2 | | Dove is trying to pay Tony Alford back on Dual Trucking and |
| 3 | | Transport. It's very, very misleading and totally false. Uh |
| 4 | | |
| 5 | PRESTENBACH: | You mean paying him back when (inaudible). |
| 6 | | |
| 7 | DOVE: | This commission on a on on a $773,924.00 773,924 yearly |
| 8 | | premium in his pocket. I mean I have no idea what that premium |
| 9 | | comes from and they try to allude that this is maybe one way I'm |
| 10 | | trying to pay him back. |
| 11 | | |
| 12 | PRESTENBACH: | Okay. |
| 13 | | |
| 14 | DOVE: | I think that's totally against my character. |
| 15 | | |
| 16 | PRESTENBACH: | Now you talking about the insurance for the parish going to Alford, |
| 17 | | Staples. |
| 18 | | |
| 19 | DOVE: | Yes which is a which there was a if they care to check there was a |
| 20 | | a uh a an ethics request done by my office and a ethics an ethics |
| 21 | | uh hearing was made on this on the fact of Tony Alford with all the |
| 22 | | particulars involved that me and him were business partners and |
| 23 | | they said there was no ethics violation and this totally cleared it and |
| 24 | | this this article is trying to insinuate that I'm trying to pay him back |
| 25 | | in some manner off of uh off of this uh this uh government contract |
| 26 | | for this, which is totally, totally false and inaccurate and made up. |
| 27 | | Uh |
| 28 | | |
| 29 | PRESTENBACH: | Okay the fact about the the the parish government insurance that's |
| 30 | | done by the board correct the parish board or the uh council has to |
| 31 | | rule on this. |
| 32 | | |
| 33 | DOVE: | Well the council takes 5 votes it has to be at least 5 votes to |
| 34 | | approve me to authorize any contract. This is totally, totally |
| 35 | | ludicrous and uh it's about as ridiculous as uh the fact that we we |
| 36 | | were dumping dumping radioactive waste makes it sound like |
| 37 | | you're intentionally dumping radioactive waste. That's basically |
| 38 | | accusing me of doing something something criminally wrong and I |
| 39 | | did not have any access it's totally ridiculous it's almost laughable |
| 40 | | and uh uh that on this radioactive waste. Mr. Alford to my |
| 41 | | knowledge had applied with DEQ on a uh facility that that that he |
| 42 | | had owned in one of the LLCs that I owned at one point that I got |
| 43 | | out in 2013 May uh they they they were had applied and as far as |
| 44 | | my knowledge they had got some type of compliance from DEQ. |
| 45 | | But it was nothing to do with myself or or my LLC. |
| 46 | | |

## TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | PRESTENBACH: | Okay. Anything else you wanna add to your statement. |
| 3 | DOVE: | Uh let me see. Oh uh another thing this website has done is brought my daughter Jackie Dove Broussard into their Facebook without her permission and is trying to allude something of some type of contact that that between myself, Joe Waitz and her husband, who's worked for Joe Waitz as a prosecutor for 6 years and trying to somehow tie that in all together, which is which which is totally, totally uh inaccurate and and and made up and uh |
| 11 | PRESTENBACH: | You talking about Cy Broussard working for the D.A.'s Office. |
| 13 | DOVE: | Yeah Cy Broussard yes. And uh uh and and and and I'm I'm looking for the Sheriff's Department to find who owns this computer. This is this looks like it's definitely a uh a uh a fictitious site reporting fictitious information and I I you know I wanna see exactly who's behind it. |
| 19 | PRESTENBACH: | Okay. |
| 21 | DOVE: | So I'm asking the D.A.'s Office to I mean the D.A.'s Office and the Sheriff's Office to find what computer this is and if they wanna if they wanna write something about me they need to they they they need to get it get it correct or quit making up this stuff. |
| 26 | PRESTENBACH: | Okay Mr. Dove anything else you wish to add. |
| 28 | DOVE: | Uh |
| 30 | PRESTENBACH: | Okay gonna pause the interview for one second. Time is now 10:39. Okay we back on the recording. |
| 33 | DOVE: | Okay. |
| 35 | PRESTENBACH: | Uh time is now 10:42. |
| 37 | DOVE: | And I personally like I say I personally did not have anything to do with this. I was involved with a corporation LLCs that may have owed this but they were out in 2013. |
| 41 | PRESTENBACH: | Okay. |
| 43 | DOVE: | And and uh that's it. |
| 45 | PRESTENBACH: | Okay gonna go ahead and conclude the interview. Time now is 10:43. Today is still August 2nd, 2016. Same parties present. Okay |

