## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WAYNE ANDERSON** | * | **CIVIL ACTION NO. 2:16-cv-13733** |
| **JENNIFER ANDERSON** | * | |
| *Plaintiffs* | * | **JUDGE LANCE AFRICK** |
| | * | |
| **v.** | * | **MAG. JUDGE JANIS van MEERVELD** |
| | * | |
| **JERRY LARPENTER,** | * | **SECTION I** |
| **individually and in his official** | * | |
| **capacity as Sheriff of the Parish of** | * | |
| **Terrebonne, GORDON DOVE** | * | |
| **individually and in his official** | * | |
| **Capacity as the President of the** | * | |
| **Terrebonne Parish Consolidated** | * | |
| **Govt., and TERREBONNE** | * | |
| **PARISH CONSOLIDATED** | * | |
| **GOVERNMENT** | * | |
| *Defendants* | * | |

**********************************

## SECOND AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned Counsel, come Plaintiffs, **WAYNE AND JENNIFER ANDERSON**, who hereby amend their First Amended Complaint [Rec. Doc. 21]. Plaintiffs incorporate all allegations set forth in their First Amended Complaint to the extent that those allegations are not inconsistent with the facts and allegations set forth in this Second Amended Complaint.

## JURISDICTION AND VENUE

1. **Plaintiffs desire to amend Paragraph 1 of their First Amended Complaint as follows**:

1.

Jurisdiction over this matter is invoked pursuant to 28 U.S.C Sections 1331 and 1343; 42 U.S.C. Sections 1983 and 1988; and, the First, Fourth and Fourteenth Amendments to the

Constitution of the United States of America. This is a civil suit seeking redress for the wrongful and purposeful deprivation, under color of state law, of the rights, privileges, protections and immunities granted the plaintiffs by the United States Constitution.

Venue is proper in this Judicial District pursuant to 28 U.S.C. 1391 (b).

## PARTIES

2. **Plaintiffs desire to amend Paragraph 2 of their First Amended Complaint as follows:**

2.

   a. Plaintiffs, Wayne and Jennifer Anderson, are husband and wife who are citizens of the United States of America, State of Louisiana and who are domiciled in Terrebonne Parish in the City of Houma.

3. **Plaintiffs desire to amend Paragraph 3 of their First Amended Complaint as follows:**

3.

Made Defendants herein are:

   a. **JERRY LARPENTER, individually and in his official capacity as Sheriff of Terrebonne Parish, State of Louisiana;**

   b. **GORDON DOVE, individually, and in his official capacity as President of the Terrebonne Parish Consolidated Government; and**

   c. **TERREBONNE PARISH CONSOLIDATED GOVERNMENT, a political subdivision of the State of Louisiana.**

4.  **Plaintiffs desire to amend Paragraphs 4 – 14 of their First Amended Complaint as follows:**

<u>**STATEMENT OF FACTS**</u>

4.

On or about July 2, 2016, Plaintiff, Jennifer Anderson (Anderson) created an internet website/blog called "Exposedat." Anderson created the website/blog to highlight and question the closely intertwined business and personal relationships between public officials in Terrebonne Parish particularly as they related to the awarding of then recent public insurance contracts involving Terrebonne Parish. The public officials discussed on "Exposedat" included Gordon Dove (Dove), President of the Terrebonne Parish Consolidated Government (TPCG), Terrebonne Parish Sheriff Jerry Larpenter (Larpenter) and Anthony Alford (Alford), Parish insurance agent and President of the Terrebonne Levee and Conservation District (TLCD).

5.

Jennifer Anderson researched and wrote the articles on Exposedat using publicly available information (e.g. court documentation and documentation from the Secretary of State). She also created a Facebook profile under the pseudonym John Turner to further promote the public's awareness of the website.   Wayne Anderson did not contribute to the articles on Exposedat or post or comment on the John Turner Facebook page.

6.

On July 13, 2016, within two weeks of the website's creation, Terrebonne Parish Sheriff's Office (TPSO) Detective Glynn Prestenbach Jr., (Prestenbach) was contacted by Defendant, Sheriff Jerry Larpenter who told him that he needed to investigate a criminal

complaint pursuant to La R.S. 14:47. Larpenter advised that the criminal complaint would be made by Alford in reference to allegedly false information that was being posted on Facebook by John Turner about Alford and Alford's insurance company, ASLR, LLC. Larpenter personally recounted the basis of Alford's criminal complaint to Prestenbach. When Larpenter was finished, he told Prestenbach to contact Alford for further information. **(See Exhibit A – Police Report)**

7.

