## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYNE ANDERSON ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                           **No. 16-13733**

**JERRY J. LARPENTER,**                                      **SECTION I**
**SHERIFF OF TERREBONNE PARISH**


## ORDER AND REASONS

Some qualified immunity cases are hard.  This case is not one of them.

In the summer of 2016, the Terrebonne Parish sheriff's office executed a search warrant for Jennifer and Deputy Wayne Andersons' home, seizing their computers and other personal electronic devices in the process.  The search warrant was issued as part of a criminal defamation investigation into online statements made by Jennifer Anderson.  Those "criminally defamatory" statements concerned the use of public funds and nepotism by government officials in Terrebonne Parish.

The Andersons argue that this speech was constitutionally protected and that Jerry Larpenter—the Sheriff of Terrebonne Parish and one of the individuals discussed in those statements—violated their constitutional rights when he told his subordinate to obtain the search warrant for their home.  Sheriff Larpenter disputes both points and has moved[1] to dismiss all claims against him.

For the foregoing reasons, the Court will deny Sheriff Larpenter's motion with respect to the Andersons' First Amendment, Fourth Amendment, and *Monell*

---

[1] R. Doc. No. 73.

claims.  The Court will grant the motion with respect to the federal and state malicious prosecution claims.

## I.

According to the second amended complaint and attached exhibits (collectively, "complaint"),[2] Jennifer Anderson created a "website/blog" called Exposedat "to highlight and question the closely intertwined business and personal relationships between public officials in Terrebonne Parish[,] particularly as they relate to the awarding of then recent public insurance contracts involving Terrebonne Parish."[3]  One of the public officials that Jennifer Anderson discussed on Exposedat was Sheriff Larpenter.  Another was Anthony Alford, who serves as President of the Terrebonne Parish Levee and Conservation District Board of Commissioners.[4]  (Commissioners are appointed by the Governor of Louisiana, with members of the Louisiana legislature playing a significant role in the appointment process.  *See* La. R.S. § 38:304(A)-(B)(2).)

Using Exposedat and a Facebook profile under the pseudonym "John Turner,"[5] Jennifer Anderson publicly questioned the Terrebonne Parish sheriff's

---

[2] *See* R. Doc. No. 71 (second amended complaint); R. Doc Nos. 71-1–71-12 (exhibits). When considering a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[3] R. Doc. No. 71, ¶ 4.

[4] *Id.* ¶ 4.  The complaint indicates that President Alford has been a member of the Terrebonne Parish Levee and Conservation District Board of Commissioners since at least May 18, 2016.  R. Doc. No. 71-4 (copy of President Alford's oath of office).

[5] R. Doc. No. 71, ¶ 5.

office's dealings with President Alford's insurance company, where Sheriff Larpenter's wife worked.[6]  Jennifer Anderson supported her claims with court and other public documents that she made publicly available on Exposedat.[7]

Within weeks of Jennifer Anderson's first posts, President Alford found out about the John Turner Facebook page—and the allegations about him posted on it.[8] In response, President Alford called Sheriff Larpenter to complain.[9]  After receiving the call, Sheriff Larpenter contacted one of his subordinates, Detective Lieutenant Glynn Prestenbach, and "ordered" him to "investigate the incident."[10]  The resulting criminal complaint filed by Detective Prestenbach listed the offense committed against President Alford as criminal defamation in violation of La. R.S. § 14:47.[11]

As the investigation unfolded, Detective Prestenbach was ultimately able to trace the origins of Exposedat and the John Turner Facebook profile to the Andersons' home.[12]  After learning about Detective Prestenbach's findings and discussing the matter with Terrebonne Parish District Attorney Joseph Waitz, Sheriff Larpenter directed Detective Prestenbach to request a search warrant for the home.[13]  Detective Prestenbach did as Sheriff Larpenter directed.[14]

---

[6] *See* 71-2 (transcript of interview between President Alford and Detective Prestenbach).
[7] R. Doc. No. 71, ¶ 5; R. Doc. No. 71-3, at 1.
[8] R. Doc. No. 71-1, at 4.
[9] *Id.* at 4.
[10] *Id.*
[11] *Id.* at 1.
[12] R. Doc. No. 71, ¶ 8.
[13] *Id.* ¶ 9; R. Doc. No. 71-1, at 6.
[14] R. Doc. No. 71-1, at 6.

In his affidavit in support of the search warrant application, Detective Prestenbach swore that Exposedat and the John Turner Facebook profile "made the same claims" and that Exposedat included "copies of court rulings and other documents supporting the[] claims."[15]   Detective Prestenbach's affidavit also explained that those claims revolved around the relationship between President Alford's insurance company and the Terrebonne Parish sheriff's office, and President Alford and Sheriff Larpenter themselves—namely, that "Sheriff's [sic] Jerry Larpenter is continuing to give Anthony Alford the broker contract for the Sheriff's Office when his wife Priscilla gets paid over six figures to manage Mr. Alford's office."[16]   The affidavit made no mention of President's Alford's position on the Terrebonne Parish Levee and Conservation District Board of Commissioners.[17] The judge who reviewed the application issued the search warrant.[18]

Detective Prestenbach then executed it,[19] seizing "all laptops, computers and cell phones" in the Andersons' home.[20]   That same day, Deputy Anderson was placed on indefinite administrative leave by his employer, the Houma police department.[21]

---

[15] R. Doc. No. 71-3, at 1.
[16] *Id.*
[17] *See id.*
[18] R. Doc. No. 71, ¶ 9; R. Doc. No. 71-1, at 6; R. Doc. No. 71-3, at 4-5.
[19] R. Doc. No. 71, ¶ 11; R. Doc. No. 71-1, at 7.
[20] R. Doc. No. 71, ¶ 13.
[21] *Id.* ¶ 14.