# TERREBONNE PARISH SHERIFF'S OFFICE

Case #:G-1263-16

| | | |
|---|---|---|
| 1 | | we going back on Mr. Dove's previous statement. He wanted to add |
| 2 | | something to his recording. Time is now 10:43. Today is August 2nd, |
| 3 | | 2016. Case number G-1263-16. |
| 4 | | |
| 5 | DOVE: | Also on on on Vacco, Inc. black man and the noose the EE EEOC |
| 6 | | found that Vacco Vacco, Inc. did nothing nothing wrong uh nothing |
| 7 | | with that. That was one of our employees that that another |
| 8 | | employee from another company had had had did had uh showed |
| 9 | | him some type of noose or something. That was not an employee |
| 10 | | from Vacco who did that and and what they're doing in there they |
| 11 | | they trying to make it look like Vacco was a part of that. That was a |
| 12 | | Vacco employee that did it. |
| 13 | | |
| 14 | PRESTENBACH: | So |
| 15 | | |
| 16 | DOVE: | I mean excuse me that that that was the plaintiff was a Vacco |
| 17 | | employee was allegedly uh shown this this hangman's noose. |
| 18 | | |
| 19 | PRESTENBACH: | And the person that did that didn't work for Vacco. |
| 20 | | |
| 21 | DOVE: | Did not work for Vacco and and and they're trying to distort that. |
| 22 | | |
| 23 | PRESTENBACH: | Okay. |
| 24 | | |
| 25 | DOVE: | And and we did go to EEOC on it and uh with a lawyer and we |
| 26 | | were found no way in fault. |
| 27 | | |
| 28 | PRESTENBACH: | Okay anything else. |
| 29 | | |
| 30 | DOVE: | That's it. |
| 31 | | |
| 32 | PRESTENBACH: | Okay time is now 10:44. Today is still August 2nd, 2016. Same |
| 33 | | parties present. |
| 34 | | |
| 35 | | |
| 36 | | |
| 37 | | |
| 38 | Transcribed by:_____Date:_____ |



# Terrebonne Sheriff raids house to expose 'Esposedat' a corruption blog

Katie Moore and David Hammer, WWL        *10:36 PM. CDT August 03, 2016*



HOUMA, La.—Terrebonne Parish Sheriff's deputies raided a home Tuesday in hopes of uncovering who is behind an anti-corruption blog aimed at Sheriff Jerry Larpenter and other local politicians.

"Exposedat" (http://exposedat.in/wp/) is a blog, claiming to be "Terrebonne Parish's Underground Watchdog", that started publishing short articles about politicians and their business dealings in June.

The first post titled, "Black Man and a Noose", outlined a civil rights lawsuit filed against a company owned by now-Parish President Gordon Dove called VACCO, Inc.

Subsequent articles have called into question business dealings and relationships of other top Terrebonne Parish officials, including Sheriff Larpenter and District Attorney Joseph Waitz, Jr.

Tuesday, sheriff's deputies executed a search warrant on a home in Houma, seizing computers and cell phones, alleging the blog's author committed criminal defamation against the parish's new insurance agent, Tony Alford.

The home belonged to Houma Police Officer Wayne Anderson. He denies having any involvement in Exposedat. Deputies took two laptop computers, one of which belonged to his children, and five cell phones.

Anderson is a long-time police officer, formerly serving as a Terrebonne Parish deputy and a New Orleans Police officer.

"I'm not sure if they believe Mr. Anderson is actually the author of such work," said Matthew Ory, Anderson's attorney.

The search of Anderson's home was one of three warrants executed in the Sheriff's attempts to expose Exposedat, according to Larpenter.

The other two were for computer and Facebook account information.

Exposedat's Facebook page was created by an account using the pseudonym John Turner.

While Anderson denies any involvement in the blog, even if he did create it, legal experts agree it would very likely be protected speech under the 1st Amendment.

Attorney Mary Ellen Roy said the U.S. Supreme Court has found Louisiana's criminal defamation statute unconstitutional when it is used "...to punish public expression and publication concerning public officials, public figures and private individuals who are engaged in public affairs."