Prestenbach immediately contacted Alford and arranged to take his statement.  Alford relayed much of the same information to Prestenbach as Larpenter previously had regarding some of the content on the website that Alford contended to be inaccurate. Importantly, however, Alford confirmed in his statement that some of the information on the website was true (i.e. that he received commissions from the TPSO/ASLR, LLC contract). **(See Exhibit B – Recorded Interview of Anthony Alford – July 14, 2016, p. 5)**

8.

Prestenbach then applied for search warrants to Facebook and later AT&T that ultimately identified the Plaintiffs' account as the source of the website/John Turner posts. Prestenbach reported to Larpenter that the account was registered to Officer Wayne Anderson's residence. Larpenter told Prestenbach to take no further action until he received further notice from him.

9.

Later, Prestenbach was contacted by TPSO Captain Kody Voisin who advised him that he had spoken with Sheriff Larpenter who wanted a search warrant issued for the Plaintiffs residence and that Prestenbach should contact Sheriff Larpenter for additional information.

Prestenbach called Larpenter immediately and was told by the Sheriff that he had spoken to District Attorney Joseph Waitz and that they had agreed to continue with the investigation and obtain a search warrant for the Plaintiffs residence. District Attorney Waitz would subsequently recuse his office from the case/investigation during the Motion to Quash hearing given the apparent conflict presented by the fact that Waitz had also been discussed on the website. However, Larpenter, unbridled by concerns of possible conflicts of interest and personal animus, continued his pursuit of the criminal investigation despite the fact that he too was discussed on the website.

10.

Prestenbach's affidavit in support of the search warrant, attached hereto as **Exhibit C** (along with the subject search warrant), reiterated Alford's statements made in his July 14, 2016 recorded interview (Exhibit B). Importantly, Prestenbach's affidavit in support of the search warrant indicated that some information on the website was true regarding Alford and his insurance company ASLR, LLC; that the officials and matters discussed on the website were public officials and matters pertaining to public issues; and that there was source documentation to support the information which had been posted.  In fact, the affidavit in support of the search warrant clearly stated the following in the first paragraph:

> "Also discovered through the investigation was a website "Exposedat" which made the same claims [as John Turner] and had also posted copies of court rulings and other documents supporting their claims."[1] (emphasis added)

These facts, among others, should have clearly precluded the Sheriff, a public official whose sworn obligation is to uphold the Constitution and Laws of the United States and the State of Louisiana, from pursuing a legally unsupportable criminal defamation complaint pursuant to

---

[1] See Exhibit C , p. 1 – Affidavit for Search Warrant.

La. R.S. 14:47, given the undeniable fact that the statute was ruled unconstitutional in these circumstances over 50 years ago.

11.

Yet, on August 2, 2016, deputies employed by the TPSO executed the search warrant at the private residence of the Plaintiffs. Plaintiff, Wayne Anderson, who is a police officer employed by the Houma Police Department, was contacted directly by Detective Prestenbach via text message and asked to come to his home immediately. Detective Prestenbach revealed no additional details to Officer Anderson. Officer Anderson immediately contacted his wife and advised her of the situation.

12.

Wayne Anderson arrived at his home to find five TPSO Detectives and one marked TPSO mobile unit surrounding their property. While standing in the front yard of his residence, Officer Anderson was physically served with a copy of the illegal search warrant. After reviewing the search warrant, Officer Anderson contacted undersigned co-counsel, Jerri Smitko, who arrived at the Anderson residence later that afternoon. Upon reviewing the search warrant, Ms. Smitko immediately questioned its propriety and legality. Detective Prestenbach failed to go before the "Duty Judge" who should have reviewed and considered the warrant application. Instead, Prestenbach made application to Judge Randall Bethancourt to review and sign the subject search warrant, a procedure clearly not in conformance with Local District Rule 9.3. When confronted with this fact, Prestenbach advised that he was doing what he was instructed to do by Sheriff Larpenter and District Attorney Waitz.

13.

Acting pursuant to the illegal warrant, TPSO deputies entered the Plaintiffs home and seized their private property, including all laptops, computers and cell phones located within the home. The TPSO deputies even seized the laptops of the Plaintiffs' children. Due to the large number of TPSO Detectives present at the scene and the length of time taken for the execution of the search warrant, the Anderson's neighbors began to gather around their house. Detective Kody Voisin, one of the five detectives executing the search warrant, read Officer Anderson his Miranda rights in the front yard of his home, in plain view and within earshot of the gathered neighbors.