The Andersons challenged the constitutionality of the search warrant. While the issuing judge upheld the warrant's legality,[22] the Louisiana Court of Appeal quashed the warrant.[23] The Court of Appeal observed that La. R.S. § 14:47—the offense for criminal defamation that served as the basis to investigate Jennifer Anderson's online statements—"has been declared unconstitutional by both the United States Supreme Court and the Louisiana Supreme Court as it applies to public expression and publication concerning public officials, public figures and private individuals engaged in public affairs."[24] The Court of Appeal pointed out that President Alford was a "public official" given his role on the Terrebonne Parish Levee and Conservation District Board of Commissioners.[25] Therefore, "the search warrant lack[ed] probable cause because the conduct complained of is not a criminally actionable offense."[26]

Based on these events, the Andersons allege a variety of claims against Sheriff Larpenter, both in his individual and official capacities. Jennifer Anderson alleges that Sheriff Larpenter violated her First Amendment rights, and both Jennifer Anderson and Deputy Anderson allege that Sheriff Larpenter violated their Fourth Amendment rights.[27] Both also assert *Monell* claims against Sheriff

---

[22] *Id.* ¶ 18; *see also* R. Doc. No. 71-1, at 7; R. Doc. No. 71-6, at pp. 14-15.
[23] R. Doc. No. 71-7, at 2.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] R. Doc. No. 71, ¶ 20. Both the First and Fourth Amendments are applicable to the states via the Fourteenth Amendment. *See Bigelow v. Virginia*, 421 U.S. 809, 811 (1975) (First Amendment); *Baker v. McCollan*, 443 U.S. 137, 142 (1979) (Fourth Amendment).

Larpenter in his capacity as Sheriff of Terrebonne Parish.[28]  Finally, both assert federal and state law claims for malicious prosecution against Sheriff Larpenter.[29]

Sheriff Larpenter filed the instant renewed motion to dismiss all claims against him, contending that the complaint fails under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[30]  With regards to the federal constitutional claims against him in his individual capacity, Sheriff Larpenter asserts the defense of qualified immunity.[31]

## II.

### A.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint, or any part of it, where a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  A plaintiff's factual allegations must "raise a right to relief above the

---

[28] R. Doc. No. 71, ¶ 32.

[29] *Id.* ¶¶ 21, 35.  The complaint also alleges that Sheriff Larpenter conspired with others to violate the Andersons' constitutional rights.  *Id.* ¶ 24.  The pleadings in response to Sheriff Larpenter's renewed motion to dismiss do not treat these allegations of conspiracy as stating an independent cause of action, but rather as part and parcel of the federal and state malicious prosecution claims.  *See* R. Doc. No. 73-1; R. Doc. No. 77; R. Doc. No. 83.  The Court will do the same.

Likewise, although Sheriff Larpenter seems to understand the complaint as alleging an invasion of privacy claim against him based on the alleged release of Jennifer Anderson's criminal history, *see* R. Doc. No. 73-1, at 16-18, the Andersons treat the alleged release of Jennifer Anderson's criminal history as a component of Jennifer Anderson's First Amendment retaliation claim and the malicious prosecution claims, *see* R. Doc. No. 77, at 15, 21.  In his reply, Sheriff Larpenter does the same.  *See* R. Doc. No. 83, at 5.  The Court will follow suit.

[30] R. Doc. No. 73.

[31] *Id.*

speculative level." *Twombly*, 550 U.S. at 555.  In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

On a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff.  *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

Where "the complaint 'on its face show[s] a bar to relief,'" then dismissal is the appropriate course.  *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir.

2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).  Where applicable, qualified immunity can operate as one such bar.

## B.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

Where a public official invokes qualified immunity as a defense to a civil action against him, the plaintiff then has the burden "to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).  To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alteration in original). Once a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

When the defense of qualified immunity is raised in a motion filed pursuant to Rule 12(b)(6), "it is the defendant's conduct as alleged *in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). A

9

court must determine that a plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). The allegations must be pleaded with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Clayton v. Columbia Cas. Co.*, No. 11-845, 2012 WL 2952531, at *2-*3 (M.D. La. July 19, 2012) (Africk, J.) (internal quotation marks omitted).

## III.

The Andersons assert Fourth Amendment claims against Sheriff Larpenter, and Jennifer Anderson asserts a First Amendment claim against Sheriff Larpenter. The Court will address the Andersons' Fourth Amendment claims first.

Accepting the factual allegations in the well-pleaded complaint as true and construing them in the light most favorable to the Andersons, the Court concludes that the Andersons have stated Fourth Amendment claims against Sheriff Larpenter and that Sheriff Larpenter is not entitled to qualified immunity at this stage in the litigation.

## A.

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment thus establishes that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). Where a warrant lacks the necessary probable cause to support it, the warrant does not meet the requirements of the Fourth Amendment.

"Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought [by a search warrant] constitute fruits, instrumentalities, or evidence of a crime." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (internal quotation marks omitted); *see also United States v. Melancon*, 462 F.2d 82, 89 (5th Cir. 1972). Where the facts and circumstances would not lead a prudent person to believe that a search warrant will uncover evidence of a *crime*, probable cause does not exist. *Cf. Perry v. Sheahan*, 222 F.3d 309, 317 (7th Cir. 2000) ("Because all of the weapons seized [by the officers] can be lawfully possessed, the deputies could not reasonably presume that they were of an incriminating character."); *United States v. Rojas*, 671 F.2d 159, 165-66 (5th Cir. Unit B 1982) (Because "neither possessing nor transporting over $5,000 in currency is a crime," law enforcement officials "had neither probable cause that a crime had been or was being committed (probable cause for arrest) nor probable cause that a search of appellant's luggage would produce evidence of a crime.").

The search warrant that Sheriff Larpenter directed Detective Prestenbach to obtain was premised on the allegation that Jennifer Anderson's online statements

about President Alford constituted a violation of Louisiana's criminal defamation statute.[32]   (Sheriff Larpenter has not pointed to, or argued, any other basis for suspecting criminal activity on the part of Jennifer Anderson.)

> Louisiana's criminal defamation statute defines the crime of "defamation" as
>
> the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends: (1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; or (2) To expose the memory of one deceased to hatred, contempt, or ridicule; or (3) To injure any person, corporation, or association of persons in his or their business or occupation.

La. R.S. § 14:47.  The statute further provides that "[w]hoever commits the crime of defamation shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both."  *Id.*

The Andersons argue that the facts and circumstances known to Sheriff Larpenter would not lead any prudent person to believe that the items sought by the search warrant for the Andersons' home "constitute[d] . . . evidence of a *crime*," because no prudent person would believe that La. R.S. § 14:47 could constitutionally criminalize Jennifer Anderson's speech about President Alford.  *Kohler*, 470 F.3d at 1109 (emphasis added).

To address this argument, the Court must first answer an antecedent question: was Jennifer Anderson's speech entitled to constitutional protection?

**i.**

---

[32] R. Doc. No. 71-3.