Sheriff Larpenter and Alford were pictured together in a Tweet featured on Exposedat's most recent post three days ago.



When Larpenter was asked whether there is a conflict in him investigating an alleged crime involving himself, he replied, "If you're gonna lie about me and make it under a fictitious name, I'm gonna come after you."

He went on to say that once he finished investigating the blog, he would turn the case over to District Attorney Waitz to determine if Waitz wanted to prosecute it or "hand it off." Waitz is also featured on Exposedat.

"When we're talking about speech directed at matters of public interest questioning the activities of a public official, that is constitutionally protected speech of the highest order, and prosecutions for that sort of public comment are extraordinary," said Loyola Law Professor Dane Ciolino.

Even though legal scholars say a successful criminal prosecution for defamation is unlikely, the fallout from the investigation is already causing problems for Anderson.

Houma Police Chief Dana Coleman suspended Anderson from the force indefinitely, placing him on paid administrative leave. Anderson's attorney says he has not yet received paperwork on the suspension, but that they were told the chief alleges Anderson didn't uphold the law and committed conduct unbecoming an officer.

Chief Coleman didn't respond to a call seeking comment on Anderson's suspension.

Larpenter maintains his deputies have probable cause to conduct the investigation and that it was enough to secure the three warrants.

The one they used to search Anderson's home was signed Tuesday by Judge Randall Bethancourt, who was not serving as the on-duty judge for criminal cases that day.

Houma attorney Jerri Smitko often represents police officers, and Anderson called her when the raid on his home was being carried out Tuesday.

She said she immediately called Judge Bethancourt to try and keep deputies from searching Anderson's computers and phones until they could have a hearing on the legitimacy of the warrant.

The Judge issued a stay and ordered that the evidence be secured by the Terrebonne Parish Clerk of Court until a contradictory hearing could be held. A date and time for that hearing has not yet been scheduled.

## JOIN THE CONVERSATION

To find out more about Facebook commenting please read the
Conversation Guidelines and FAQs (http://$staticDomain/conversation-guidelines/)

## LEAVE A COMMENT ()

**Friday**
Posted Aug 5, 2016 at 12:21 AM



houmatoday.com

# Website raid raises issues in Terrebonne Parish

Does the First Amendment right to freedom of speech apply to an anti-corruption website that led the Terrebonne Parish Sheriff's Office to raid a Houma Police officer's home Tuesday?

By Bridget Mire and Sean EllisStaff Writers
Does the First Amendment right to freedom of speech apply to an anti-corruption website that led the Terrebonne Parish Sheriff's Office to raid a Houma Police officer's home Tuesday?

Or is ExposeDAT, which claims to be "Terrebonne Parish's Underground Watchdog," defamatory toward those it targets?

Attorneys and public officials are still trying to figure that out and hoping that a hearing at 1:30 p.m. today will help with the determination.

ExposeDAT, **http://exposedat.in/wp/**, began publishing articles about local public figures – including Parish President Gordy Dove, Sheriff Jerry Larpenter and District Attorney Joe Waitz Jr. – and their business dealings in late June.

Larpenter said in a news release Thursday that the Sheriff's Office was still investigating a defamation complaint by the parish's insurance agent, Tony Alford, on behalf of himself and his business, ASLR Insurance. Part of that investigation was a search of Wayne Anderson's home on St. Francis Street.



EXHIBIT
K

"The complaint conforms to the statute in question and is a criminal issue, not a freedom of speech," Larpenter said in a statement. "The investigation is ongoing, and no further information will be released until the investigation is completed and possible criminal charges are filed."

Friday
Posted Aug 5, 2016 at 12:21 AM

## 'PROBABLE CAUSE'

According to WWL-TV, Anderson previously was a Terrebonne sheriff's deputy and denies involvement in the blog. ExposeDAT's Facebook page was created by someone using the pseudonym John Turner, WWL-TV reported.

"The officers felt, obviously, that there was enough to move forward," said Bill Dodd, the Sheriff's Office's attorney. "A search warrant would be issued to find out if you had an IP address that showed where the alleged defamatory statements came from. I think the IP address came from the location where the search warrant was executed. All of that is part of an overall issue of probable cause."

The Sheriff's Office hasn't yet named Anderson as a suspect.