14.

The same day that the Plaintiffs' home was raided, Captain Duane Farmer and Detective Troy Boquet, members of the Houma Police Department arrived at the Plaintiffs' home. Captain Farmer and Detective Boquet informed Officer Anderson that he was being placed on administrative leave indefinitely. They also informed Officer Anderson that he was the subject of an internal affairs investigation for failing to uphold the law and for engaging in conduct unbecoming of a law enforcement officer. They then stripped Officer Anderson of his badge, his duty weapon, his law enforcement commission card and his marked patrol unit. The actions taken by the Captain and Detective were again plainly visible to all of the Plaintiffs neighbors and have caused embarrassment and irreparable damage to their reputation in the community.

**6. Plaintiffs desire to amend Paragraphs 15 – 19 of their First Amended Complaint as follows:**

15.

At all times pertinent hereto, Captain Duane Farmer and Detective Troy Boquet acted under the direction of the Chief of the Houma Police Department, Dana Coleman. As Parish President, Dove is the Commander-in-Chief of the Houma Police Department. The decision to place Officer Anderson on paid administrative leave and open an internal affairs investigation on Officer Anderson was, upon information and belief, subject to the approval and/or consent and/or signature of Dove.

16.

After later speaking with undersigned co-counsel Jerri Smitko, Judge Bethancourt agreed to stay further execution of the search warrant by directing the TPSO to seal and deposit the evidence seized into the custody of the Terrebonne Parish Clerk of Court. Further action, i.e. the physical search and analysis of the seized evidence, would be stayed until Plaintiffs Motion to Quash the Search Warrant was heard.

17.

At the Motion to Quash hearing, Plaintiffs argued that the search warrant was factually and legally unsupportable as the alleged victim of the defamation was a public official[2], the issues discussed on the website were matters of public concern (i.e. Terrebonne Parish insurance

---

[2] Alford is President of the Board of Commissioners of the Terrebonne Levee & Conservation District (**See Exhibit D**). He is also heavily involved in matters of public concern, i.e. the Agent of Record for certain Terrebonne Parish employee insurance benefit contracts (**See Exhibit E – Ordinances to Authorize the Appointment of Anthony J. Alford Insurance Corporation as Agent of Record and Ordinance Authorizing the Appointment of ASLR, LLC as Agent of Record for the Employee Group Health Insurance**).

contracts), and the alleged defamatory speech, i.e. the statements regarding Alford's profits from the insurance contract between ASLR, LLC and TPSO, were true.

18.

Despite the truth of Plaintiff's statements, which were in any case *constitutionally protected speech*, Judge Bethancourt denied the Plaintiffs Motion to Quash, finding the defamation statute to be sufficiently broad to allow him a "look-see" to determine if the evidence wrongfully seized contained defamatory statements **(See Exhibit F – Transcript of Motion to Quash Search Warrant Hearing, pgs. 14 – 15: 17 – 17)**. Writs were taken to the Louisiana First Circuit Court of Appeals which ultimately quashed the search warrant on August 25, 2016.

19.

The First Circuit unsurprisingly ruled that the search and seizure was unconstitutional **(See Exhibit G – Notice of Judgment and Disposition, Court of Appeal and First Circuit, August 25, 2016)**. In its decision, the Court noted the fact that the probable cause affidavit submitted in support of the application for the search warrant was premised upon a violation of La. R.S. 14:47. As it pertained to public expression and publication concerning public officials, public figures and private individuals engaged in public affairs, the Court further stated that the statute had been ruled unconstitutional by both the United States Supreme Court and the Louisiana Supreme Court in this context. The First Circuit noted that Alford is President of the Terrebonne Parish Levee and Conservation Board of Louisiana, and a public official. Consequently, the search warrant lacked probable cause because the conduct complained of was not a criminally actionable offense.

**7.   Plaintiffs desire to amend paragraphs 20 - 36 of their First Amended Complaint as follows:**

20.