The First Amendment limits the government's ability to impose liability on speech critical of the conduct of public officials.  *See New York Times v. Sullivan*, 376 U.S. 254 (1964) (civil liability); *Garrison v. Louisiana*, 379 U.S. 64 (1964) (criminal liability).  In the landmark case of *New York Times v. Sullivan*, the U.S. Supreme Court applied the First Amendment to civil defamation statutes.  The *New York Times* rule "prohibits a public official from recovering [civil] damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  376 U.S. at 279-80.

This rule was soon extended to criminal defamation statutes.  In *Garrison v. Louisiana*—a constitutional challenge to Louisiana's criminal defamation statute (La. R.S. §§ 14:47-49)—the U.S. Supreme Court held that the government is constitutionally limited in its power "to impose criminal sanctions for criticism of the official conduct of public officials."  379 U.S. at 67.  The scope of constitutionally protected criticism of public officials encompasses "anything which might touch on an official's fitness for office," including "personal attributes" such as "dishonesty, malfeasance, or improper motivation."  *Id.* at 77.  Discussing *Garrison* a decade later, the U.S. Supreme Court reflected on the rationale for *Garrison*'s scope, pointing out that:

> An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case.  And society's interest in the officers of government is not strictly limited to the formal discharge of official duties.

*Gertz v. Welch*, 418 U.S. 323, 344 (1974).

In short, the First Amendment constitutionally bars the government from criminally punishing 1) true speech about the conduct of public officials, regardless of the intent motivating the speech, and 2) false statements about the conduct of public officials unless knowingly false or made with reckless disregard of their falsity (*i.e.*, unless made with actual malice). *See Garrison*, 379 U.S. at 77-78. Where the government brings criminal defamation charges against a speaker based on his speech about a public official, the government bears the burden of proving that the speaker acted with actual malice. *Cf. Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1069 (5th Cir. 1987).

In the years immediately following *Garrison*, the Louisiana criminal defamation statute remained unchanged in all respects material to *Garrison*'s holding. While the Louisiana legislature amended La. R.S. § 14:47's penalty provision, it did not amend the substantive offense of criminal defamation.[33] Nor did the legislature amend § 14:48 (presumption of malice)[34] or § 14:49 (qualified privilege).[35]

---

[33] *See* West's Louisiana Statutes Annotated, Revised Statutes, Sections 14:41 to 14:63.12, at 308-10 (Thomson Reuters 2016).

[34] "Where a non-privileged defamatory publication or expression is false it is presumed to be malicious unless a justifiable motive for making it is shown. Where such a publication or expression is true, actual malice must be proved in order to convict the offender." La. R. S. § 14:48.

[35] "A qualified privilege exists and actual malice must be proved, regardless of whether the publication is true or false, in the following situations: (1) Where the publication or expression is a fair and true report of any judicial, legislative, or other public or official proceeding, or of any statement, speech, argument, or debate in the course of the same. (2) Where the publication or expression is a comment

Louisiana's highest court then reconsidered §§ 14:47-49 in *State v. Snyder*, 277 So.2d 660 (La. 1973) (on rehearing).[36]   Concluding that "[i]t is for the [state] Legislature to correct [§§ 14:47-49's] constitutional infirmity"—namely, "its overbroad application" as identified in *Garrison*—the Louisiana Supreme Court held §§ 14:47-49 "to be unconstitutional insofar as they attempt to punish public expression and publication concerning public officials, public figures, and private individuals engaged in public affairs." *Id.* at 668; *see also State v. Defley*, 395 So.2d 759, 761 (La. 1981) (observing that § 14:47 "is unconstitutional insofar as it punishes public expression about public officials").

Since *Snyder*, the Louisiana legislature has not revisited §§ 14:47-49.   The Louisiana Supreme Court's holding as to the reach of § 14:47 therefore remains the law of the land.

## ii.

As *New York Times* and *Garrison* make plain, speech about the conduct of public officials enjoys wide and robust protection under the First Amendment. Recognizing this unquestioned principle's implications for this case, the parties spill

---

made in the reasonable belief of its truth, upon, (a) The conduct of a person in respect to public affairs; or (b) A thing which the proprietor thereof offers or explains to the public.  (3) Where the publication or expression is made to a person interested in the communication, by one who is also interested or who stands in such a relation to the former as to afford a reasonable ground for supposing his motive innocent.  (4) Where the publication or expression is made by an attorney or party in a judicial proceeding."  La. R.S. § 14:49.

[36] The Court notes that Westlaw lists the Louisiana Supreme Court's 1973 opinion in *State v. Snyder* as being reversed by *State v. Snyder*, 304 So.2d 334 (La. 1974). Having reviewed both opinions, the Court concludes that the 1974 opinion did not reverse, and in no way calls into question the holding of, the 1973 opinion.

much ink disputing the First Amendment status of President Alford—whose grievance with Jennifer Anderson's online statements resulted in Sheriff Larpenter's criminal investigation and, eventually, the search warrant for the Andersons' home.  The Andersons argue that President Alford is a public official and Jennifer Anderson's speech about him was therefore constitutionally protected.[37]

Sheriff Larpenter disagrees, insisting instead that President Alford is a private figure.[38]  In fact, Sheriff Larpenter scarcely mentions President Alford's position on the Terrebonne Levee and Conservation District.  Sheriff Larpenter refers to President Alford's public role only once in his brief in support of the present motion, and then only when explaining the Louisiana Court of Appeal decision quashing the search warrant for the Andersons' home.[39]  (The Court notes that Sheriff Larpenter nowhere argues that he did not know about President Alford's public position; rather, Sheriff Larpenter simply refrains from acknowledging it at all.)

Sheriff Larpenter seems to draw a sharp and impermeable line between President Alford's role on the Terrebonne Levee and Conservation District and his role as a businessman.  As the Court understands Sheriff Larpenter's argument, President Alford is a private figure with respect to his conduct as an insurer, and because Jennifer Anderson's statements addressed the relationship between the

---

[37] R. Doc. No. 77, at 10-11.
[38] R. Doc. No. 73-1, at 13.
[39] *Id.* at 7.

Terrebonne Parish sheriff's office and President Alford's insurance company, those statements concerned President Alford as a private figure—and *Garrison* is therefore inapplicable to this case.