Houma Police Chief Dana Coleman said his department had nothing to do with the raid and that, contrary to another news report, Anderson was not suspended.

"There was a criminal investigation TPSO was conducting with our employee, so he was placed on (administrative) leave with pay," Coleman said.

Waitz said the Attorney General's Office will be handling the case to prevent "the appearance of impropriety." Because the website attacks him and his family, he said, it was only right to recuse himself to avoid the potential issue of bias.

Houma attorney Jerri Smitko and Thibodaux attorneys David Ardoin and Matthew Ory are representing Anderson.

Smitko said Anderson was working a detail when he was called home because of the search warrant. That's when he contacted her.

"We want his property returned to him, and we want this to be done with," Smitko said. "Any attempt to go after whoever put up the website or whatever John Turner did is illegal. You can't use our tax money to try to silence people who are using their constitutionally protected rights."

**Friday**

Posted Aug 5, 2016 at 12:21 AM

She said she asked that deputies not be allowed to search the laptop computers and cellphones they seized until the hearing, and Dodd agreed. The equipment is now being held in the Clerk of Court's Office.

"I think it was an unconstitutional search and seizure, and until we can get to the bottom of whether it was an illegal search, they shouldn't be allowed to look through it," Smitko said.

### 'PROTECTED SPEECH'

Smitko believes this is a First Amendment issue. She likened it to calling Hillary Clinton a crook or saying she should be in jail.

"People can say that all day long because it's protected speech," she said. "Everything on the website is protected speech. I don't believe anything on the website alleges a crime has been committed. There were supporting documents, there were public records. All it did was attempt to educate the people of Terrebonne Parish."

Dodd criticized the fact that the posts were made anonymously and said he does not believe freedom of speech applies to them.

"Why should a person be able to say things about you that create questions about your standing in the community or your ability to do work and maybe you lose your job over it?" he said. "That's what the defamation law is about. It's not to have a chilling effect on freedom of speech. Mr. Alford has been accused of crimes, so certainly in my opinion it fits within the four corners of that defamation. ... You can say he's a crook without saying that he's done anything specifically. If you say something as specifically as they did about this insurance business ... I think you'll find that is defamation and he's entitled to file the complaint."

Louisiana law defines defamation as "the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends to expose any person to hatred, contempt or ridicule, or to deprive him of the benefit of public confidence or social

intercourse; or to expose the memory of one deceased to hatred, contempt or ridicule; or to injure any person, corporation, or association of persons in his or their business or occupation."

**Friday**

Posted Aug 5, 2016 at 12:21 AM

A conviction carries a sentence of up to six months in jail and a $500 fine.

In 1964, the U.S. Supreme Court ruled in New York Times Co. v. Sullivan that a state cannot award damages to public officials for defamation related to their official conduct unless they can prove "actual malice." In other words, the person who made the statement must have known it was false and exercised reckless disregard for its truthfulness.

The high court issued a similar ruling that same year in Garrison v. Louisiana.

Smitko said the fact that the Sheriff's Office took time to execute a search warrant because of a website is odd.

"Unusual would be the nicest term I could use for it," she said. "Those involved need to step back, take a deep breath and act in accordance with the law. This doesn't need to keep going. They need to just let it go. The victim in all this is Mr. Anderson. He needs to be returned to duty. Police officers make their salary, but then they can make details, they can work overtime, they can work extra shifts. It's hard for a police officer to make a living just on a salary."

**'ACCURATE CRITICISM'**

Dove called all the allegations false and a "travesty of justice." In the case of the blog post entitled "A Black Man and a Noose" that outlined a civil rights lawsuit against Dove's company, VACCO Inc., Dove sent a letter from the U.S. Equal Employment Opportunity Commission to The Courier and Daily Comet stating the investigation had been dismissed.

"There was a full investigation," he said. "It was my driver that someone had showed the noose to. Of course, when the lawyers sue, they sue everybody. That was not my employee with the noose. That was at somebody else's yard."

Dove said he's normally not bothered by online posts about him, calling it an expectation of being an elected official. But he was angered at his daughter and son-in-law, Assistant District Attorney Sye Broussard, being involved.