The Defendants, who were also apparently acting with some assistance from the Terrebonne Parish District Attorney's Office, knew or clearly should have known that ample prior federal and state jurisprudence interpreting La. R.S. 14:47 existed which clearly indicated that there was absolutely no legal justification for the actions taken by the Defendants. The Defendants also employ, on a contract basis, legal counsel who are paid with public funds to provide advice and guidance in similar situations. It is thus clear that the search warrant was obtained and executed as a deliberate retaliatory action to deprive Plaintiffs of their constitutional rights, and to cause damages. As it pertains to Plaintiff, Jennifer Anderson, the issuance and execution of the search warrant wrongfully prevented her from exercising the Constitutional rights guaranteed to her by the First, Fourth and Fourteenth Amendments to the United States Constitution. Similarly, Defendants' illegal and retaliatory actions caused Plaintiff Wayne Anderson to be subject to an illegal public search and seizure in violation of his Fourth Amendment rights. Defendants' actions were deliberate, unjustified, illegal and retaliatory and constitute an abuse of discretion and an abuse of public office which has caused Plaintiffs to suffer extensive damages.

## MALICIOUS PROSECUTION AND CONSPIRACY

21.

Upon information and belief, all of the Defendants acted in concert to conspire to deprive Plaintiff Jennifer Anderson of her rights under the First, Fourth and Fourteenth Amendments to United States Constitution by virtue of malicious prosecution, an illegal search of her home

residence, wrongful seizure of private property, wrongful suppression of free and protected speech and other intentional acts. Likewise, the Defendants actions resulted in a violation of Wayne Anderson's Fourth and Fourteenth Amendment rights. The Defendants conspired together to initiate unjustified and factually and legally baseless criminal proceedings against the plaintiffs. The Defendants knew and should have known that they lacked probable cause and/or any viable legal justification to initiate the said proceedings. The Defendants acted maliciously and as a consequence of these concerted actions, the Plaintiffs suffered wrongful deprivation of their liberties and property and have sustained damages.

22.

Defendants Gordon Dove and Jerry Larpenter, along with Anthony Alford, and perhaps others, met and/or discussed a jointly accepted and agreed upon illegal plan as discussed hereinabove. Sometime immediately after a July 11, 2016 article entitled "You Scratch Mine & I'll Scratch Yours" was published on the website that detailed the business dealings between Defendant Dove and Anthony Alford, Dove allegedly announced to the Board of Directors of Synergy Bank, a local Houma bank, that he was going to shut the Exposedat website down and that he was having subpoenas issued. Just three days later after the article's posting, Anthony Alford lodged a criminal complaint.

23.

Once Alford filed his complaint, Sheriff Larpenter wasted no time in initiating an investigation by his office by instructing Detective Prestenbach to immediately conduct an investigation. Prestenbach did as instructed. He met with and interviewed Alford. Prestenbach also subpoenaed records from Facebook, Inc. relating to John Turner, and within a period of five

days he obtained information from Facebook relating to various IP addresses. Prestenbach then searched the IP addresses he had obtained and noticed that they were assigned to a corresponding AT&T account. Prestenbach then subpoenaed records from AT&T to identify the IP addresses that corresponded to the Facebook posts of John Turner. Prestenbach received the AT&T records on August 1, 2016 which identified the Plaintiffs' residence as the source of the Facebook posts.

24.

After receiving the AT&T records, Prestenbach immediately reported to Sheriff Larpenter and advised him of the results of his investigation including the fact that the address obtained was the residence of Wayne Anderson, an officer with the Houma Police Department. Larpenter allegedly told Prestenbach to stand by for further action. Upon information and belief, Larpenter in furtherance of the conspiracy to violate the constitutional rights of the Plaintiffs, discussed the information obtained by subpoena from Facebook and AT&T with Dove and/or Alford and/or one or more members of the District Attorney's office.

25.

Once the Plaintiffs home address was confirmed by Defendants as the source of the website/Facebook posts, and after the search warrant had been signed, Defendants Larpenter and Dove further conspired by inviting and/or allowing Defendant Dove to make a "last minute" criminal defamation complaint approximately one hour and thirty minutes prior to the raid on the Anderson's home. Significantly, it was Defendant Larpenter who contacted Prestenbach about Dove's desire to make a statement. Dove's criminal defamation complaint was made part of the defamation complaint of Anthony Alford as clearly stated in the transcript of Dove's Recorded

Interview with Prestenbach on August 2, 2016 (**See Exhibit H – Recorded Interview of Gordon Dove**).

26.