The Louisiana Court of Appeal concluded that President Alford—as his title suggests—is a public official for First Amendment purposes.[40]   The Court easily concludes the same.   "[T]he 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).   President Alford is the President of the Terrebonne Levee and Conservation District Board of Commissioners.[41]   Under Louisiana law, the Terrebonne Levee and Conservation District "constitute[s] a political subdivision of the state of Louisiana," La. R.S. § 38:329(A)(1),[42] and it has the power to "levy taxes, incur debt, and otherwise raise revenue as provided in" the Louisiana Constitution, *id.* § 38:329(A)(2).[43]   The "management and control of the district" is in the hands of a "board of commissioners." *Id.* § 38:329(C).   The commissioners are appointed by the Governor of Louisiana, with significant involvement by state legislators in the appointment

---

[40] R. Doc. No. 71-7, at 2.

[41] *See* R. Doc. No. 71, ¶ 17 n. 2; R. Doc. No. 71-4 (copy of Alford's oath of office).

[42] The Louisiana Constitution authorizes the creation of levee districts.   *See* La. Const. art. VI, § 38.

[43] The "primary duty" of the board is "to establish, construct, operate, or maintain flood control works as they relate to hurricane protection, tidewater flooding, saltwater intrusion, and conservation."   *Id.* § 38:329(C); *see also id.* § 38:306 (delineating the general powers and duties of Louisiana levee district board of commissioners); *id.* § 38:325 (outlining the scope of levee district board of commissioner activities).

process.  *See* id. § 38:304(A)-(B)(2).  As a leader of a "political subdivision of the state of Louisiana" with the power to "levy taxes, incur debt, and otherwise raise revenue," *id.* § 13:329(A)(1)-(2), President Alford exercises "substantial responsibility" and "control over the conduct of governmental affairs," *Rosenblatt*, 383 U.S. at 85.  As far as the First Amendment is concerned, President Alford is a public official.

Further, the Court rejects Sheriff Larpenter's distinction between President Alford's public and private roles.  As interpreted in *Garrison*, the First Amendment's protective umbrella covers "*anything* which might touch on an official's fitness for office," including "personal attributes" like "dishonesty, malfeasance, or improper motivation."  379 U.S. at 77 (emphasis added).  Jennifer Anderson's speech concerned "the closely intertwined business and personal relationships between public officials in Terrebonne Parish[,] particularly as they relate to the awarding of then recent public insurance contracts involving Terrebonne Parish."[44]  President Alford's alleged business relationships with public entities and other public officials certainly touch on his "personal attributes"—*e.g.*, his honesty and motivation—and therefore his "fitness for office."  *Id.*; *cf. Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999) ("Even charges of criminal conduct against an official or candidate are constitutionally protected . . . .").  Jennifer Anderson's speech falls squarely within the four corners of the First Amendment.

---

[44] R. Doc. No. 71, ¶ 4.

The Court also points out that Jennifer Anderson's speech amounted to an "expression on public issues"—namely, the expenditure of public funds on a public entity's insurance contracts. *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982); *see also Kincade v. City of Blue Springs*, 64 F.3d 389, 396 (8th Cir. 1995) ("[S]peech about the use of public funds touches upon a matter of public concern."). Such speech rests on the "highest rung of the hierarchy of First Amendment values." *Claiborne Hardware Co.*, 458 U.S. at 913; *see also Bausworth v. Hazelwood School Dist.*, 986 F.2d 1197, 1199 (8th Cir. 1993) (Arnold, J., concurring) ("[S]peech that either directly, or by reasonable inference, criticizes public officials' use of the public's funds lies at the core of the speaker's First Amendment rights."). After all, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison*, 379 U.S. at 74-75.

In a final effort to distinguish Jennifer Anderson's speech from the speech protected by *Garrison*, Sheriff Larpenter contends that Jennifer Anderson's statements about President Alford are false.[45] Yet nowhere does Sheriff Larpenter even argue, let alone attempt to show, that Jennifer Anderson made her statements "with knowledge of their falsity or in reckless disregard of whether they are true or false"—a requirement to overcome the protections afforded those statements by the First Amendment.[46] *See Garrison*, 379 U.S. at 77-78.

---

[45] R. Doc. No. 73-1, at 3.
[46] *See id.*

"[C]riticism of public officials lies at the very core of speech protected by the First Amendment." *Colson*, 174 F.3d at 507. Jennifer Anderson's speech fits within that core, and it is entitled to First Amendment protection.

### iii.

Having established that Jennifer Anderson's speech was protected by the First Amendment, the Court must now consider whether the facts and circumstances known to Sheriff Larpenter would lead a prudent person to believe that the items sought by the search warrant for the Andersons' home "constitute[d] . . . evidence of a crime." *Kohler*, 470 F.3d at 1109.

The Court concludes that the facts and circumstances known to Sheriff Larpenter at the time that he directed Detective Prestenbach to get the search warrant for the Andersons' home would not have led a prudent person to believe that the items sought by the warrant constituted evidence of a crime, because no prudent person would believe that Jennifer Anderson's statements about President Alford could constitutionally form the basis of a crime. President Alford is a public official, and Jennifer Anderson's statements on Exposedat and the John Turner Facebook profile addressed core concerns about his fitness for public office. The complaint shows that Sheriff Larpenter was aware of the specific content of Jennifer Anderson's statements about President Alford from the very beginnings of the investigation.[47] (The complaint also shows that Sheriff Larpenter was aware

---

[47] *See* R. Doc. No. 71-1, at 4.

that those statements included discussion of himself, as well as Terrebonne Parish

President Gordon Dove and Terrebonne Parish District Attorney Joseph Waitz.[48])

Moreover, the complaint shows that the criminal investigation into Jennifer

Anderson's statements did not uncover a scintilla of evidence to suggest that

Jennifer Anderson's speech—regardless of its veracity—was made with actual

malice.  As such, it is not surprising that Detective Prestenbach's affidavit[49] in

support of the search warrant lacked any factual allegations to support an assertion

of actual malice.  In fact, Detective Prestenbach's acknowledgment in the affidavit

that Exposedat featured public documents to support the claims made on it

suggested just the opposite: even if false, the statements were not made with actual

malice.[50]

Without any basis to believe that speech about a public official was made

with actual malice, the First Amendment bars a criminal defamation action under §

14:47 against the speaker of such speech.  The facts and circumstances known to

Sheriff Larpenter would not have led a prudent person to believe that the items

sought by the search warrant—the Andersons' computers and cell phones—

constituted the "fruits, instrumentalities, or evidence of a *crime*."  *Id.* (emphasis

---

[48] *See id.*; R. Doc. No. 71-9, at 2.  The Court notes that Sheriff Larpenter, like President Alford, is a public official for First Amendment purposes.  *Cf. McKinley v. Baden*, 777 F.2d 1017, 1021 (5th Cir. 1986) (observing that "[f]ederal courts have consistently held police officers to be public officials" for First Amendment purposes).