Website raid raises issues in Terrebonne Parish                                    Page 5 of 5

"These people think they can write whatever they want," Dove said. "I think Jerry Larpenter did a great thing going after them, and I do hope he finds everyone involved because I'm really contemplating suing them. I know you don't make any money, but if I do, I'll donate 100 percent to charity. I don't want the money. I want the termites that crawled out the woodwork and started doing that stuff."

Dove also denied the allegation that Alford's insurance company had been given a parish contract as a political move and said the parish had gone to the state Ethics Board for a ruling before making the decision. He also said that the hiring of Joe Waitz III, son of Waitz Jr., as a parish attorney was his decision and not a favor to the district attorney.

"Joe Waitz did not ask me, did not call me to hire his son," he said. "I wanted to hire him to help some kids out of college learn about government. I don't think he's billed out hardly anything. We give him some simple stuff to learn from, and they're trying to make it like some big scheme."

Dove called anyone hiding behind a fake name to post criticism a "coward" and said council meetings are open anytime for "accurate criticism."

"Anyone wants to come and tell me what they think, come tell the council what they think, come tell the public," he said. "Why are you hiding? ... This is politics. These guys ain't about good government. This is about politics. Dirty, low-down, cowardly politics. They ought to be ashamed of themselves."

*-- Staff Writer Bridget Mire can be reached at 448-7639 or **bridget.mire**@dailycomet.com. Follow her on Twitter @bridget_mire.*

*-- Staff Writer Sean Ellis can be reached at 857-2202 or **sean.ellis**@houmatoday.com Follow him on Twitter @courier_sean.*

Houma Courier

Attn: Mr. Keith MaGill

Mr. Keith:

I have been following the news media concerning the search warrant of Police officer Wayne Anderson's home. Don't you find it strange that attorney Jerri Smitko only mentioned Wayne Anderson's computer and his children's computer, but never once mentioned Wayne Anderson's wife (Jennifer Nichole Richeson Goulas Anderson), in not one of the many news media interviews?

I've known Jennifer for years since she moved to Terrebonne from Georgia. She told me she was arrested six times in Georgia and was arrested by the Feds with two felony convictions. She told me she spent two years in Federal Prison.

Perhaps this is one of the reasons attorney Smitko doesn't want the truth to come out. If you google Jennifer Nichole Richeson, DOB -2-22-80, Augusta, GA, you will see in the Chronicle paper her arrest.

Perhaps another reason attorney Smitko wants to hide the truth is that Jennifer Anderson worked for her (Smitko) two years with access to Personal files and information. Jennifer's work history is on her facebook working two years for Smitko.

By the way, Jennifer's crimes consist of Fraud and Deception (Internet crimes). She is an expert on creating computer files, stealing personal information and money from innocent people. She told me that she not only made up lies on Facebook about elected officials this time, but has done the same before, something to do with "The Voice of Terrebonne", while she was Clayton Voisin's Campaign manager for Parish President in 2011.

Jennifer's maiden name is Jennifer Nichole Richeson, DOB is 2-22-80. She has since been married twice. Her criminal charges are from her single days in Georgia. I don't know why the police haven't put out this information because I gave it to them and they called me back and verified this, (all six arrests).

I know in either Terrebonne or Lafourche Jennifer Goulas, her first marriage name, she was sued because she tried ruining some of her ex-inlaws lives, she told me about it.

All I can tell you is that this is an evil woman that ruined several people's lives by stealing, lying, and deception. Just like she and attorney Smitko is now doing.



It don't take a genius to figure this out that attorney Smitko is involved with Jennifer because Jennifer doesn't do this for free. Jennifer is from Georgia and not Terrebonne Parish when she doesn't know the people she is lying about.

If you want to connect the Facebook dots just look thru the forrest because the dots point to attorney Smitko, who ran for Judge in Terrebonne Parish before and lost. She hates DA Joe Waitz and Parish President Gordy Dove.

This is dirty politics by attorney Smitko and Jennifer Anderson.

If you want the Truth, here are the answers. Please tell the whole story. I would come forward, but I am terribly afraid of Jennifer Anderson, she could ruin me, my family, and my finances on her computer, that's how good she is.

PS: I will be sending these letters to all newspapers and TV station by mail.

Cc: Parish President Gordon Dove
Council: John Navy, Arlanda Williams, Dirk Guidry, Al Marmande, Steve Robichaux, Krista Duplantis, Darren Guidry, Scotty Dryden, Gerald Michel.