On a segment of body camera footage recorded on the day of the execution of the illegal warrant, Defendant Larpenter can be briefly heard speaking on the telephone with TPSO Detective Voisin, who was located in the Plaintiffs front yard prior to the commencement of the raid. It is further alleged upon information and belief that defendant Larpenter drove to the vicinity of the Anderson's residence to "monitor" the raid, a highly unusual practice, but one which exemplifies the high degree of personal involvement by Larpenter in the conspiracy described herein.

27.

It is further alleged, upon information and belief, that Defendants Larpenter and Dove, directly and/or through representatives, employees, surrogates and/or agents discussed and coordinated the wrongful actions alleged herein among themselves and with third parties, including but not limited to the Terrebonne Parish District Attorney's Office and Anthony Alford and others, all to be shown at trial of this matter.

28.

As recounted on various media outlets the Defendants, individually and/or collectively, did not hide their desires to prosecute the author of the website. Notably, one day after the August 2, 2016 raid, when asked by reporters whether there was a conflict in him investigating an alleged crime involving himself, Larpenter replied "If you're gonna lie about me and make it

under a fictitious name, I'm gonna come after you." (**Exhibit I – "Terrebonne Sheriff raids house to expose "Exposedat" anti-corruption blog"**).

29.

Defendant Dove also indicated his desire to prosecute the website author based on statements reported in a news article where Dove referred to the website author as "Termites who crawled out the woodwork" and suggested he was contemplating filing suit against the website author. (**Exhibit J – "Website raid raises issues in Terrebonne Parish"**).

30.

The malicious retaliatory actions of the Defendants also included the deliberate and purposeful public circulation of an "anonymous letter" (attached hereto as **Exhibit K**) within the TPSO. This anonymous letter referenced very old criminal charges against Plaintiff, Jennifer Anderson. The basis for the information in the letter resulted from an unjustified and perhaps illegal NCIC search conducted by the Sheriff's Office prior to the day of the raid.[3]  These previous charges, despite their legal and factual irrelevance, were purposefully broadcast on a local Houma television news station. The purposeful and malicious publication of this information resulted in the loss of Jennifer Anderson's job resulting in monetary damages. The publication also resulted in harm to her reputation within the community, a reputation that she had diligently worked to rebuild and secure, all of which has caused damages.

---

[3] All charges stemmed from incidents occurring over ten years ago and are otherwise inadmissible as evidence. On August 4, 2016 Prestenbach ran a NCIC report on Plaintiff, Jennifer Anderson. The NCIC report detailed Plaintiff's past charges. Upon information and belief, there was no justifiable reason for the NCIC search to have been conducted in the first instance, further violating Jennifer Anderson's civil rights.

31.

At the time of the wrongful acts described hereinabove, Defendants Larpenter, Dove and their agents and employees were acting under color of the laws and regulations of the State of Louisiana and its political subdivisions named herein. The Terrebonne Parish Sheriff's Office and the Terrebonne Parish Consolidated Government had or allowed to exist policies and/or customs which were in place that enabled Larpenter and Dove and their employees and agents to act with deliberate indifference to the constitutional rights of individuals, including the Plaintiffs herein.

32.

Sheriff Larpenter, acting in his official capacity as the Sheriff of Terrebonne Parish, pursued a baseless criminal complaint pursuant to La. R.S. 14:47. This statute had previously been held to be unconstitutional as it applied to speech concerning public officials, public matters and private individuals involved in matters of public concern. As determined by the Louisiana First Circuit Court of Appeals, there was no probable cause to justify the search warrant because the complainant, Alford, was a public official as he was commissioned by the Governor as the President of the Board of Commissioners of the Terrebonne Levee & Conservation District (TLCD). In addition, Alford was heavily involved in the matters of public concern and importance in Terrebonne Parish. He successfully solicited two insurance contracts for Terrebonne Parish on behalf of his personal insurance corporation Anthony J. Alford Insurance Corporation (AJAI) and ASLR, LLC. Regardless, much of the content of the website was confirmed by Alford as true. As Sheriff and Chief Law Enforcement Officer, Defendant Larpenter is presumed and trusted by the citizens of Terrebonne to know the laws and their

constitutionality or unconstitutionality. Despite this, Sheriff Larpenter deliberately allowed a criminal complaint to issue pursuant to an unconstitutional statute. By doing so, Sheriff Larpenter promulgated a policy of abridging the First and Fourth Amendment rights of the residents of Terrebonne Parish.

33.