[49] The affidavit indicates that the transcript of Detective Prestenbach's interview with President Alford, R. Doc. No. 71-2, was attached to the affidavit.  The Court therefore treats the transcript as incorporated into the affidavit.

[50] *See* R. Doc. No. 71-3, at 1-2.

added); *cf. McLin v. Ard*, No. 13-538, 2014 WL 545743, at *4 (M.D. La. Feb. 10, 2014) (Dick, J.)) ("As a matter of law, there could be no articulable reasonable suspicion that evidence of a crime existed, when 'criminal defamation' is not a crime. Without [ ] probable cause to believe that a crime had been committed, there could be no objectively reasonable basis for a warrant to search for evidence of the non-crime."), *rev'd on other grounds*, 611 Fed. App'x 806 (5th Cir. 2015) (per curiam).

Further, the Louisiana Supreme Court has held that § 14:47 in its current form cannot apply to "expression and publication concerning public officials" in *any* instance—*i.e.*, even where actual malice is present. *Snyder*, 277 So.2d at 668. Sheriff Larpenter now acknowledges as much.[51] Therefore, § 14:47 simply cannot apply to Jennifer Anderson's statements about President Alford—whether true or false, whether made with innocent intent or made with actual malice. So even if Sheriff Larpenter's investigation had uncovered evidence that Jennifer Anderson's statements were both false and made with actual malice, the facts and circumstances known to Sheriff Larpenter would still not have led a prudent person to conclude that the search warrant sought evidence of a crime.

Finally, the Louisiana Supreme Court has held that the current iteration of § 14:47 likewise cannot apply to "expression and publication concerning . . . private individuals who are engaged in public affairs." *Id.* Jennifer Anderson's statements

---

[51] R. Doc. No. 73-1, at 12 ("[I]t is conceded that La. R.S. 14:47 has been held to be unconstitutional insofar as it criminalizes defamation of <u>public</u> officials.) (emphasis in original).

criticized President Alford's business relationship with the taxpayer-funded Terrebonne Parish Sheriff's Office—a paradigmatic example of speech about an individual engaged in public affairs. *Cf. Kincade*, 64 F.3d at 396. Therefore, even accepting Sheriff Larpenter's (unpersuasive) argument that President Alford is a private figure, the facts and circumstances known to Sheriff Larpenter—yet again— would not have led a prudent person to conclude that the items sought by the search warrant constituted evidence of any crime.

As the Louisiana Court of Appeal concluded, Jennifer Anderson's speech "is not a criminally actionable offense"[52]—and any prudent person would have known so. Accepting the factual allegations in the complaint as true and construing them in the light most favorable to the Andersons, Sheriff Larpenter's directive to Detective Prestenbach to obtain a search warrant for the Andersons' home resulted in a violation of the Andersons' Fourth Amendment rights, as the warrant lacked the requisite probable cause. The Andersons have stated Fourth Amendment claims against Sheriff Larpenter.

### iv.

It goes without saying that the Andersons' right not to be subjected to a search warrant for their home, where the warrant lacks probable cause, is a clearly established constitutional right. *See United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993) ("The Fourth Amendment requires probable cause to obtain a warrant either to arrest a suspect in his home or to search the home."), *abrogated*

---

[52] R. Doc. No. 71-7, at 2.

*on other grounds by Kentucky v. King*, 563 U.S. 452 (2011); *see also Walden v. Carmack*, 156 F.3d 861, 869 (8th Cir. 1998).  Moreover, the inapplicability of § 14:47 to Jennifer Anderson's speech—which concerned President Alford's business relationships with public entities and other public officials—is clearly established: under longstanding U.S. Supreme Court and Louisiana Supreme Court case law, § 14:47 simply cannot criminalize such speech.  *See Garrison*, 379 U.S. at 77-78, *and Snyder*, 277 So.2d at 668.  As such, the Andersons' right not to be subject to a search warrant premised on an alleged violation of § 14:47, where the alleged violation involves speech about a public official, is a clearly established constitutional right.

The Court must therefore consider whether Sheriff Larpenter's actions were "objectively reasonable in light of clearly established law."  *Thompson*, 245 F.3d at 457.  If yes, then Sheriff Larpenter is entitled to qualified immunity; if no, then Sheriff Larpenter is not.

In this instance, no law enforcement officer in Sheriff Larpenter's position would have an objectively reasonable belief, in light of clearly established law, that probable cause existed to support a search warrant for the Andersons' home.  Over fifty years ago, the U.S. Supreme Court held § 14:47 unconstitutional insofar as it applies to true speech about the conduct of public officials, and false speech about the conduct of public officials unless such speech was made with actual malice.  *See Garrison*, 379 U.S. at 77-78.  The Louisiana Supreme Court then went one step further, holding over four decades ago that § 14:47 in its current form cannot apply

to any "expression and publication concerning public officials, public figures, or private individuals who are engaged in public affairs," regardless of the speaker's veracity or *mens rea*. *See Snyder*, 277 So.2d at 668. The Louisiana legislature has never fixed the constitutional infirmaries with § 14:47 identified by the U.S. Supreme Court and Louisiana Supreme Court.

Against this clearly established legal backdrop, any reasonable law enforcement official in Sheriff Larpenter's position would have known—or should have known—that Jennifer Anderson's online statements about President Alford could not constitute a crime—and therefore could not justify a search warrant. Sheriff Larpenter was aware of the content of Jennifer Anderson's statements—he reported them to Detective Prestenbach at the time that he "ordered" Detective Prestenbach to "investigate the incident."[53]  Those statements concerned President Alford's business relationship with the Terrebonne Parish sheriff's office.  Sheriff Larpenter should have known that President Alford's public role *and* the subject matter of the Jennifer Anderson's speech each independently precluded application of § 14:47 under clearly established law.  Yet Sheriff Larpenter directed Detective Prestenbach to obtain a search warrant for the Andersons' home.[54]   "[A]ll reasonable officials in [Sheriff Larpenter's] circumstances would have then known that [Sheriff Larpenter's] conduct violated the [Andersons'] rights."  *Carroll*, 800 F.3d at 169.

---

[53] R. Doc. No. 71-1, at 4.
[54] *Id.* at 6.