Sheriff Larpenter, acting in his individual capacity, was motivated by his personal desire to prosecute the website author for the public comments made about him. In order to do so, the Sheriff used the power of his office to wrongfully and illegally pursue the Plaintiffs.

34.

Dove, as Parish President of the TPCG, is Commander in Chief of the Houma Police Department and the ultimate supervisor of Plaintiff, Officer Wayne Anderson. As Officer Anderson's ultimate supervisor, Dove, upon information and belief, oversaw and/or approved of Officer Anderson's suspension and placement on paid administrative leave that resulted in damages to Officer Anderson. As with Larpenter, Dove's comments to the media clearly reflected his desire to prosecute Plaintiff Jennifer Anderson.

35.

The acts described hereinabove are also violations of the Laws of the State of Louisiana, including but not limited to the Articles found in Book III, Title V, Chapter 3 of the Louisiana Civil Code, namely Articles 2315 and 2324.  The Defendants conspired together to commit the intentional and willful acts described herein and have damaged the plaintiffs as a result and are thus solidarily liable for those damages.

36.

At all times pertinent hereto, Plaintiff Jennifer Anderson was acting pursuant to and within her First Amendment constitutional rights when posting articles on the website. She was acting as a private citizen speaking on matters of public concern. Anderson's speech was constitutionally protected and sought only to enlighten the public of the close nature of the relationships of their public officials as they related to public business deals and contracts. She achieved her purpose as multiple residents reported their surprise at the intertwined business relationships of the public officials involved. As reported in the news media, one TPCG Council member even expressed his regret to the residents of the Terrebonne Parish for being a "rubber stamp and fail[ing] to question many of Dove's moves during the "honeymoon period." (**See Exhibit L**).

8. **Plaintiffs reincorporate by reference each and every allegation made herein and desire to add to their Second Amended Complaint the following paragraphs 37 - 41:**

37.

Plaintiff, Jennifer Anderson's constitutionally protected speech was a substantial and motivating factor in the Defendant's collective decisions to deprive both Plaintiffs of their clearly established constitutional rights.

38.

The Defendants collective actions against the Plaintiffs as described hereinabove violated their constitutional rights and were not objectively reasonable in light of the circumstances. Furthermore, the actions wrongfully taken against the Plaintiffs would deter a person of ordinary firmness from continuing to engage in protected speech.

39.

The Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. Sec. 1988(b).

40.

As a result of the wrongful and constitutional acts described herein, and other acts which may be discovered during the course of this litigation, the Plaintiffs have suffered damages including, but not limited to:

    a.  Loss of earnings.

    b.  Loss of earning capacity.

    c.  Loss of employment opportunity.

    d.  Loss of employment.

    e.  Loss to reputation in the past and future.

    f.  Property damage.

    g.  Emotional pain and suffering and mental anguish, past and future.

    h.  Loss of pension or retirement benefits, and

    i.  Any other item of damage which may be shown at trial of this matter.

41.

Plaintiffs respectfully demand a trial by jury.

**9. Plaintiffs reincorporate each and every allegation made herein and desire to modify their Prayer for Relief as follows:**

**PRAYER FOR RELIEF**

**WHEREFORE**, the premises considered and after due proceedings are had, Plaintiffs pray that this Honorable Court enter judgment in their favor against the Defendants for the following:

 a. Actual damages in an amount to be shown at trial.

 b. Punitive damages.

 c. Reasonable attorneys fees.

 d. Prejudgment and post judgment interest.

 e. Costs of suit.

 f. All other relief the Court deems appropriate in the premises.

Respectfully Submitted:

*/s/ Jerri Smitko*
**Smitko Law, APLC**
Jerri Smitko, Esq. (#17807)
622 Belanger Street
P.O. Box 1669
Houma, LA 70361
Telephone: 985-851-1313
Facsimile: 985-851-1250
Email: Jerri@smitkolaw.com

*-and-*

**WILLIAMS LAW GROUP LLC**

*/s/ Conrad S.P. Williams, III*
Conrad S.P. Williams, III (#14499)
909 Poydras Street, Ste. 1625
New Orleans, Louisiana 70112
Telephone: 985-876-7595

Facsimile: 504-200-0001
Email:Duke@Williamslawgroup.org

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed on this 20th day of April, 2017, pursuant to the electronic filing requirements of the United States District Court for the Eastern District of Louisiana, which provide for service on counsel of record in accordance with the electronic filing protocols in place.

*/s/ Conrad S.P. Williams, III*
Conrad S.P. Williams, III