Sheriff Larpenter contends that the Andersons "cannot seriously argue that [he] was objectively unreasonable" in his actions, because a judge issued the search warrant for the Andersons' home in the first instance and then upheld it against the Andersons' motion to quash.  However, "[t]he fact that a neutral magistrate issues a warrant is *not* dispositive of whether [Sheriff Larpenter's] underlying actions were objectively reasonable." *Winfrey v. San Jacinto Cnty.*, 481 Fed. App'x 969, 978 (5th Cir. 2012) (emphasis added); *see also Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) ("[T]he fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into [an officer's] objective reasonableness.").  "Qualified immunity will not attach if a 'reasonably well-trained officer in [Sheriff Larpenter's] position would have known that [the] affidavit [in support of the search warrant] failed to establish probable cause.'" *Winfrey*, 481 Fed. App'x at 978 (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)); *see also Messerschmidt*, 565 U.S. at 547 (quoting *Malley*, 475 U.S. at 341) (observing that a warrant will not shield an officer from suit where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue").

The Court notes that Detective Prestenbach's affidavit for the search warrant for the Andersons' home—a warrant he obtained at the direction of Sheriff Larpenter—failed to mention the material fact that President Alford serves as the head of the Terrebonne Parish Levee and Conservation District Board of

Commissioners[55]—and hence is a public official.  Notwithstanding, a reasonably well-trained officer in Sheriff Larpenter's position would have known that Detective Prestenbach's affidavit would inevitably fail to establish probable cause, because longstanding U.S. Supreme Court and Louisiana Supreme Court case law precluded the application of § 14:47 to Jennifer Anderson's statements.  "[A]s an officer charged with enforcing Louisiana law," Sheriff Larpenter "can be presumed to know the law" of Louisiana, including the law's well-established constitutional reach. *Rykers v. Alford*, 832 F.2d 895, 898 (5th Cir. 1987).  More to the point, "[p]olice officers can be expected to have a modicum of knowledge regarding the fundamental rights of citizens."  *See also Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982).  In this instance, a judge's issuance and affirmance of the search warrant for the Andersons' home will not shield Sheriff Larpenter from potential civil liability for his conduct.

Accepting the factual allegations in the complaint as true and construing them in the light most favorable to the Andersons, the Court concludes that Sheriff Larpenter is not entitled to qualified immunity with respect to the Andersons' Fourth Amendment claims.

## B.

Jennifer Anderson asserts a First Amendment claim against Sheriff Larpenter.  Accepting the factual allegations in the well-pleaded complaint as true and construing them in the light most favorable to Jennifer Anderson, the Court

---

[55] *See* R. Doc. No. 71-3.

concludes that Jennifer Anderson has stated a First Amendment retaliation claim against Sheriff Larpenter and that Sheriff Larpenter is not entitled to qualified immunity at this stage in the litigation.

## i.

The First Amendment bars government officials from "abridging the freedom of speech," including taking "adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). For ordinary citizens such as Jennifer Anderson to establish a First Amendment retaliation claim, citizens "must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Id.*

The Court must first consider whether Jennifer Anderson was engaged in a "constitutionally protected activity." *Id.* Jennifer Anderson's speech concerned "the closely intertwined business and personal relationships between public officials in Terrebonne Parish"—including President Alford and Sheriff Larpenter— "particularly as they relate to the awarding of then recent public insurance contracts involving Terrebonne Parish."[56] As the Court explained *supra*, the factual allegations in the complaint show that this speech about public officials and their

---

[56] R. Doc. No. 71, ¶ 4.

use of public funds fell under the protective umbrella of the First Amendment. Therefore, the Court concludes that Jennifer Anderson was engaged in an activity protected by the First Amendment.

Next, the Court must consider whether the actions of Sheriff Larpenter—who, as previously mentioned, does not argue that he did not know about President Alford's position on the Terrebonne Parish Levee and Conservation District—"caused [Jennifer Anderson] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Id.* Sheriff Larpenter ordered Detective Prestenbach to obtain a search warrant for the Andersons' home. Law enforcement officials with the Terrebonne Parish sheriff's office then wielded the search warrant as the legal basis to enter the Andersons' home and seize the Andersons' computers and cellphones—devices on which people maintain their most intimate information. *See Riley v. California*, 134 S. Ct. 2417, 2489-91 (2014). In the Court's view, a "person of ordinary firmness" would face a considerable chill—perhaps even to the point of a freeze—if the consequence of speaking up and speaking out about public officials was the search of one's home and seizure of one's personal property by law enforcement.[57]

---

[57] In the complaint and memorandum in opposition to Sheriff Larpenter's motion to dismiss, Jennifer Anderson argues that one of the injuries that she suffered as a result of Sheriff Larpenter's actions was the alleged release of her criminal history by the Terrebonne Parish sheriff's office, which allegedly caused her both financial and reputational harm. *See* R. Doc. No. 71, at 14; R. Doc. No. 77, at 14-15. Because the Court concludes that the execution of the warrant constitutes an injury sufficient to state a First Amendment retaliation claim, the Court does not address whether the alleged release of Jennifer Anderson's criminal history can be

Sheriff Larpenter attempts to minimize Jennifer Anderson's injury as a result of his actions.[58]  In his view, because the Andersons got their property back and because the property was never searched by law enforcement—the Andersons' computers and cellphones were impounded and sealed after their seizure while the Andersons challenged the legality of the search warrant[59]—Jennifer Anderson did not suffer an injury sufficient to chill a person of ordinary firmness.[60]  However, Sheriff Larpenter is missing the bigger picture: the injury was inflicted at the time of the *execution* of the search warrant.  By searching the Andersons' home and seizing the Andersons' property in the first place, Sheriff Larpenter sent a message to Jennifer Anderson—a message that he also allegedly told a news outlet and broadcast to his community: "If you're gonna lie about me and make it under a fictitious name, I'm gonna come after you."[61]  To the Court, *that* message—if you speak ill of the sheriff of your parish, then the sheriff will direct his law enforcement resources toward forcibly entering your home and taking your belongings under the guise of a criminal investigation—is inseparable from the injury and would certainly chill anyone of ordinary firmness from engaging in similar constitutionally protected speech in the future.

Finally, the Court must consider whether Sheriff Larpenter's actions against Jennifer Anderson "were substantially motivated against the plaintiffs' exercise of

---

considered a component of the injury—a point disputed by the parties.  *See* R. Doc. No. 73-1, at 16-18; R. Doc. No. 77, at 14-15; R. Doc. No. 83, at 5.
[58] *See* R. Doc. No. 73-1, at 14-16.
[59] *See* R. Doc. No. 71, ¶ 16.
[60] R. Doc. No. 73-1, at 16.
[61] R. Doc. No. 71-9, at 2.

constitutionally protected conduct." *Keenan*, 290 F.3d at 258. Based on Sheriff Larpenter's statements and conduct, the Court answers that question in the affirmative: Sheriff Larpenter's decision to order Detective Prestenbach to obtain a search warrant for the Andersons' home was arguably aimed at curtailing Jennifer Anderson's constitutionally protected speech—speech which Sheriff Larpenter, as well as President Alford, had an interest in suppressing.

Accepting the factual allegations in the complaint as true and construing them in the light most favorable to Jennifer Anderson, the Court concludes that Jennifer Anderson has stated a First Amendment retaliation claim against Sheriff Larpenter.

## ii.

As with the Andersons' Fourth Amendment claims, Sheriff Larpenter asserts qualified immunity as a defense to Jennifer Anderson's First Amendment claim.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "[G]overnment retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan*, 290 F.3d at 261 (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)).

However, courts distinguish between retaliatory action that has an independent lawful basis—*e.g.*, an officer's arrest of a speaker where the officer's motivation for the arrest is retaliation for the speaker's defamatory statements

about the officer, but where probable cause exists justifying the arrest—and retaliatory action that has no independent lawful basis. Where "law enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked," then "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Id.* at 261-62; *see also Mozzochi v. Borden*, 959 F.2d 1174, 1179 (5th Cir. 1992). On the other hand, "[i]f no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [an officer] against the plaintiff[ ], then their retaliation violated clearly established law in this circuit." *Keenan*, 290 F.3d at 262. In other words, Jennifer Anderson has a clearly established right to be free from retaliatory action by government officials where "nonretaliatory grounds" are "insufficient" to justify the action. *Hartman*, 547 U.S. at 256.

The Court concludes that Sheriff Larpenter's conduct violated this clearly established right and was not "objectively reasonable in light of clearly established law." *Thompson*, 245 F.3d at 457. As the Court explained *supra*, a reasonable law enforcement officer in Sheriff Larpenter's position would have known that probable cause supporting the search warrant did not exist because Jennifer Anderson's speech could not constitute a crime. Therefore, "no reasonable police officer could have believed that probable cause existed" justifying Sheriff Larpenter's order to Detective Prestenbach to get a search warrant for the Andersons' home. *Keenan*, 290 F.3d at 262. Sheriff Larpenter's alleged retaliation against Jennifer Anderson's speech therefore "violated clearly established law in this circuit." *Id.* "The fact that

a neutral magistrate issue[d] a warrant" does not save Sheriff Larpenter from his objective unreasonableness in ordering Detective Prestenbach to obtain the search warrant in the first place. *Winfrey*, 481 Fed. App'x at 978.

Accepting the factual allegations in the complaint as true and construing them in the light most favorable to Jennifer Anderson, the Court concludes that Sheriff Larpenter is not entitled to qualified immunity with respect to Jennifer Anderson's First Amendment claim.

## IV.

The Andersons allege that Sheriff Larpenter, in his official capacity as Sheriff of Terrebonne Parish, "promulgated a policy of abridging the First and Fourth Amendment rights of residents of Terrebonne Parish," namely themselves.[62]

Under *Monell v. Department of Social Services*, municipalities and local governing bodies[63] are subject to liability for constitutional violations involving official policies or practices.[64] *See* 436 U.S. 658, 690 (1978). *Monell* liability consists of three elements: "(1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Davis v. Tarrant Cnty, Tex.*, 565 F.3d 214, 227 (5th Cir. 2009) (citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)). The "violation of constitutional rights"

---

[62] R. Doc. No. 71, ¶ 32.

[63] Courts treat Louisiana sheriffs in their official capacities as "local government bodies" for *Monell* purposes. *See, e.g., Thomas v. Pohlmann*, No. 16-30798, 2017 WL 1031282, at *5 (5th Cir. March 15, 2017); *Becnel v. St. Charles Parish Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *2-*4 (E.D. La. Sept. 24, 2015) (Vance, J.); *Victoria v. Larpenter*, 205 F. Supp. 2d 580, 586 (E.D. La. 2002) (Zainey, J.).

[64] Municipalities and local governing bodies cannot plead qualified immunity as a defense. *See Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

must be "directly attributable to the municipality [or local governing body] through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).[65]  The municipality or local governing body must be "actually responsible" for the constitutional violation at issue. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999).

## A.

With respect to *Monell*'s first element, Sheriff Larpenter is the relevant policymaker under Louisiana law with respect to the Andersons' First and Fourth Amendment claims.  For a public official to constitute a "policymaker" for *Monell* purposes, he or she must possess "final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional . . . violation at issue." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Specifically, courts must ask "whether governmental officials are policymakers for the local government in a particular area, or on a particular issue," a question that turns on state law. *Burge*, 187 F.3d at 468.

Under the Louisiana Constitution, a sheriff is a "virtually . . . autonomous local government official," *id.* at 469, who serves as the "chief law enforcement officer in the parish."  La. Const. art. V, § 27; *see also id.* art. VI, §§ 5(G), 7(B).

---

[65] "A municipality cannot be held liable under section 1983 on a theory of *respondeat superior* merely because it employs a tortfeasor."  *Becnel*, 2015 WL 5665060, at *2.

Louisiana law provides that a sheriff "shall preserve the peace and apprehend public offenders," among other duties. La. R.S. § 13:5539(C). In the area of law enforcement, then, Sheriff Larpenter is a final policymaker under Louisiana law within the confines of Terrebonne Parish. *See Casto v. Plaisance*, No. 15-817, 2016 WL 2855468, at *9 (E.D. La. May 16, 2016) (Vial Lemmon, J.); *Blanchard v. Lonero*, No. 06-4023, 2009 WL 1507351, at *17 (E.D. La. May 28, 2009) (Duval, J.); *cf. Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999) (analogizing district attorneys to sheriffs under Louisiana law, and concluding that a district attorney is "the independent and final official policymaker for all of the administrative and prosecutorial functions of his office").

## B.

With respect to *Monell*'s second element, the factual allegations in the complaint satisfy the official policy requirement. The Fifth Circuit has outlined the "three different ways" that this element of a *Monell* claim can be satisfied: (1) where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy[ ]"; (2) where "the action of the policymaker itself violated a constitutional right[ ]"; and (3) where the policymaker does not affirmatively act, but "the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need." *Burge*, 187 F.3d at 471 (internal quotation

marks omitted) (alterations in original).  In this case, it is the second way that is implicated.

A "single decision by municipal policymakers" can constitute grounds to impose *Monell* liability "under appropriate circumstances."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see also Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) ("A single unconstitutional action . . . may be sufficient in rare circumstances to impose municipal liability under *Monell* . . . .").  However, "[t]he official must . . . be responsible for establishing final government policy respecting such [challenged] activity before the municipality can be held liable," a determination that ultimately turns on state law.  *Pembaur*, 475 U.S. at 482-83. Moreover, the official must make a "deliberate choice" to follow the course of action. *Id.* at 483.

This case illustrates the appropriate circumstances where *Monell* liability may be imposed in response to a single unilateral action taken by a single policymaker.  Sheriff Larpenter ordered Detective Prestenbach to obtain a search warrant for the Andersons' home in response to Jennifer Anderson's speech.  *Cf. Pembaur*, 475 U.S. at 484 ("The Prosecutor made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic.  That decision directly caused the violation of petitioner's Fourth Amendment rights.").  As the chief law enforcement officer of Terrebonne Parish, it is Sheriff Larpenter—and Sheriff Larpenter alone—who possesses the constitutionally enshrined duty to "preserve the peace and apprehend public offenders" within

Terrebonne Parish's territorial limits.  La. R.S. § 13:5539(C).  In the exercise of that duty, Sheriff Larpenter possesses the final authority to direct Terrebonne Parish policy as it concerns law enforcement.  Sheriff Larpenter's decision to order Detective Prestenbach to seek a search warrant for the Andersons' home was subject to no veto: in Terrebonne Parish, as far as law enforcement is concerned, the buck stops with Sheriff Larpenter.

Sheriff Larpenter objects that the Andersons "have failed to cite to a policy, pattern or practice promulgated by Sheriff Larpenter which was the 'moving force' behind the actions of Terrebonne Parish detectives and deputies."[66]   However, Sheriff Larpenter overlooks his own position of authority and its implications under *Monell*.   Acting as Terrebonne Parish's chief law enforcement officer, Sheriff Larpenter ordered what amounted to an unconstitutional search of the Andersons' home and unconstitutional seizure of the Andersons' property, all because of Jennifer Anderson's speech.  *Pembaur*, 475 U.S. at 483.  Accepting the factual allegations in the complaint as true and construing them in the light most favorable to the Andersons, this choice by Sheriff Larpenter may constitute an official policy under *Monell*.

### C.

Lastly, with respect to *Monell*'s third element, the factual allegations in the complaint show that the challenged "policy or custom" was the "moving force" behind the "violation of constitutional rights."  *Davis*, 565 F.3d at 227.

---

[66] R. Doc. No. 73-1, at 19.

To show "moving force" causation, a plaintiff must demonstrate that "the municipal action was taken with the requisite degree of culpability"—with "deliberate indifference to the risk that a violation of a particular constitutional . . . right will follow the decision." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks omitted). A plaintiff must also show "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (internal quotation marks omitted).

The factual allegations in the complaint demonstrate that Sheriff Larpenter's decision to order Detective Prestenbach to obtain the search warrant for the Andersons' home—the alleged official policy—was the moving force behind the violation of the Andersons' constitutional rights. The "causal link" between Sheriff Larpenter's decision and the Andersons' First and Fourth Amendment claims is "direct": Sheriff Larpenter issued the order to Detective Prestenbach to obtain a search warrant. But for Sheriff Larpenter's decision, the events that ultimately led to the alleged violation of the Andersons' constitutional rights would not have occurred.

Moreover, the factual allegations in the complaint show that Sheriff Larpenter acted with the "requisite degree of culpability." Given the longstanding and robust constitutional protections afforded speech involving public officials (and speech involving public funds), it can be argued based on these allegations that Sheriff Larpenter acted with at least deliberate indifference to the risk that his actions would violate the Andersons' constitutional rights.

Accepting the factual allegations in the complaint as true and construing them in the light most favorable to the Andersons, the Court concludes that the Andersons have stated *Monell* claims against Sheriff Larpenter.

## V.

Finally, the Andersons assert federal and state law claims of malicious prosecution against Sheriff Larpenter.

The Fifth Circuit has foreclosed the Andersons' federal law claims of malicious prosecution.[67]   *See Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003).  The Andersons do not dispute otherwise.[68]  As "[f]urther amendment would be futile," *Smith v. Houston Indep. School Dist.*, No. 16-401, 2017 WL 175814, at *2 (S.D. Tex. Jan. 17, 2017) (Rosenthal, J.), the Andersons' federal malicious prosecution claims are to be dismissed with prejudice.

With regards to the Andersons' state law claims, the Louisiana Supreme Court has articulated a six-part test for stating a claim of malicious prosecution:

> "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."

*Lemoine v. Wolfe*, 168 So.3d 362, 367 (La. 2015).   Importantly, where "no prosecution" is "ever instituted"—*i.e.*, no charges are formally filed—a malicious

---

[67] The Fifth Circuit explained that "causing charges to be filed without probable cause will not without more violate the Constitution."  *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003).
[68] *See* R. Doc. No. 77.

prosecution claim under Louisiana law necessarily fails. *Dyas v. Shreveport Police Dep't*, 136 So.3d 897, 902 (La. Ct. App. 2014); *see also Systems Contractors Corp. v. Orleans Parish School Board*, Nos. 94-2276, 95-3310, 1996 WL 547414, at *2 (E.D. La. Sept. 24, 1996) (Fallon, J.) ("There is no cause of action for malicious prosecution [under Louisiana law] when no bill of information or indictment has been filed; thus this court finds plaintiff's claim for malicious prosecution fails.")

The Andersons cannot satisfy the first element of a state malicious prosecution claim, as no prosecution has been commenced against either of them. Under Louisiana law, the execution of a search warrant does not constitute "the commencement . . . of an original criminal . . . judicial proceeding" for purposes of a malicious prosecution claim. *Lemoine*, 168 So.3d at 367.

The Andersons' malicious prosecution claim under Louisiana law "is legally insufficient on its face." *Smith*, 2017 WL 175814, at *2 (quoting 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990)). Because an amendment would—again—be futile, the Andersons' state malicious prosecution claims are to be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Sheriff Larpenter's renewed motion to dismiss is **GRANTED** with respect to the Andersons' federal and state malicious prosecution

claims, and that those claims are **DISMISSED WITH PREJUDICE**.  In all other respects, the motion is **DENIED**.

New Orleans, Louisiana, July 18, 2017.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**